UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FIFTY-THREE VIRTUAL CURRENCY ACCOUNTS,<br><br>*Defendants.* | Civil Action No. 20-2227 (RC) |

### GOVERNMENT'S UNOPPOSED MOTION TO CONTINUE STAY

Plaintiff, the United States of America, by and through the United States Attorney for the District of Columbia, respectfully moves to continue the stay of this matter for 180 days under 18 U.S.C. § 981(g)(1), because civil discovery will adversely affect the ability of the government to conduct a related criminal investigation and the prosecution of a related criminal case.

### BACKGROUND

The United States moved the Court to stay this civil forfeiture action on April 9, 2021 (Dkt No. 16), November 8, 2021 (Dkt No. 22), May 9, 2022 (Dkt No. 28), and November 14, 2022 (Dkt No. 34). The four prior motions to stay and sealed filings submitted those same dates contain detailed factual and procedural backgrounds of the case, which we incorporate by reference.

This civil forfeiture action arises out of a criminal investigation into online fundraising activities conducted by the military wing of Hamas – the al-Qassam Brigades – a designated foreign terrorist organization. The forfeiture case alleges that the properties at issue are assets of a foreign terrorist organization and assets affording any person a source of influence over any such entity or organization. *See* 18 U.S.C. § 981(a)(1)(G)(i). With respect to the property for which claimant Husamettin Karatas ("Karatas") has submitted a claim (Defendant Property 180), the complaint also seeks to forfeit that property on the basis that it is involved in a conspiracy to

1

launder and the laundering of monetary instruments intended to promote the carrying out of specified unlawful activities, namely (1) the provision of material support to a designated foreign terrorist organization (Hamas and the al-Qassam Brigades) in violation of 18 U.S.C. § 2339B and (2) the operation of an unlicensed money transmitting business in violation of 18 U.S.C. § 1960. *See* 18 U.S.C. § 981(a)(1)(A).  (Dkt No. 16 at 1-6.)  The prior motions to stay argued that a stay was necessary under 18 U.S.C. § 981(g)(1) because allowing the civil forfeiture case to proceed would adversely affect the ability of the government to conduct the related criminal investigation and to prosecute the related criminal case.

The Court granted the prior motions to stay and, most recently on November 17, 2022, issued an order staying the civil forfeiture action through and including May 16, 2023 (Dkt No. 36).  The Court determined that a stay was required because (a) the civil forfeiture action is "clearly related" to an ongoing criminal investigation that shares "common facts, similar alleged violations, and some common parties" (*id.* at 2, *citing United States v. All Funds on Deposit in Suntrust Acct. No. XXXXXXXX8359, in Name of Gold & Silver Rsrv., Inc.*, 456 F. Supp. 2d 64, 65 (D.D.C. 2006); and (b) civil discovery in this forfeiture case "would adversely affect the parallel criminal investigation" (*id*. at 2-3).  The Court determined that civil discovery would burden the criminal investigation by likely involving depositions of federal investigators, and could reveal sensitive, non-public information about the nature, scope, and strategy of the criminal investigation (*id*.).

Pursuant to the Court's November 17, 2022, Order, the United States filed a status report under seal on February 15, 2023, which we incorporate herein by reference.

The criminal investigation continues and the arrest warrants have not been executed.  The ongoing criminal investigation involves a continuing examination of Karatas' conduct, as well as the broader investigation into the terrorist fundraising efforts using crypto assets and other

financial mechanisms. A status report on the criminal investigation is submitted *ex parte* and under seal for the Court's consideration.

Counsel for the United States communicated with both counsel for Karatas and counsel for additional claimants who filed their claim in this civil forfeiture case on February 16, 2021 (Dkt No. 11), and there is no objection to this motion to continue the stay.

## ARGUMENT

The stay should be continued for an additional 180 days, because the related criminal investigation is ongoing. Allowing the proceedings to continue at this time would adversely affect the ability of the government to conduct related criminal investigations and prosecute a related criminal case. No protective order can be fashioned to avoid these pitfalls and still permit proper discovery and trial to occur. Accordingly, the Court should continue the stay this action pursuant to 18 U.S.C. § 981(g)(1).

### Section 981(g) Mandates a Stay of a Civil Forfeiture Action Where Civil Discovery Will Adversely Affect a Related Criminal Investigation and Criminal Case

The statutory forfeiture scheme that governs this action explicitly contemplates the situation presented here—that is, a civil judicial forfeiture proceeding that arises out of the same facts as an ongoing criminal investigation. Section 981(g)(1) provides that "upon motion of the United States, the court *shall stay* the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a criminal case." *See* 18 U.S.C. § 981 (emphasis added).

The stay provision of § 981(g) was enacted in 2000 as part of the Civil Asset Forfeiture Reform Act ("CAFRA"), but the use of stays in civil forfeiture cases to protect ongoing related criminal investigations has long been an element of federal forfeiture law. Indeed, § 981(g) actually

3

lowered the government's burden when seeking a stay, eliminating the prior "good cause" requirement, and explicitly extending stay authority to ongoing investigations in addition to ongoing prosecutions. As the Court explained in *United States v. All Funds Deposited in Account No. 200008524845*, 162 F. Supp. 2d 1325, 1330-31 (D. Wyo. 2001):

> The standard for granting relief under the amended statute has also been changed by striking the words "for good cause shown" found in the former sections of the forfeiture law that establish the standard for granting stay relief. The new statute requires only that the court "determine[s] that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation for [sic] the prosecution of a related criminal case."

Thus, while cases granting stays under the prior statute's good cause standard are relevant under CAFRA, cases denying stays because good cause had not been shown are no longer good law.

Courts "must grant" a stay in civil forfeiture actions, when there is a potential adverse effect upon a criminal investigation or prosecution. *United States v. All Funds on Deposit in Suntrust Account Number XXXXXXXX8359*, 456 F. Supp. 2d 64, 65 (D.D.C. 2006) (citing 18 U.S.C. §981(g)(1)); *see also United States v. $1,699,675*, No. 1:13-cv-21459, 2014 WL 687553, *2 (S.D. Fla. Jan. 16, 2014) (statute provides for a "mandatory stay" where the government demonstrates an adverse effect); *United States v. 3039.375 Pounds of Copper Coins*, No. 1:08-cv-230, 2008 WL 4681779, *1-2 (W.D.N.C. Oct. 21, 2008) (entry of a stay is "automatic" if the government shows that civil discovery would adversely affect its ability to conduct a related criminal investigation).

Courts have found an adverse effect where the discovery process "would burden law enforcement officials who are otherwise conducting a contemporaneous criminal investigation" or would lead to the disclosure of confidential information, the government's criminal strategy, or otherwise undiscoverable evidence in the criminal process. *Suntrust Account 8359*, 456 F. Supp. 2d at 66; *see also 6415 North Harrison Ave.*, 2012 WL 4364076, No. 1:11-CV-00304-BAM, 2012

WL 4364076, at *3 (E.D. Cal. Sept. 21, 2012) (Section 981(g) does "not require a particularized showing of prejudice or harm; rather all that the Court must determine is whether the civil discovery will interfere with the criminal investigation"). The potential for running afoul of Fifth Amendment self-incrimination issues is an additional adverse effect considered by courts. *See United States v. $2,067,437.08*, No. 6:07-319, 2008 WL 238514, at *6 (E.D.Tex. Jan. 28, 2008) ("Finally, continuation of the forfeiture proceeding may infringe upon Emilor's [claimant's] right against self-incrimination.").

### There Are Related Criminal Investigations and Prosecutions

As noted above, pursuant to Section 981(g), the Court "must grant" a stay where there is a potential adverse effect upon a related criminal investigation or prosecution. Whether a criminal investigation is "related" to an ongoing civil judicial forfeiture case within the meaning of § 981(g) is governed by § 981(g)(4), which provides that:

> In determining whether a criminal case or investigation is "related" to a civil forfeiture proceeding, the court shall consider the degree of similarity between the parties, witnesses, facts, and circumstances involved in the two proceedings, without requiring an identity with respect to any one or more factors.

Thus, where, as here, "a criminal investigation and a civil forfeiture action have common facts, similar alleged violations and some common parties, the actions are clearly related." *Suntrust Account 8359*, 456 F. Supp. 2d 64 (granting a 6 month stay). As described above, the operative facts and parties involved in the instant case are the same as those in: (1) the criminal investigation related to the claimant's and his co-defendants activities; and (2) other ongoing criminal investigations relating to the al-Qassam Brigades' fundraising efforts and the provision of material support by donors to the al-Qassam Brigades in violation of 18 U.S.C. § 2339B.

Both the civil forfeiture and the ongoing criminal investigation and prosecution relate to Karatas and his co-defendant, including alleged support to a designated terrorist organization, money laundering, and alleged operation of an unlicensed money service business. The criminal case and the civil forfeiture case would involve presentation of evidence regarding Karatas's source of funds, the nature of his business, and his relationship with Atki and others. The Government would have to establish in both cases that Karatas, and Defendant Property 180, were involved in specified unlawful activities (namely 18 U.S.C. §§ 2339B, 1960, and 1956). Thus, the government would be required to prove nearly the identical facts in its criminal investigation/case, as it would in the civil cases. *See $2,067,437.08*, 2008 WL 238514, at *2 (holding risk of adverse effect on criminal case is clear where the government has to prove the same facts in the criminal and civil matters).

### Civil Discovery Would Jeopardize the Related Criminal Prosecution and Investigation

A stay is warranted here under § 981(g)(1) because proceeding with civil discovery will have an obvious adverse effect on the related criminal prosecution and investigation, as detailed in the *ex parte* submission filed concurrently with this motion. Section 981 sets a low threshold for the government to meet in order to show that discovery will create an adverse effect. *See United States v. One 2008 Audi R8 Coupe Quattro*, 866 F. Supp. 2d 1180, 1183 (C.D. Cal. 2011). "Section 981(g)(1) does not require a particularized showing of prejudice or specific harm; rather, all that the Court must determine is whether the civil discovery will interfere with the criminal investigation." *Id.* (citations omitted). "In fact, more specific disclosure of prejudice through detailed evidentiary support will only result in the very prejudice to the criminal proceeding that the Government seeks to avoid." *6415 North Harrison Ave.*, 2012 WL 4364076, at *3.

6

As such, courts have "routinely issued" stays on the basis of the government's allegations of likely prejudice to the related criminal prosecution. *Id.*; *United States v. $845,130.00 of Funds Associated with Apex Choice Ltd.,* No. CV 18-2746 (RC), 2020 WL 6581781, at *2 (D.D.C. Nov. 10, 2020) ("Courts will typically grant stays where the Government shows some evidence that there will likely be prejudice to the related criminal prosecution should the stay be denied."). The government need only show that an adverse impact is likely, and that showing is made where an agent or a government attorney with knowledge of the civil forfeiture and the ongoing criminal investigation so states in a sworn declaration. *See United States v. $1,026,781.61 in United States Currency*, 2013 WL 4714188, *1 (C.D. Cal. July 29, 2013) (agent declaration); *United States v. Various Vehicles, Funds and Real Properties*, 2012 WL 4050829, *2 (D.S.C. Sept. 13, 2012) (AUSA declaration); *United States v. Approximately $6,658.92 in U.S. Currency*, 2015 WL 7750619 (E.D. Cal. Dec. 2, 2015) (evidence of potential adverse effect makes stay appropriate). Where the government makes such a showing, the imposition of a stay is "automatic" based on the mandatory language of the statute. *3039.375 Pounds of Copper Coins*, 2008 WL 4681779.

The central question in determining whether a § 981(g)(1) stay is properly imposed is whether discovery in the civil case "would subject the Government's criminal investigation to 'early and broader civil discovery than would otherwise be possible in the context of the criminal proceeding," and, if so, "a stay should be granted." *Suntrust Account 8359*, 456 F. Supp. 2d at 65 (quoting *United States v. One Assortment of Seventy-Three Firearms*, 352 F. Supp. 2d 2, 4 (D. Me. 2005); *see also $845,130.00 of Funds Associated with Apex Choice Ltd.,* 2020 WL 6581781, at *2 ("One reason why allowing civil discovery in this case would be inappropriate is that the scope of civil discovery is generally far greater than that of criminal discovery."); *United States v. 10 Table Bluff Rd.*, No. 06-5256, 2007 WL 911849, at *2 (N.D. Cal. Mar. 23, 2007) ("civil discovery will

7

likely adversely affect the ability of the Government to conduct the related criminal investigation because it will subject the Government's criminal investigation to broader and earlier discovery than would occur in a criminal proceeding").

Civil discovery would allow claimants and potential criminal defendants to use the civil trial as a "backdoor method to obtain discovery outside the scope of Fed. R. Crim. P. 16." *United States v. Contents of Nationwide Life Insurance Annuity Account No. 0961*, No. 1:05-0196, 2007 WL 682530, at *1 (S.D. Ohio March 1, 2007). Depositions would be required in the present case of Karatas, any of his staff, his purported customers, virtual currency exchange representatives, and law enforcement involved in the investigation. The law enforcement witnesses, including agents and analysts involved in the investigation, would be likely witnesses at trial or in pre-trial proceedings in the criminal prosecution. Having depositions would allow the claimant to examine these witnesses, which would expose the government's potential trial strategy and could require witnesses to divulge sensitive information. *See United States v. $247,052.54*, No. 05-4798, 2007 WL 2009799, at *2 (N.D. Cal. Mar. 1, 2007); *$845,130.00 of Funds Associated with Apex Choice Ltd.*, 2020 WL 6581781, at *2 (granting motion to stay when "the Government will be subject to disclosure of sensitive confidential witnesses through the discovery process, as well as general disruption to the criminal investigation should investigators be required to respond to civil discovery requests.").

Notably, Section 981 does not require a showing of an imminent adverse impact on the related criminal case. Where the case is clearly related to an ongoing criminal investigation or prosecution, as is the case here, a stay is appropriate even where no discovery requests have been made. *See United States v. Assorted Firearms, Motorcycles, and Other Personal Property*, 677 F. Supp. 2d 1214, 1216 (C.D. Cal. 2009); *$1,026,781.61*, 2013 WL 4714188, *1; *United States v.*

*2009 Dodge Challenger*, 2011 WL 6000790 (D. Or. Nov. 30, 2011) (granting stay even though claimants stressed that they would not seek discovery, because the government would still "be compelled to compile and reveal information and evidence collected in support of its criminal investigation" in order to effectively oppose any dispositive motions); *United States v. Approximately $69,577 in U.S. Currency*, 2009 WL 1404690, *3 (N.D. Cal. May 19, 2009).  At a minimum, civil discovery will be necessary in this case in regards to claimant's assertions regarding his businesses and the transactions relating to the al-Qassam Brigades and other entities. Thus, a stay is necessary in the present action to avert the pitfalls associated with civil discovery. *See United States v. All Funds on Deposit in Business Market Account No. 028-0942059-66*, 319 F. Supp. 2d 290, 294 (E.D.N.Y. 2004) (finding that "the court is required to stay" a civil forfeiture, where the court is satisfied that information routinely ordered disclosed in civil discovery would compromise an ongoing criminal case).

The scope of civil discovery is, in some ways, greater than criminal discovery. "Where civil discovery would subject the Government's criminal investigation to 'early and broader civil discovery than would otherwise be possible in the context of the criminal proceeding,' a stay should be granted." *Suntrust Account 8359*, 456 F. Supp. 2d at 65 (quoting *Seventy-Three Firearms*, 352 F. Supp. 2d 2 at 4); *see also 10 Table Bluff Rd.*, 2007 WL 911849, at *2 ("civil discovery will likely adversely affect the ability of the Government to conduct the related criminal investigation because it will subject the Government's criminal investigation to broader and earlier discovery than would occur in a criminal proceeding").  Civil discovery would allow claimants and potential criminal defendants to use the civil trial as a "backdoor method to obtain discovery outside the scope of Fed. R. Crim. P. 16." *United States v. Contents of Nationwide Life Insurance Annuity Account No. 0961*, No. 1:05-0196, 2007 WL 682530, at *1 (S.D. Ohio March 1, 2007).

A protective order is not viable as an alternative to a stay in this matter. The heart of the proof in the instant case involves discovery of the very issues at question in the related criminal investigation of the claimant and the same witnesses would be required to testify in both matters. "Because the discovery the Government desires in the forfeiture action would be harmful to the criminal prosecution, there is no practical way to proceed here [with a protective order] without risking an adverse effect on the criminal case." *$247,052.54*, 2007 WL 2009799, at *3. At best a narrow protective order would still leave open the possibility of disclosure of sensitive information; whereas, a broad protective order would overly limit the discovery process, which would foreclose a fair trial for either party. *See id.* at *2; *see also United States v. $25,290.00 in United States Currency from JP Morgan Chase Bank Account XXXXX*, No. 3:18-cv-0213, 2019 WL 1924007, at *3 (N.D. Tex. Apr. 30, 2019) ("Even if discovery were significantly tailored [by a protective order], the Government would be stuck with the unreasonable position of having to either curtail its evidence in response to dispositive motions or prepare evidence and witnesses related to the criminal matter.").

Finally, 180 days is an appropriate length to continue the stay, and the Government will provide a status update to the Court at the mid-way point. *See, e.g.*, *Suntrust Account 8359* (granting a 6 month stay and ordering the government to file a status report on or before the expiration of the stay); *United States v. Any & all Funds on Deposit in Acct. No. XXXXX-XXXXXXXX at HSBC Bank PLC*, 87 F. Supp. 3d 163, 169 (D.D.C. 2015) (granting motion to stay for 180 days and ordering the parties to file a status report at the conclusion of the 180-day stay).

### A Stay Is Also Appropriate Under the Court's Inherent Power to Control Its Docket

Aside from the authority provided in § 981(g)(1), the Court is empowered to stay cases before it pursuant to its inherent power to control its docket and calendar. *See Mediterranean*

*Enterprises v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983). When "it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it," the district court may do so "pending resolution of independent proceedings which bear upon the case." *Id.* (quoting *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979)). This rule "does not require that the issues in [the other] proceedings are necessarily controlling of the action before the court." *Leyva*, 593 F.2d at 863-64 (citations omitted). "[T]he court may order a stay of the action pursuant to its power to control its docket and calendar and to provide for a just determination of the cases pending before it." *Id.* at 864; *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"); *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) ("it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended").

### Individual Fifth Amendment Rights Would be Harmed by Permitting This Action To Proceed

Fifth Amendment rights are implicated in this civil action as well. As part of civil discovery, the government would be authorized to depose Karatas, who faces criminal charges. The government's proof of unlawful activity will involve his testimony, including through depositions, and admissions via interrogatories. Proceeding with discovery would force Karatas into the unfair position of having to choose between waiving his Fifth Amendment privilege, thereby revealing inculpatory information, or invoking the privilege, but with the knowledge that adverse inferences would be drawn in the civil actions. *Volmar Distributors, Inc. v. New York Post Co.,* 152 F.R.D. 36, 39-40 (S.D.N.Y. 1993); *see also $2,067,437.08*, 2008 WL 238514, at *6.

"Courts have long stayed civil forfeiture cases based upon [such] anticipatory discovery issues[.]" *United States v. $177,844.68*, No. 2:13-civ-100, 2014 WL 4071054, at *5 (D. Nev. Aug. 15, 2014) (internal quotations omitted).

The criminal investigation involves complex, multi-jurisdictional, money laundering allegations involving crypto assets and terrorist organizations. Accordingly, pursuant to 18 U.S.C. 981(g), continuing the stay of this matter for 180 days is appropriate.

There is no objection to this motion.

## CONCLUSION

For the foregoing reasons, the government respectfully submits that the motion to continue the stay should be granted.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar Number 481052

_____/MJF/_____
Michael J. Friedman
New York Bar No. 4297461
Assistant United States Attorney
555 4th Street, N.W., 11-439
Washington, D.C. 20530
(202) 252-6765
Michael.Friedman@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FIFTY-THREE VIRTUAL CURRENCY ACCOUNTS,<br><br>*Defendants.* | Civil Action No. 20-2227 (RC) |

## PROPOSED ORDER

Having considered the Motion to Continue Stay filed by the United States of America, and having determined that there is no objection, it is hereby **ORDERED** that the motion be, and hereby is, **GRANTED.**

As civil discovery and other progress in this case at this time will adversely impact the ability of the United States to conduct a related criminal investigation and prosecution, this case shall be stayed for 180 days from the date of this Order.

The United States shall file a status update 90 days from the date of this Order.

**IT IS SO ORDERED**.

                                                                                                      _____
                                                                                                      Hon. Rudolph Contreras
                                                                                                      United States District Judge