UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FIFTY-THREE VIRTUAL CURRENCY ACCOUNTS, *et al.*,<br><br>Defendants. | JURY TRIAL DEMANDED<br><br>Civil Action No. 1:20-cv-02227-RC |

### THE WEINSTOCK CLAIMANTS' ANSWER TO THE VERIFIED COMPLAINT FOR FORFEITURE IN REM, THEIR CROSSCLAIMS AGAINST CLAIMANT HUSAMETTIN KARATAS AND THEIR COUNTERCLAIMS AGAINST THE UNITED STATES

Claimants Sharon Weinstock, Moshe Weinstock, Geula Weinstock, Aryeh Weinstock, and Chaim Mishael Weinstock, and the Estates of Yitzchak Weinstock, Dov Weinstock, Simon Dolgin and Shirley Dolgin ("Weinstock Claimants") by and through counsel, hereby file their Answer to the Verified Complaint for Forfeiture *in Rem*, their Crossclaims against Husamettin Karatas ("Karatas") and their Counterclaims against the United States, and state as follows:

### NATURE OF ACTION AND THE DEFENDANT *IN REM*

1. Answering ¶ 1, the Weinstock Claimants admit the allegations.

2. Answering ¶ 2, the Weinstock Claimants admit that the owners of the Defendant Properties, as well as the users and administrators of the al-Qassam Brigades' Websites, knowingly and willfully conspired with others, and acted individually, to provide material support and resources to Hamas. The Weinstock Claimants deny that the Defendant Properties are subject to

1

forfeiture. The Weinstock Claimants lack sufficient knowledge or information to enable them to answer the remaining allegations in this paragraph.

3. Answering ¶ 3, the Weinstock Claimants admit that the Defendant Properties are assets of Hamas. The Weinstock Claimants deny that the Defendant Properties are subject to forfeiture. The Weinstock Claimants lack sufficient knowledge or information to enable them to answer the remaining allegations in this paragraph.

## JURISDICTION AND VENUE

4. Answering ¶ 4, the Weinstock Claimants admit that this Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355(a).

5. Answering ¶ 5, the Weinstock Claimants deny that venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1355(b)(1)(A). The Weinstock Claimants lack sufficient knowledge or information to enable them to answer the allegations that venue is proper under 28 U.S.C. § 1355 (b)(2) or 28 U.S.C. § 1395(c).

## FACTS GIVING RISE TO FORFEITURE

**I.   DEFINITION OF TERMS**

**A.  Bitcoin**

6. Answering ¶ 6, the Weinstock Claimants lack sufficient knowledge or information to enable them to answer these allegations.

7. Answering ¶ 7, the Weinstock Claimants lack sufficient knowledge or information to enable them to answer these allegations.

8. Answering ¶ 8, the Weinstock Claimants lack sufficient knowledge or information to enable them to answer these allegations.

9. Answering ¶ 9, the Weinstock Claimants lack sufficient knowledge or information to enable them to answer these allegations.

B. **Blockchain Analysis**

10. Answering ¶ 10, the Weinstock Claimants lack sufficient knowledge or information to enable them to answer these allegations.

11. Answering ¶ 11, the Weinstock Claimants lack sufficient knowledge or information to enable them to answer these allegations.

12. Answering ¶ 12, the Weinstock Claimants lack sufficient knowledge or information to enable them to answer these allegations.

C. **Money Service Business**

13. Answering ¶ 13, the Weinstock Claimants state that the allegations are legal arguments or legal conclusions as to which no answer is required.

14. Answering ¶ 14, the Weinstock Claimants state that the allegations are legal arguments or legal conclusions as to which no answer is required.

15. Answering ¶ 15, the Weinstock Claimants state that the allegations are legal arguments or legal conclusions as to which no answer is required.

16. Answering ¶ 7, the Weinstock Claimants state that the allegations are legal arguments or legal conclusions as to which no answer is required, but to the extent an answer is required the Weinstock Claimants lack sufficient knowledge or information to enable them to answer these allegations.[1]

17. Answering ¶ 16, the Weinstock Claimants state that the allegations are legal arguments or legal conclusions as to which no answer is required, but to the extent an answer is

---

[1] This paragraph is numbered 7 based on a typographical numbering error in the Verified Complaint.

required the Weinstock Claimants lack sufficient knowledge or information to enable them to answer these allegations.

18. Answering ¶ 17, the Weinstock Claimants state that the allegations are legal arguments or legal conclusions as to which no answer is required, but to the extent an answer is required the Weinstock Claimants lack sufficient knowledge or information to enable them to answer these allegations.

19. Answering ¶ 18, the Weinstock Claimants state that the allegations are legal arguments or legal conclusions as to which no answer is required, but to the extent an answer is required the Weinstock Claimants lack sufficient knowledge or information to enable them to answer these allegations.

## II. CURRENT INVESTIGATION OF TERRORIST FUNDING

### A. Designation of Hamas and the al-Qassam Brigades

20. Answering ¶ 19, the Weinstock Claimants admit the allegations.

21. Answering ¶ 20, the Weinstock Claimants admit the allegations.

22. Answering ¶ 21, the Weinstock Claimants admit the allegations.

### B. Terrorist Fundraising Campaign

23. Answering ¶ 22, the Weinstock Claimants admit the allegations.

a. STAGE ONE

24. Answering ¶ 23, the Weinstock Claimants admit the allegations.

25. Answering ¶ 24, the Weinstock Claimants admit the allegations.

26. Answering ¶ 25, the Weinstock Claimants admit the allegations.

27. Answering ¶ 26, the Weinstock Claimants admit the allegations.

28. Answering ¶ 27, the Weinstock Claimants admit the allegations.

29. Answering ¶ 28, the Weinstock Claimants admit the allegations.

30. Answering ¶ 29, the Weinstock Claimants admit the allegations.

31. Answering ¶ 30, the Weinstock Claimants admit the allegations.

    b.    <u>STAGE TWO</u>

32. Answering ¶ 31, the Weinstock Claimants admit the allegations.

33. Answering ¶ 32, the Weinstock Claimants admit the allegations.

34. Answering ¶ 33, the Weinstock Claimants admit the allegations.

35. Answering ¶ 34, the Weinstock Claimants admit the allegations.

    c.    <u>STAGE THREE</u>

36. Answering ¶ 35, the Weinstock Claimants admit the allegations.

37. Answering ¶ 36, the Weinstock Claimants admit the allegations.

38. Answering ¶ 37, the Weinstock Claimants admit the allegations.

39. Answering ¶ 38, the Weinstock Claimants admit the allegations.

40. Answering ¶ 39, the Weinstock Claimants admit the allegations.

41. Answering ¶ 40, the Weinstock Claimants admit the allegations.

42. Answering ¶ 41, the Weinstock Claimants admit the allegations.

43. Answering ¶ 42, the Weinstock Claimants admit the allegations.

44. Answering ¶ 43, the Weinstock Claimants admit the allegations.

45. Answering ¶ 44, the Weinstock Claimants admit the allegations.

46. Answering ¶ 45, the Weinstock Claimants admit the allegations.

**III.   INFRASTRUCTURE OF THE AL-QASSAM BRIGADES' WEBSITES**

47. Answering ¶ 46, the Weinstock Claimants admit the allegations.

48. Answering ¶ 47, the Weinstock Claimants admit the allegations.

**IV.    ACCOUNTS OF DONORS TO THE FUNDRAISING CAMPAIGN**

    49.    Answering ¶ 48, the Weinstock Claimants admit the allegations.

**a.    Virtual Currency Exchange 1:**

    50.    Answering ¶ 49, the Weinstock Claimants admit the allegations.

    51.    Answering ¶ 50, the Weinstock Claimants admit the allegations.

    52.    Answering ¶ 51, the Weinstock Claimants admit the allegations.

    53.    Answering ¶ 52, the Weinstock Claimants admit the allegations.

**b.    Virtual Currency Exchange 2:**

    54.    Answering ¶ 53, the Weinstock Claimants admit the allegations.

    55.    Answering ¶ 54, the Weinstock Claimants admit the allegations.

    56.    Answering ¶ 55, the Weinstock Claimants admit the allegations.

    57.    Answering ¶ 56, the Weinstock Claimants admit the allegations.

    58.    Answering ¶ 57, the Weinstock Claimants admit the allegations.

    59.    Answering ¶ 58, the Weinstock Claimants admit the allegations.

    60.    Answering ¶ 59, the Weinstock Claimants admit the allegations.

    61.    Answering ¶ 60, the Weinstock Claimants admit the allegations.

    62.    Answering ¶ 61, the Weinstock Claimants admit the allegations.

    63.    Answering ¶ 62, the Weinstock Claimants admit the allegations.

    64.    Answering ¶ 63, the Weinstock Claimants admit the allegations.

    65.    Answering ¶ 64, the Weinstock Claimants admit the allegations.

    66.    Answering ¶ 65, the Weinstock Claimants admit the allegations.

    67.    Answering ¶ 66, the Weinstock Claimants admit the allegations.

    68.    Answering ¶ 67, the Weinstock Claimants admit the allegations.

69. Answering ¶ 68, the Weinstock Claimants admit the allegations.

70. Answering ¶ 69, the Weinstock Claimants admit the allegations.

71. Answering ¶ 70, the Weinstock Claimants admit the allegations.

c. **Virtual Currency Exchange 3:**

72. Answering ¶ 71, the Weinstock Claimants admit the allegations.

73. Answering ¶ 72, the Weinstock Claimants admit the allegations.

d. **Virtual Currency Exchange 4:**

74. Answering ¶ 73, the Weinstock Claimants admit the allegations.

75. Answering ¶ 74, the Weinstock Claimants admit the allegations.

e. **Virtual Currency Exchange 5:**

76. Answering ¶ 75, the Weinstock Claimants admit the allegations.

77. Answering ¶ 76, the Weinstock Claimants admit the allegations.

f. **Virtual Currency Exchange 6:**

78. Answering ¶ 77, the Weinstock Claimants admit the allegations.

79. Answering ¶ 78, the Weinstock Claimants admit the allegations.

g. **Virtual Currency Exchange 7:**

80. Answering ¶ 79, the Weinstock Claimants admit the allegations.

81. Answering ¶ 80, the Weinstock Claimants admit the allegations.

h. **Virtual Currency Exchange 8:**

82. Answering ¶ 81, the Weinstock Claimants admit the allegations.

83. Answering ¶ 82, the Weinstock Claimants admit the allegations.

84. Answering ¶ 83, the Weinstock Claimants admit the allegations.

    i. **Virtual Currency Exchange 9:**

        85. Answering ¶ 84, the Weinstock Claimants admit the allegations.

        86. Answering ¶ 85, the Weinstock Claimants admit the allegations.

        87. Answering ¶ 86, the Weinstock Claimants admit the allegations.

        88. Answering ¶ 87, the Weinstock Claimants admit the allegations.

        89. Answering ¶ 88, the Weinstock Claimants admit the allegations.

    j. **Virtual Currency Exchange 10:**

        90. Answering ¶ 89, the Weinstock Claimants admit the allegations.

        91. Answering ¶ 90, the Weinstock Claimants admit the allegations.

        92. Answering ¶ 91, the Weinstock Claimants admit the allegations.

        93. Answering ¶ 92, the Weinstock Claimants admit the allegations.

    k. **Virtual Currency Exchange 11:**

        94. Answering ¶ 93, the Weinstock Claimants admit the allegations.

        95. Answering ¶ 94, the Weinstock Claimants admit the allegations.

**IV. UNLICENSED MONEY SERVICE BUSINESS LINKED TO THE AL-QASSAM BRIGADES' FUNDRAISING SCHEME**

        96. Answering ¶ 95, the Weinstock Claimants admit the allegations.

        97. Answering ¶ 96, the Weinstock Claimants admit the allegations.

        98. Answering ¶ 97, the Weinstock Claimants admit the allegations.

        99. Answering ¶ 98, the Weinstock Claimants admit the allegations.

        100. Answering ¶ 99, the Weinstock Claimants deny the allegation that "Due to the nature of correspondent bank transactions, these international wires transited from outside the United States into the United States and then back out to the intended destination[,]" to the extent that allegation is based on the presumption or belief that all dollar wire transfers pass through the

United States. *Tamam v. Fransabank SAL*, 677 F. Supp. 2d 720, 729-730 (S.D.N.Y. 2010) (rejecting claim that all dollar transactions pass through the United States and finding as a matter of fact that dollar clearance is available through correspondent banks "all over the world."). To the extent that the foregoing allegation is purportedly based on actual proof that the international wires in question passed through the United States, then the Weinstock Claimants lack sufficient knowledge or information to enable them to answer this allegation. The Weinstock Claimants admit the other allegations in this paragraph.

101.    Answering ¶ 100, the Weinstock Claimants admit the allegations.

102.    Answering ¶ 101, to the extent that the allegations about U.S. customers imply that those customers were involved in transactions relating to Hamas, the Weinstock Claimants lack sufficient knowledge or information to enable them to answer these allegations. The Weinstock Claimants admit the other allegations of this paragraph.

103.    Answering ¶ 102, the Weinstock Claimants admit the allegations.

104.    Answering ¶ 103, the Weinstock Claimants admit the allegations.

105.    Answering ¶ 104, the Weinstock Claimants admit the allegations.

106.    Answering ¶ 105, in respect to the allegation that "Defendant Property 180 relied on the U.S. financial system to operate this exchange business" the Weinstock Claimants lack sufficient knowledge or information to enable them to answer this allegation. The Weinstock Claimants admit the other allegations of this paragraph.

107.    Answering ¶ 106, the Weinstock Claimants admit the allegations.

108.    Answering ¶ 107, to the extent that the allegations about a U.S.-nexus customer implies that that customer was involved in transactions relating to Hamas, the Weinstock

Claimants lack sufficient knowledge or information to enable them to answer these allegations. The Weinstock Claimants admit the other allegations of this paragraph.

109. Answering ¶ 108, the Weinstock Claimants admit the allegations.

110. Answering ¶ 109, the Weinstock Claimants admit the allegations.

## COUNT ONE – FORFEITURE
### (18 .S.C. § 981(A)(1)(G)(I))

111. Answering ¶ 110, the Weinstock Claimants incorporate by reference their responses to the allegations set forth in Paragraphs 1 to 107 above as if fully set forth herein.

112. Answering ¶ 111, the Weinstock Claimants admit the allegations.

113. Answering ¶ 112, the Weinstock Claimants admit the allegations.

114. Answering ¶ 113, the Weinstock Claimants admit that the Defendant Properties are assets of Hamas, and deny that the Defendant Properties are subject to forfeiture.

## COUNT TWO – FORFEITURE
### (18 U.S.C. § 981(a)(1)(A))

115. Answering ¶ 114, the Weinstock Claimants incorporate by reference their responses to the allegations set forth in Paragraphs 1 to 113 above as if fully set forth herein.

116. Answering ¶ 115, the Weinstock Claimants admit that the Defendant Properties are assets of Hamas, and lack sufficient knowledge or information to enable them to answer the other allegations in this paragraph.

117. Answering ¶ 116, the Weinstock Claimants lack sufficient knowledge or information to enable them to answer the allegations in this paragraph.

118. Answering ¶ 117, the Weinstock Claimants deny the allegations contained in this paragraph.

## THE WEINSTOCK CLAIMANTS' AFFIRMATIVE DEFENSE

119. The Weinstock Claimants assert an affirmative defense of lack of jurisdiction over the *res* and lack of personal jurisdiction over the owners of the *res*.

120. "[B]oth *in rem* and *quasi in rem* jurisdiction require the relevant property to reside within the court's geographic jurisdiction." *Agudas Chasidei Chabad of United States v. Russian Fed'n*, No. 1:05-CV-1548-RCL, 2020 WL 13611456, at *23 (D.D.C. Nov. 6, 2020).

121. In rem jurisdiction is an "elliptical way of referring to jurisdiction over the interests of persons in a thing … in order to justify an exercise of jurisdiction in rem, the basis for jurisdiction must be sufficient to justify exercising jurisdiction over the interests of persons in a thing. The standard for determining whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum-contacts standard elucidated in *International Shoe*." *Shaffer v. Heitner*, 433 U.S. 186, 207 (1977) (cleaned up).

122. Because this is a civil, not a criminal, forfeiture action, under the law of this Circuit, the regular Due Process standards for civil actions apply here. *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56 (D.C. Cir. 2017). *Cf. Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 341 (2d Cir. 2016) (noting "the more expansive due process test in criminal cases.").

123. The Verified Complaint indicates that some or all of the Defendant Properties are located without the United States – *i.e.*, beyond this Court's "geographic jurisdiction" – and that all the persons with interests in the Defendant Properties are outside of the United States.

124. Exercise of *in rem* jurisdiction in this action does not comply with the Fifth Amendment's Due Process Clause because the Plaintiff has failed to allege, much less prove, and cannot prove, that the Defendant Properties and the persons with interests in the Defendant Properties, have minimum contacts with the United States.

125. Under the law of this Circuit, the due process standards of the Fifth Amendment are identical to those of the Fourteenth Amendment. *Livnat*, 851 F.3d at 54. Thus, under Circuit law, the fact that this action was brought by the federal government and not a state government permits no leeway or special consideration in the application of the Due Process Clause. The United States Government cannot skirt the Due Process Clause any more than Rhode Island can.

126. This Court's lack of jurisdiction over the *res* and lack of personal jurisdiction over the owners of the *res* is reflected in the fact that the Plaintiff's Verified Complaint fails to "state the grounds for … in rem jurisdiction over" the Defendant Properties, as explicitly required by Fed. R. Civ. P. Supp. R. G(2).

127. Therefore, Plaintiff's forfeiture action must be dismissed under the Due Process Clause.

## THE WEINSTOCK CLAIMANTS' CROSSCLAIMS AND COUNTERCLAIMS

128. For their Crossclaims and Counterclaims, the Weinstock Claimants allege as follows:

## INTRODUCTION

129. The Weinstock Claimants are the family members (and the estates of deceased family members) of Yitzchak Weinstock, a 19-year-old American citizen who was murdered in a terrorist shooting attack carried out by the Hamas terrorist organization.

130. On May 17, 2019, the Weinstock Claimants obtained a final judgment in the United States District Court for the Southern District of Florida against Hamas, under the Antiterrorism Act, 18 U.S.C. § 2333 (the "Judgment"). *See Weinstock v. Islamic Republic of Iran, et al.*, 2019 WL 1993778, (S.D. Fla. May 6, 2019).

131.   The total amount of the Judgment (before post-judgment interest) is $78,873,000. The Judgment remains wholly unsatisfied.

132.   The Judgment was registered in this Court pursuant to 28 U.S.C. § 1963. *Weinstock v. Islamic Republic of Iran, et al*. 23-mc-00050 (D.D.C.). The Judgment thus has "the same effect as a judgment of" this Court, and "may be enforced in like manner." § 1963.

133.   The Weinstock Claimants assert their crossclaims and counterclaims in this action in the form of a creditors' bill to enforce their Judgment. "A judgment creditor's bill is in essence an equitable execution comparable to proceedings supplementary to execution." *Pierce v. United States*, 255 U.S. 398, 401-02 (1921). *Cf. Grupo Mexicano de Desarrollo v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999) (discussing the "equitable action known as a 'creditor's bill.'").

134.   Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA") (appearing at 28 U.S.C. § 1610 (note)) provides in relevant part: "Notwithstanding any other provision of law … in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism … the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable." TRIA § 201(a) .

135.   Hamas is a "terrorist party" within the meaning of TRIA § 201(a) because it is a "terrorist organization" as defined in section 212(a)(3)(B)(vi) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(3)(B)(vi))). *See* definition in TRIA § 201(d)(4).

136.   The Judgment was entered "on a claim based upon an act of terrorism" within the meaning of TRIA § 201(a) because the murder of Yitzchak Weinstock was "terrorist activity" as

defined in section 212(a)(3)(B)(iii) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(3)(B)(iii))). *See* definition in TRIA § 201(d)(1)(B).

137. The Weinstock Claimants are therefore also entitled to enforce their Judgment under TRIA § 201(a).

## JURISDICTION

138. This Court has subject-matter to adjudicate the Weinstocks' crossclaims and counterclaims pursuant to its ancillary jurisdiction to enforce its own judgments (including judgments registered in this Court under 28 U.S.C. § 1963), and pursuant to § 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"), 28 U.S.C. § 1610 (note).

139. The Court has personal jurisdiction over Karatas to adjudicate the Weinstock Claimants' crossclaims because he voluntarily appeared in this action.

140. The Court has personal jurisdiction over Plaintiff United States to adjudicate the Weinstock Claimants' counterclaims claims because it initiated this action.

141. By initiating this action, Plaintiff United States waived its sovereign immunity from the Weinstock Claimants' counterclaims.

## COUNT ONE
## CROSSCLAIM FOR TURNOVER AGAINST KARATAS

142. The Weinstock Claimants incorporate by reference their responses to Plaintiff's allegations set forth above, and their own allegations set forth above, as if fully set forth herein.

143. Karatas has in his possession, custody or control assets of Hamas subject to turnover to the Weinstock Claimants in satisfaction of their Judgment, including without limitation Defendant Properties described in the Verified Complaint.

144. To the extent that any Hamas assets in Karatas' possession, custody or control are blocked they are subject to turnover to the Weinstock Claimants in satisfaction of their Judgment pursuant to TRIA § 201(a).

145. To the extent that the Hamas assets in Karatas' possession, custody or control, whether blocked or not blocked, are the subject of the Plaintiff's forfeiture action and/or any restraints or encumbrances issued pursuant thereto, they are nonetheless subject to turnover to the Weinstock Claimants in satisfaction of their Judgment because Plaintiff's forfeiture action must be dismissed on the merits and/or pursuant to the Weinstock Claimants' affirmative defense.

146. To the extent that any blocked Hamas assets in Karatas' possession, custody or control are the subject of the Plaintiff's forfeiture action and/or any restraints or encumbrances issued pursuant thereto, they are nonetheless subject to turnover to the Weinstock Claimants in satisfaction of their Judgment because TRIA § 201(a) permits enforcement of the Judgment "[n]otwithstanding any other provision of law" and therefore overrides Plaintiff's forfeiture action and/or any restraints or encumbrances issued pursuant thereto.

## COUNT TWO
## COUNTERCLAIM FOR TURNOVER AGAINST THE UNITED STATES

147. The Weinstock Claimants incorporate by reference their responses to Plaintiff's allegations set forth above, and their own allegations set forth above, as if fully set forth herein.

148. Though the Verified Complaint is vague on this point, the United States may currently have in its possession, custody or control assets of Hamas subject to turnover to the Weinstock Claimants in satisfaction of their Judgment, including without limitation Defendant Properties described in the Verified Complaint.

149. If the United States prevails on its forfeiture action, the United States will have in its possession, custody or control assets of Hamas subject to turnover to the Weinstock Claimants

15

in satisfaction of their Judgment, including without limitation Defendant Properties described in the Verified Complaint.

150. The assets of Hamas currently in the United States' possession, custody or control, or that come into the United States' possession, custody or control as a result of the forfeiture actions, are subject to turnover to the Weinstock Claimants in satisfaction of their Judgment because (i) the United States waived its sovereign immunity by initiating this action; (ii) any assets restrained or encumbered by the United States but not held by the United States Treasury or in a bank account titled to the United States are not protected from execution by the United States' sovereign immunity; and/or (iii) the "notwithstanding" provision of § 201(a) overrides the United States' sovereign immunity.

151. If the forfeiture action is dismissed, the assets of Hamas currently in the United States' possession, custody or control, or that come into the United States' possession, custody or control during the course of the forfeiture action, will be subject to turnover to the Weinstock Claimants in satisfaction of their Judgment as garden-variety assets of Hamas.

**WHEREFORE**, the Weinstock Claimants pray for a judgment:

    a. **ORDERING** Karatas to turnover to the Weinstock Claimants forthwith any and all assets of Hamas in his possession, custody or control;

    b. **ORDERING** the United States to turnover to the Weinstock Claimants forthwith any and all assets of Hamas in its possession, custody or control;

    c. If necessary to grant the relief described in (a) and (b) above, **DISMISSING** the United States' forfeiture action on the merits or on the basis of the Weinstock Claimants' affirmative defense; and

    d. **GRANTING** such other relief as the Court deems just and proper.

Dated: February 15, 2024 　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　By: /s/ Asher Perlin

Asher Perlin
LAW OFFICE OF ASHER PERLIN
Bar I.D. FL0006
4600 Sheridan Street, Suite 303
Hollywood, Florida 33021
786-687-0404
asher@asherperlin.com

Counsel for the Weinstock Claimants

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed on February 15, 2024, on the Court's CM/ECF system which will send a notice of electronic filing to counsel of record for all parties.

By: /s/ Asher Perlin

Asher Perlin
LAW OFFICE OF ASHER PERLIN
Bar I.D. FL0006
4600 Sheridan Street, Suite 303
Hollywood, Florida 33021
786-687-0404
asher@asherperlin.com

Counsel for the Weinstock Claimants