## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

UNITED STATES OF AMERICA,

           Plaintiff,

                               Civil Action No. 1:20-cv-02227-RC

     v.

FIFTY-THREE VIRTUAL CURRENCY
ACCOUNTS, *et al.*,

           Defendants.

_____

## THE WEINSTOCK CLAIMANTS/JUDGMENT CREDITORS' OPPOSITION TO HUSAMETTIN KARATAS'S MOTION TO STAY DISCOVERY

Claimants/Judgment Creditors, Sharon Weinstock, Moshe Weinstock, Geula Weinstock, Aryeh Weinstock, Chaim Mishael Weinstock, and the Estates of Yitzchak Weinstock, Dov Weinstock, Simon Dolgin, and Shirley Dolgin (the "Weinstocks") by and through counsel, oppose Husamettin Karatas's ("Karatas") Motion to Stay Discovery, and state as follows:

### BACKGROUND

This action was initiated by the government as an *in rem* action seeking forfeiture of certain properties (virtual currency assets and domain names) that either belong to the Hamas terrorist organization or to others who provided material support and resources to Hamas. Complaint, DE 1 at ¶¶ 2-3. In connection with its seizure of the Hamas assets, the government filed a criminal complaint against Claimant, Husamettin Karatas, and a co-conspirator. *U.S. v. Akti*, case no. 1:20-nj-157 (D.D.C.). The government's sworn Affidavit in Support of an Application for a Criminal Complaint and Arrest Warrant (filed herein as DE 16-1), shows that Karatas used the virtual

1

currency account identified herein as "Property 180" to launder millions of dollars for Hamas. Karatas voluntarily appeared herein and submitted to this Court's jurisdiction to seek affirmative relief in the form of the verified claim he filed regarding Property 180. Husamettin Karatas' (sic) Verified Claim, DE 5 at 1. Throughout this proceeding, the government has maintained that Karatas is a fugitive from justice who has refused to submit to the jurisdiction of the federal court hearing his criminal case. See e.g., Motion to Stay, DE 16 at 8, 18 (noting that Karatas's claim should be stricken under the fugitive disentitlement doctrine).

The Weinstocks are the family members (and the estates of deceased family members) of Yitzchak Weinstock, a 19-year-old American citizen who was murdered by in a terrorist shooting attack carried out by Hamas and its so-called "Al-Qassam Brigades." On May 17, 2019, the Weinstocks obtained a $78,873,000 final judgment (the "Judgment") in the United States District Court for the Southern District of Florida against Hamas, under the Anti-Terrorism Act, 18 U.S.C. § 2333 (the "ATA"). *See Weinstock v. Islamic Republic of Iran, et al.*, 2019 WL 1993778, (S.D. Fla. May 6, 2019). That judgment remains wholly unsatisfied.

The Weinstocks filed a verified claim herein to assert their interest in any and all of the defendant properties. Verified Claim of Weinstocks, DE 11. The Weinstocks also  registered their Judgment in this Court pursuant to 28 U.S.C. § 1963. *Weinstock v. Islamic Republic of Iran, et al*. 23-mc-00050 (D.D.C.). The Judgment thus has "the same effect as a judgment of" this Court, and "may be enforced in like manner." 28 U.S.C. § 1963.

Since the initiation of this case, the government has sought multiple stays of discovery pursuant to 18 U.S.C. § 981(g)(1), claiming that civil discovery would adversely affect its criminal investigation and prosecution of Karatas and his co-conspirators. *See e.g*., Government's Motions to Stay, DE 16 at 1, DE 22, DE 34. The Weinstocks consented to every motion to stay

filed by the government.

As indicated by the government's filings herein and in the criminal case, Karatas was involved in a "complex, multi-jurisdictional, money laundering [scheme] involving cryptocurrency and terrorist organizations," including specifically Hamas – the Weinstocks' judgment debtor. See Motion to Stay, DE 16 at 18; Affidavit in Support of an Application for a Criminal Complaint and Arrest Warrant, DE 16-1. Clearly Karatas has discoverable information that is extremely relevant to the Weinstocks' claims herein and to their judgment enforcement. The government no longer seeks to stay proceedings or discovery herein under 18 U.S.C. § 981(g)(1). See Status Report DE 51.

The last of the government's requested stays expired on December 4, 2023. Minute Order filed November 14, 2023. Not later than December 5, 2023, the Weinstocks informed the government and Karatas that they intended to seek discovery. However, neither the government nor Karatas moved to stay discovery. On February 22, 2024, the Weinstocks served Karatas with a Notice of Deposition. The Notice of Deposition was served[1] pursuant to Fed. R. Civ. P. 30, as party discovery herein, and pursuant to Fed. R. Civ. P. 69 as discovery in aid of execution of the Weinstocks' terrorism Judgment against Hamas.

In response to the Notice of Deposition, Karatas filed a *pro forma* motion to stay discovery. Karatas argues that discovery should be disallowed because Karatas and the government have filed dispositive motions to dismiss the Weinstocks' claims. Karatas's Motion to Stay, DE 54 at 3-4. Karatas cites the Court's "inherent authority to control its docket" without explaining why that authority supports the motion to stay. *Id*. at 5. Finally, Karatas cuts and pastes from the government's earlier motions to stay and asserts that because Karatas faces criminal charges,

---

[1] The Notice of Deposition was served upon Karatas and a copy was also sent to the government.

3

allowing his deposition to proceed, "would force Karatas into the unfair position of having to choose between waiving his Fifth Amendment privilege, or invoking the privilege, but with the knowledge that adverse inferences would be drawn in the civil actions." *Id*. at 6. Because most of the substantive filings in this case have been filed under seal, the Weinstocks are not aware of the status of the criminal investigation and proceedings or any negotiations between the government and Karatas. However, it is clear that while the government previously requested stays, at least in part to protect Karatas's Fifth Amendment rights, the government no longer believes that the stay is necessary, and Karatas's Fifth Amendment rights are not at risk. Under these circumstances, the Court should not credit Karatas's constitutional arguments without affording the Weinstocks an opportunity to discovery the actual status of the criminal proceedings and any negotiations to resolve those charges.

The Weinstocks waited for three years for the government-requested stays to lapse. Karatas now accuses the Weinstocks of attempting to "jump ahead" to propound discovery regarding his relationship with Hamas and Hamas assets – a relationship that is confirmed by the government's Affidavit in Support of an Application for a Criminal Complaint and Arrest Warrant (DE 16-1). Karatas's Motion to Stay, DE 54 at 3. Karatas argues that he should not be "burdened" with "costly civil discovery." Notably, Karatas does not indicate how or to what extent submitting to a deposition would burden him, or what the costs of compliance would include. Neither does he explain why allowing victims of Hamas terrorism to depose a Hamas financier would be "unfair." *See id*. at 6.

## DISCUSSION

**A.    Karatas's Motion to Stay should be denied pursuant to the statutory and common law fugitive disentitlement doctrine.**

The fugitive disentitlement doctrine developed at common law and is based on the idea "that

a fugitive should not be able to exploit judicial processes to his advantage in one matter while scoffing at them in another." *United States v. $6,976,934.65*, 478 F. Supp. 2d 30, 35 (D.D.C. 2007). The power to disallow fugitives' claims was based upon a court's inherent authority. However, in *Degen v. United States,* 517 U.S. 820, 827 (1996), the Supreme Court held that a court's inherent authority, without more, could not be stretched to authorize a court to impose upon fugitives the "harsh sanction of absolute disentitlement" to assert claims in civil forfeiture actions. Nonetheless, the Court acknowledged the inherent authority of courts to sanction fugitives with other penalties short of "absolute disentitlement." *Id*. at 827. Following *Degan*, Congress enacted 28 U.S.C. § 2466 to provide **statutory** authority for the "harsh sanction of absolute disentitlement" Under 28 U.S.C. § 2466(a) criminal defendants, like Karatas, who refuse to submit to U.S. jurisdiction to face a criminal prosecution cannot seek affirmative relief in a related forfeiture action. *United States v. $6,976,934.65*, 478 F. Supp. 2d 30, 36 (D.D.C. 2007).

Karatas remains a fugitive from justice who refuses to submit himself to the jurisdiction of the federal court hearing the criminal case. *See e.g*., Motion to Stay, DE 16 at 8, 18 (noting that Karatas's claim should be stricken under the fugitive disentitlement doctrine); see also, DE 22 at 2-3 (same, and noting that Karatas remained a fugitive and that the government intended to move to strike Karatas's claim); DE 34 (same). While they do not waive their right to request that the Court disallow Karatas's claim entirely, for purposes of this response, the Weinstocks request only that the Court strike or deny Karatas's motion to stay under both the statutory and common law fugitive disentitlement doctrines.

Because Karatas remains a fugitive, the Weinstocks' only opportunity to obtain discovery from him, whether under Rule 30 or Rule 69, is within the forfeiture proceeding in which Karatas has voluntarily appeared. Karatas's fugitive status affects the court's ability to carry out its judicial

business and severely limits the Weinstocks ability to enforce their judgment or to obtain necessary discovery relating thereto. For this reason, the Court should deny Karatas's Motion to Stay Discovery. *Cf.*, *Ajaka v. Gacki*, 557 F.Supp.3d 45, 49-50 (D.D.C. 2021).

B. **Karatas fails to carry his burden to justify a stay of discovery**.

A party seeking to have discovery stayed bears the burden of establishing the need for a stay. *Clinton v. Jones,* 520 U.S. 681, 708 (1997). The movant "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis v. N. Am. Co.,* 299 U.S. 248, 255 (1936).

Here, Karatas seeks a stay based primarily upon his hope that the government will prevail in its motion to dismiss the Weinstocks' claim for lack of standing. But the government's arguments lack merit[2].  Without arguing the motion to dismiss in this response, "the requirements for a claimant to demonstrate constitutional standing to challenge a forfeiture are very forgiving." *United States v. Seventeen Thousand Nine Hundred Dollars ($17,900.00) in United States Currency*, 859 F.3d 1085, 1089 (D.C. Cir. 2017). Moreover, in *United States v. All Funds on Deposit with R.J. O'Brien & Associates*, 783 F.3d 607 (7th Cir. 2015), the Seventh Circuit held that the terrorism victim judgment creditors (like the Weinstocks) had constitutional standing, statutory standing under the Terrorism Risk Insurance Act ("TRIA") (one of the statutes relied upon by the Weinstocks here[3]), and statutory standing under civil forfeiture. For the same reasons the judgment creditors had standing in *R.J. O'Brien*, the Weinstocks have standing here. Therefore, the government's motion to dismiss is likely to fail.

---

[2] The Weinstocks' response to the motions to dismiss is not due until April 25, 2024, and the government's and Karatas's replies are not due until May 16, 2024. See Minute Order dated January 24, 2024.
[3] See Weinstock Claimants' Answer, Crossclaims, and Counterclaims (DE 53) at 13-15.

Karatas argues that he should not be compelled to bear the burdens of discovery until the dispositive motions have been resolved. A party opposing discovery must demonstrate through affidavits or other evidence the nature and extent of any burden. See e.g., *Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 191 (D.D.C. 1998); *Kruger v. Cogent Commc'ns, Inc.*, 2016 WL 11121058, at \*4, n.2 (D.D.C. Oct. 24, 2016). Karatas has made no showing as to the burden of submitting to a single deposition. Indeed, the Weinstocks offered to conduct the deposition remotely. But Karatas refused. The motion to stay discovery should be denied for this reason alone.

Finally, the equities favor denial of the motion to stay. As discussed above, Karatas is a fugitive who has willingly submitted himself to the jurisdiction of this Court to pursue his claim. The Court should not allow a fugitive accused of financing Hamas and laundering millions of dollars in Hamas's assets through a virtual currency account, to exploit judicial processes to assert his claim to that account while scoffing at the authority of the federal courts in the related criminal proceedings. Similarly, Karatas should not be permitted to assert his claim to the Hamas-linked virtual currency account while denying the Weinstocks an opportunity to obtain necessary discovery regarding that account and any related transactions and assets.

## CONCLUSION

For the reasons above, the Motion to Stay Discovery should be denied.

Dated: March 25, 2024                    Respectfully submitted,

By:  /s/ Asher Perlin
Asher Perlin
LAW OFFICE OF ASHER PERLIN
Bar I.D. FL0006
4600 Sheridan Street, Suite 303
Hollywood, Florida 33021
786-687-0404
asher@asherperlin.com

Counsel for the Weinstock Claimants

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed on March 25, 2024, on the Court's CM/ECF system which will send a notice of electronic filing to counsel of record for all parties.

By: _/s/ Asher Perlin_____

Asher Perlin
LAW OFFICE OF ASHER PERLIN
Bar I.D. FL0006
4600 Sheridan Street, Suite 303
Hollywood, Florida 33021
786-687-0404
asher@asherperlin.com

Counsel for the Weinstock Claimants