UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

              Plaintiff,

   v.

FIFTY-THREE VIRTUAL CURRENCY
ACCOUNTS, et al.,

              Defendants in rem,

HUSAMETTIN KARATAS,

              Claimant,

    - and -

SHARON BETH WEINSTOCK, et al.,

              Claimants.

Civil Action No. 20-2227 (RC)

## UNITED STATES' REPLY IN FURTHER SUPPORT OF ITS MOTION FOR LEAVE TO AMEND

Plaintiff the United States of America (the "United States" or "Government") respectfully submits this reply in further support of its motion for leave to amend its complaint (ECF No. 62, "Mot."), which seeks to drop one property, Defendant Property 180, from this suit as the United States no longer believes it is (a) the property of a perpetrator of a federal crime of terrorism or provided a person a source of influence over such a perpetrator, or (b) involved in a money laundering conspiracy (either to promote providing material support to a foreign terrorist organization or to promote carrying on an unlicensed money transmitting business).

## INTRODUCTION

As noted in the Government's Motion, Claimant Husamettin Karatas consents to the relief sought by the United States' Motion.  In their response, Claimants Sharon Beth Weinstock and others (the "Weinstock Claimants") note that they do not oppose the United States' request to amend (ECF No. 64, "Weinstock Opp'n"), but the Weinstock Claimants oppose the upshot of the United States' amendment—i.e., that Defendant Property 180 is no longer a party to this case and should be returned to its status quo ante.  The Weinstock Claimants instead argue that the Court should continue to exercise jurisdiction over Defendant Property 180 because they have perfected a lien against it by filing a "creditor's bill" as a counterclaim against the United States.[1]

But the Weinstock Claimants' counterclaim is plainly not in rem in nature, instead it is an in personam claim against another party to this litigation.  As such, it provides the Weinstock Claimants no lien on Defendant Property 180.  Moreover, the Weinstock Claimants could not attach or execute on Defendant Property 180 to create any judgment lien because that property is in the possession of the United States, and the Government has not waived its sovereign immunity to such creditor process.  *See Greenbaum v. Islamic Republic of Iran*, 67 F.4th 428, 431 (D.C. Cir. 2023).

---

[1]     The Weinstock Claimants also appear to argue that their "creditor's bill" crossclaim against Karatas establishes a lien over Defendant Property 180.  But it is undisputed that the property is in the possession of the United States.  As such, even were their crossclaim considered to be an in rem attachment proceeding (and not an in personam claim as pled), and even were such a claim proper in a forfeiture action (it is not), it is unclear how such a crossclaim could establish a judgment lien over Defendant Property 180.  *See* Fed. R. Civ. P. 69(a)(1) (collection writs are governed by state procedural rules unless in conflict with federal law); D.C. Code § 16-546 (attachment of credits held by a third-party garnishee is made by serving writ on garnishee); *Consumers United Ins. Co. v. Smith*, 644 A.2d 1328, 1356 (D.C. 1994) ("a writ of garnishment covers only the property of the debtor in the hands of the garnishee at the time the writ is served").

Moreover, the Weinstock Claimants' attempt to thwart returning Defendant Property 180 to its status quo ante before the United States seized it fails for several other reasons.  First, the Weinstock Claimants lack any standing to participate in this case.  Second, the Weinstock Claimants' counterclaim is inappropriate in this in rem forfeiture action.  Third, the Weinstock Claimants' counterclaim, even were it otherwise valid, does not extend to Defendant Property 180—as pled, the Weinstock Claimants' counterclaim only pertains to "assets of Hamas," and the record no longer makes plausible that Defendant Property 180 is the property of Hamas as the United States' has now disavowed any such allegations.

Lastly, the Weinstock Claimants' remaining arguments clearly lack merit.  For these reasons, the Court should permit the United States' amendment and direct it to return Defendant Property 180 to its status quo ante as there no basis for the Court to continue to assert in rem jurisdiction over it.

## ARGUMENT

I.    <u>**The Weinstock Claimants Have No Lien Over Defendant Property 180.**</u>

The Weinstock Claimants' suggestion that they have a lien on Defendant Property 180 is incorrect.  As an initial matter, in their Answer, the Weinstock Claimants suggest that this Court lacks in rem jurisdiction over all Defendant Properties in this suit because they lack minimum contacts with the United States.  Weinstock Answer (ECF No. 53) ¶¶ 119–27.  Accordingly, it is unclear how the Weinstock Claimants could have perfected a lien on Defendant Property 180 when they believe the Court has never had jurisdiction over it.

But putting aside that threshold defect in the Weinstock Claimant's position, and assuming that the Court has in rem jurisdiction over the Defendant Properties (it plainly does), the Weinstock Claimants are wrong in contending that they have a lien on Defendant Property 180.  The Weinstock Claimants have served no process on Defendant Property 180 and instead in their

Answer asserted in personam claims against the United States and Karatas.  But an in personam claim against a party does not establish a lien over specific property.  Moreover, the Weinstock Claimants can perfect no judgment lien on Defendant Property 180 because the United States presently possesses it and has not waived its sovereign immunity for any such creditor process.

### A.      The Weinstock Claimants Asserted An In Personam Counterclaim and Crossclaim, Not a Claim Against Any Particular Property.

In their Answer, the Weinstock Claimants asserted a "crossclaim for turnover against Karatas[,]" Weinstock Answer (ECF No. 53) at 14, and a "counterclaim for turnover against the United States[,]" *id.* at 15.  As relief, the Weinstock Claimants seek an order directed to the parties in this case, i.e., ordering the other parties "to turnover to the Weinstock Claimants forthwith any and all assets of Hamas in his possession, custody or control[.]"  *Id.* at 16.  In their counterclaim, the Weinstock Claimants assert that should the United States prevail on its forfeiture action, "the United States will have in its possession, custody or control assets of Hamas subject to turnover to the Weinstock Claimants in satisfaction of their Judgment, including without limitation Defendant Properties described in the Verified Complaint."  *Id.* ¶ 149.  Therefore, plainly these are claims asserted against the parties, and not claims asserted against any specific property.

It is well-settled that a party's "status as the holder of an in personam judgment against [another] does not give [that party] an interest in 'specific property[.]'"  *United States v. All Assets Held at Bank Julius Baer & Co.*, 772 F. Supp. 2d 191, 199 (D.D.C. 2011) (Friedman, J.) (citing, among others, *United States v. BCCI Holdings (Luxembourg), S.A.*, 46 F.3d 1185, 1191 (D.C. Cir. 1995)).  Accordingly, filing a so-called "creditor's bill" (i.e., an equitable claim) against the United States (or Karatas) does not afford the Weinstock Claimants any interest in a specific piece of property.  Instead, by its terms, it seeks to compel the actions of another party, here the United States to turnover certain properties to the Weinstock Claimants.  And the D.C. Circuit has rejected

the notion that equitable claims asserted against another party create interests in that other party's property for purposes of forfeiture. *BCCI Holdings*, 46 F.3d at 1190 ("we agree with the government that a constructive trust may not be used to defeat the government's forfeiture claim").

Indeed, under D.C. law (which controls here, *see* Fed. R. Civ. P. 69(a)(1)) the method to create a judgment lien on a piece of property is clear. "In the post-judgment context, a writ of attachment is a means of enforcing a judgment, allowing a judgment creditor easy access to a debtor's assets[.]" *Asal v. Mina*, 247 A.3d 260, 279 (D.C. 2021) (cleaned up). "Service of the writ on the garnishee creates a valid lien in favor of the judgment creditor on the debtor's property held by the garnishee." *Id.* That is, collection writs under the D.C. Code, Title 16, Chapter 5, Subchapter II (entitled "Attachment and Garnishment After Judgment in Aid of Execution"), are the means to create judgment liens and enforce judgments under D.C. law. Whatever continuing utility that a legacy "creditor's bill" may have under D.C. law,[2] it plainly is not the process to create a judgment lien in favor of a creditor. Accordingly, the Weinstock Claimants' counterclaim and crossclaim afford it no lien over Defendant Property 180.

---

[2]     The "creditor's bill" precedents that the Weinstock Claimants now cite as the basis for their counterclaim against the United States appear to be a collection process used primarily in the late-19th and early-20th centuries before collections were codified in their present form under D.C. law and when collections by writ were less certain. *See* Weinstock Opp'n at 3 (citing *Arlington Brewing v. Wyvill*, 35 App. D.C. 589, 593 (D.C. Cir. 1910) (discussing a bill seeking appointment of judgment executor "to collect the property of the judgment debtor"); *Weightman v. Washington Critic*, 4 App. D.C. 136, 143 (D.C. Cir. 1894)); *see also Great Lakes Crushing, Ltd. v. DeMarco*, 20 N.E.3d 430, 435 (Ohio Ct. App. 2014) (discussing differences between creditor's bills and writ collections under Ohio law; "An action in the nature of a creditor's suit . . . is wholly equitable in nature and, as such, permits the judgment creditor to reach equitable assets which, by reason of uncertainties respecting title or valuation, cannot be effectively subjected under the ordinary legal process of execution by way of judgment liens, attachment, or garnishment.").

B.    **Sovereign Immunity Bars Any Attempt by the Weinstock Claimants to Gain a Property Interest in Defendant Property 180, Which Is in the United States' Possession.**

Even could an in personam equitable claim establish a lien over property, which it cannot, the United States has not waived its sovereign immunity for any such claim—whether viewed as an in personam claim against the Government or an in rem creditor's writ.

As to the former, the Weinstock Claimants have identified no statute that has waived the United States' immunity to be subject to a so-called in personam "creditor's bill" claim. The lone argument the Weinstock Claimants have made on this front is that by commencing this forfeiture action the United States has waived its sovereign immunity for "creditor's bills" asserted by potential claimants. *See* Weinstock Answer (ECF No. 53) ¶ 141. That contention fails. Only Congress can waive the United States' sovereign immunity. *Greenbaum*, 67 F.4th at 431 ("Even when federal sovereign immunity would otherwise apply, the Congress may consent to suit."); *Deaf Smith Cnty. Grain Processors, Inc. v. Glickman*, 162 F.3d 1206, 1210 (D.C. Cir. 1998) ("It has long been settled that the federal Government may be sued in federal court only if Congress has waived sovereign immunity for the lawsuit."). As such, it is "clearly established that the mere fact that the government is the plaintiff and has brought the forfeiture action does not constitute a waiver of sovereign immunity and authorize the bringing of a counterclaim." *$10,000.00 in U.S. Funds*, 863 F. Supp. at 816 (citing *United States v. All Right, Title & Int. in Real Prop. & Bldgs. Known as 228 Blair Ave.*, 821 F. Supp. 893, 899 (S.D.N.Y. 1993) ("Initiation of a forfeiture action does not constitute a waiver of sovereign immunity.")); *$4,480,466.16 in Funds*, 942 F.3d at 665 ("[Claimant] also argues that the United States waives sovereign immunity simply by 'initiating an in rem proceeding.' Claimant cites no authority supporting that grandiose proposition." (cleaned up)).

Moreover, the thrust of the holding of *Greenbaum* and the cases it collects suggests that the United States has not waived its sovereign immunity to be subject to collection claims of this sort, be they equitable claims under a creditor's bill or in rem claims under standard writ collection procedures. *See Greenbaum*, 67 F.4th at 431 (citing, among others, *Kalodner v. Abraham*, 310 F.3d 767, 769 (D.C. Cir. 2002) (claimant's collection claim, regardless of how it was pled or the United States' role, "nevertheless implicates federal sovereign immunity for a simple reason: He seeks funds in the United States Treasury")).

Indeed, it appears the Weinstock Claimants are attempting to resort to a legacy collection device as an end-run around the direct holding of *Greenbaum*. That is, were the court to view the Weinstock Claimants' counterclaim as one in rem asserted against Defendant Property 180, it would clearly fail under the direct holding of *Greenbaum*—"sovereign immunity bars creditors from attaching or garnishing funds in the Treasury" and attempts to lay claim to assets seized or arrested by the United States under forfeiture "conflict with sovereign immunity[.]"  67 F.4th at 431 (collecting authorities).  The Court should not permit the Weinstock Claimants to evade foundational principles of sovereign immunity through clever pleading.  At bottom, the Weinstock Claimants seek funds in possession of the United States, and thus, their claim is barred and creates no judgment lien in Defendant Property 180 (or any other Defendant Property in this action).

## II.   <u>The Weinstock Claimants' Counterclaim Fails for Several Other Reasons Too.</u>

Even could the Weinstock Claimants' so-called "creditor's bill" create a lien over property in the Government's possession, the Weinstock Claimants counterclaim here fails for several other reasons.

### A.   **The Weinstock Claimants Lack Standing**

"In a forfeiture action brought in rem pursuant to a federal statute, at any time before trial, the United States 'may move to strike a claim or answer . . . because the claimant lacks standing.'"

*United States v. All Assets Held at Bank Julius Baer & Co.*, Civ. A. No. 04-0798 (PLF), 2023 WL 5000213, at *6 (D.D.C. Aug. 4, 2023) (quoting Fed. R. Civ. P. Supp. R. G(8)(c)(i)(B)). Whether viewed as a constitutional or statutory infirmity, it is well-established that unsecured creditors of the alleged owner of a defendant property lack standing to contest a civil forfeiture of that property. *See BCCI Holdings*, 46 F.3d at 1191 ("We think the government is correct that a general creditor can never have an interest in specific forfeited property[.]"); *United States v. $20,193.39 in U.S. Currency*, 16 F.3d 344, 346 (9th Cir. 1994) ("federal courts have consistently held that unsecured creditors do not have standing to challenge the civil forfeiture of their debtors' property") (collecting cases); *United States v. 2004 Ferrari 360 Modeno*, 544 F. App'x 545, 546 (5th Cir. 2013) ("Although [claimant] allegedly provided money to [the debtor], which he used to purchase the Ferrari, at most this makes [claimant] an unsecured creditor and is insufficient to afford her standing."); *United States v. Ribadeneira*, 105 F.3d 833, 837 (2d Cir. 1997) ("we hold that Appellants have no specific interest in property greater than that of a general creditor, and thus cannot claim standing to petition to modify an Order of Forfeiture"); *see also Bank Julius Baer*, 772 F. Supp. 2d at 212 ("While a variety of types of property interests in defendant assets thus may confer standing upon a claimant, the federal courts have consistently held that unsecured creditors do not have standing to challenge the civil forfeiture of their debtors' property." (cleaned up)). This is because "general creditors cannot claim an interest in any particular asset that makes up the debtor's estate" and, thus, can claim no specific, traceable injury to the disposition of any particular asset. *$20,193.39 in U.S. Currency*, 16 F.3d at 346; *Ribadeneira*, 105 F.3d at 836 ("petitioners here can point to no particular asset and call it their own"). As the D.C. Circuit has held:

> We think the government is correct that a general creditor can never have an interest in specific forfeited property, no matter what the relative size of his claim vis-a-vis

the value of the defendant's post-forfeiture estate.  Were it otherwise, the court litigating the forfeiture issue would be converted into a bankruptcy court and would not be able to grant forfeiture to the government until it determined that no general creditor would be unable to satisfy its claim against the defendant.  That result appears patently at odds with the statutory scheme, which directs parties without an interest in specific property to seek relief from the Attorney General, not the court adjudging the forfeiture.

*BCCI Holdings*, 46 F.3d at 1191–92.

Here, the Weinstock Claimants are unsecured creditors of Hamas with respect to the Defendant Properties, including Defendant Property 180.  That is, the Weinstock Claimants do not contend that they recorded their judgment in a manner to establish a judgment lien against the Defendant Properties before they were seized, and the Weinstock Claimants are precluded from attaching the Defendant Properties after their seizure.  *Greenbaum*, 67 F.4th at 435 ("federal sovereign immunity prevents the attachment and garnishment of" assets seized under civil forfeiture).

As such, the Weinstock Claimants are unsecured creditors and, thus, lack standing in this matter, including to contest the return of Defendant Property 180.  *See, e.g.*, *BCCI Holdings*, 46 F.3d at 1191 ("bank depositors, as general creditors, have no interest in the specific accounts to which their deposits might be traced, only in the defendant's estate as a whole—and therefore can have no interest in particular assets forfeited, as required under both prongs of [the RICO civil forfeiture statute], unless they have already secured a judgment against the debtor and perfected a lien against a particular item"); *United States v. One Hundred Thirty-Three U.S. Postal Serv. Money Orders*, 496 F. App'x 723, 724 (9th Cir. 2012) ("[Claimant] had acquired a judgment in California against one of the people whose assets were subject to civil forfeiture. However, that judgment was not recorded, and the district court properly determined that [the claimant] was an only unsecured creditor at the time of forfeiture and therefore lacked standing."); *United States v. One-Sixth Share of James J. Bulger in All Present & Future Proceeds of Mass Millions Lottery*

*Ticket*, 326 F.3d 36, 44 (1st Cir. 2003) ("if [claimants] held a judgment, it would not solve the problem.  Even were we to assume that they held a judgment against [the debtor], it would be only a general in personam judgment, not a secured interest against any particular asset that he owned"); *United States v. Sum of Three Hundred Nine Million Five Hundred Thousand Dollars*, 85 F. Supp. 3d 111, 116 (D.D.C. 2015) (Friedman, J.) ("in order for a judgment creditor to stake a colorable interest in defendant property, the creditor must have a perfected lien against that specific property"); *United States v. McCorkle*, 143 F. Supp. 2d 1311, 1319 (M.D. Fla. 2001) ("A general creditor has no 'vested' or 'superior' interest in particular assets forfeited unless he not only has secured a judgment against the debtor, but also has perfected a lien against a particular item.").

### B.   The Weinstock Claimants Cannot Bring Counterclaims Against the United States and Other Claimants In This In Rem Forfeiture Action.

Even if the Weinstock Claimants had a basis to participate in this forfeiture case, the rules governing forfeiture actions do not allow a claimant to bring a counterclaim against the United States or crossclaims against other claimants.  Under the Rules, "[a] counterclaim is an action brought by a defendant against the plaintiff."  *United States v. $10,000.00 in U.S. Funds*, 863 F. Supp. 812, 816 (S.D. Il. 1994).  But in a civil forfeiture proceeding, a claimant is not a defendant— e.g., in this case the United States asserts no cause of action against the Weinstock Claimants.  *Id.* The lone defendants in this case are the Defendant Properties.  As such, courts have held that "[c]ounterclaims are generally not allowed by third parties in civil in rem forfeiture proceedings." *United States v. Assorted Computer Equip.*, Civ. A. No. 03-2356, 2004 WL 784493, at *2 (W.D. Tenn. Jan. 9, 2004) (citing *United States v. One Lot of U.S. Currency*, 927 F.2d 30, 34 (1st Cir. 1991) ("Since no civil claim was filed by the government against [the claimant]—indeed, rather than being dragooned into the case as a *defendant*, he intervened as a *claimant*—there was no 'claim' to 'counter.'" (emphasis in original)), and *$10,000.00 in U.S. Funds*, 863 F. Supp. at 816

("A counterclaim is an action brought by a defendant against the plaintiff. Whatever the claimants' pleading is, it is not properly a counterclaim.")); *see also United States v. 8 Luxury Vehicles*, 88 F. Supp. 3d 1332, 1336 (M.D. Fla. 2015) ("the Court finds counterclaims are not generally permitted by claimants in civil forfeiture proceedings").  As the court in *Assorted Computer Equipment* explained the majority rule:

> A forfeiture action is in rem, not in personam.  The property, e.g., the computer equipment in this case, is the defendant, not the claimant.  By definition, a counterclaim is a pleading which sets forth a claim that the pleader has against an opposing party arising out of the opposing party's claim against the pleader. Because the government has not asserted a claim against [the claimant], there can be no counterclaim.

*Assorted Computer Equip.*, 2004 WL 784493, at *2 (citations omitted); *see also Zappone v. United States*, 870 F.3d 551, 561 (6th Cir. 2017) ("while the purported owner of the property may intervene in the action, he may not assert counterclaims against the United States"); *but see United States v. $4,480,466.16 in Funds Seized from Bank of Am.*, 942 F.3d 655, 663 (5th Cir. 2019) (declining to adopt First Circuit's reasoning in *One Lot of U.S. Currency*; dismissing claimant's counterclaim on sovereign immunity grounds).  The Court should adopt the majority rule and hold that counterclaims are not permitted against the United States in civil forfeiture actions.  And with the Weinstock Claimants' counterclaim gone, the central premise of their opposition to the return of Defendant Property 180 to its status quo ante evaporates.

### C.    The Weinstock Claimants' "Creditor's Bill" Claim Does Not Apply to Defendant Property 180.

Even were the Weinstock Claimants' "creditor's bill" claim otherwise permissible, as pled, it does not apply to Defendant Property 180.  In their counterclaim, the Weinstock Claimants plead that "[t]he assets of Hamas currently in the United States' possession, custody or control, or that come into the United States' possession, custody or control as a result of the forfeiture actions, are subject to turnover to the Weinstock Claimants in satisfaction of their Judgment[.]"  Weinstock

Answer (ECF No. 53) ¶ 150.  But as the United States stated in its Motion, it no longer has any basis to believe that Defendant Property 180 is the property of Hamas (or any other perpetrator of a federal crime of terrorism).  Mot. at 2.  As such, even were the Weinstock Claimants' "creditor's bill" claim viable, by its plain terms, it does not implicate Defendant Property 180.  Indeed, there is no continuing allegations in the existing record before the Court (whether in the United States' complaint or in any pleading filed by the Weinstock Claimants) that Defendant Property 180 is the property of Hamas, the entity against which the Weinstock Claimants have a judgment.  Weinstock Answer (ECF No. 53) ¶ 130.  This alone defeats the Weinstock Claimants' opposition to returning that property to its status quo ante.

## III.  __The Weinstock Claimants Other Arguments Are Devoid of Merit.__

Apart from asserting that its "creditor's bill" created a lien in Defendant Property 180, the Weinstock Claimants raise certain other issues.  None have merit.

### A.    **The Weinstock Claimants Are Confused in Arguing the United States Lacks Standing.**

The Weinstock Claimants argue that the United States somehow lacks standing to seek a court order permitting it to return Defendant Property 180 to the status quo ante.  Weinstock Opp'n at 4.  This argument appears to be premised primarily on the notion that the Government need not seek a court order to take these efforts and it no longer has an interest in Defendant Property 180.  That is incorrect.

Because Defendant Property 180 has been arrested by the Court, Arrest Warrant (ECF No. 8), the Court has in rem jurisdiction and authority over that property.  *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976); Wright & Miller, 13F Fed. Prac. & Proc. Juris. § 3631 (3d ed., Oct. 2020) (when a court "has obtained possession, custody, or control of particular property, that authority and power over the property may not be disturbed by any

other court" (collecting citations)).   In accord with this common understanding of in rem

jurisdiction, the civil forfeiture statute dictates that property seized or arrested under civil forfeiture

is "subject only to the orders and the decrees of the court or the official having jurisdiction thereof."

18 U.S.C. § 981(c).   Accordingly, for the United States to return the property to its status quo ante,

the United States understands it must obtain the Court's permission to do so.

The Weinstock Claimants also appear to argue that because the United States no longer

seeks to forfeit Defendant Property 180, it has no right to seek an order permitting its return to its

status quo before the United States seized it.   Weinstock Opp'n at 5–6.   This again is incorrect.

The United States currently possesses Defendant Property 180, affording it a specific interest in

that property and plainly satisfying any standing inquiry.   *See, e.g.*, *United States v. $12,698.38 in*

*U.S. Currency*, Civ. A. No. 13-1707, 2024 WL 2805285, at *4 (D.P.R. May 31, 2024) (party had

constitutional standing when he had constructive possession of the property at issue; collecting

citations); *United States v. Funds in the Amount of $239,400*, 795 F.3d 639, 643 (7th Cir. 2015)

(party had constitutional standing when property "was in his possession when it was seized").

Moreover, the standing inquiry when the United States proceeds as a sovereign is not

governed by the standard "case or controversy" rubric applicable to private claimants.   As the

Supreme Court wrote 129 years ago:

> Every government, intrusted by the very terms of its being with powers and duties
> to be exercised and discharged for the general welfare, has a right to apply to its
> own courts for any proper assistance in the exercise of the one and the discharge of
> the other, and it is no sufficient answer to its appeal to one of those courts that it
> has no pecuniary interest in the matter.

*In re Debs*, 158 U.S. 564, 584 (1895), *abrogated on other grounds by Bloom v. Illinois*, 391 U.S.

194 (1968); *see also United States v. Trans-Mo. Freight Ass'n*, 166 U.S. 290, 342 (1897) (rejecting

argument that the United States had "no standing" because it has "no pecuniary interest in the

result of the litigation, or in the question to be decided by the court").   This is because it is "beyond

doubt" that the United States sustains an "injury to its sovereignty" when there is a "violation of its laws[.]" *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000). Here, the United States proceeds as the sovereign applying to its own courts consistent with its own laws that once it no longer believes it has grounds to forfeit property, it must seek to return that property to the status quo ante. *See In re Matthews*, 395 F.3d 477, 484 (4th Cir. 2005) (holding that once the Government voluntarily dismisses a forfeiture claim it is the court's role "to restore the parties, as closely as possible, to the status quo ante").

Indeed, it is not the United States that lacks standing, but instead, it is the Court that respectfully lacks authority to entertain the Weinstock Claimants' claim to Defendant Property 180 now that the United States has sought to dismiss this forfeiture action against that property. In *Matthews*, 395 F.3d at 477, the Fourth Circuit addressed this specific issue—i.e., after the Government's voluntary dismissal of its forfeiture claim, did the court have jurisdiction to adjudge the claimants' competing claims to the property at issue? *Id.* The Fourth Circuit answered that question in the negative. *Id.* Specifically, it reasoned that once the government dismissed its forfeiture claim, "the various statements of ownership interest became a nullity" and the district court lacked authority to adjudicate those competing claims. *Id.* at 481.

So too here. As noted above, there is no opposition to the Government amending its complaint to dismiss Defendant Property 180 from its forfeiture claims. Accordingly, the Court should docket the Government's Proposed Amended Complaint (ECF No. 62-1) as the operative pleading in this suit. With the United States' pleading amended to dismiss Defendant Property 180, the Court has no further role in adjudicating the competing claims (if there are any, *see supra* at 11–12) that Karatas and the Weinstock Claimants present to Defendant Property 180.

Rather, the Court's role now is to return that property to its status quo ante before that property was seized.  *Matthews*, 395 F.3d at 484.

B.      **The Weinstock Claimants' Remaining Arguments Fail.**

The Weinstock Claimants raise certain additional arguments.  None have merit.  *First*, the Weinstock Claimants contend that the United States violated Local Civil Rule 7(a) in moving to amend.  Weinstock Opp'n at 6–7.  Not so.  The United States' motion contained a statement of the points of law and authorities that supported its motion to amend.  *See generally* Mot.  And Local Rule 7(a) does not require that statement of authorities to be in a document separate from the motion itself.  *See* LCvR 7(a).  That the Weinstock Claimants disagree with the relief sought by the United States and the bases for that relief does not mean the Government violated the Court's local rule.

*Second*, the Weinstock Claimants argue that the Court should reject the Government's request to return Defendant Property 180 to its status quo ante because doing so would "effectively extinguish the Weinstocks' enforcement proceedings by whisking Property 180 away, beyond the reach of the U.S. courts."  Weinstock Opp'n at 7–8.  This has the situation backwards.  The United States no longer believes that Defendant Property 180 is the property of Hamas or is otherwise forfeitable under U.S. law.  As such, there is no basis for the property to have been disturbed from its original state, which was in Karatas's constructive possession in a cryptocurrency account.  If the Weinstock Claimants' have proof that these funds belong to their judgment debtor (Hamas), they can attempt to attach and execute on them after they are returned to their status quo.  But the law does not afford the Weinstock Claimants the right to piggy-back on the United States' now abandoned forfeiture efforts to make property subject to collection when it was not before.  Instead, the law is clear—the Court's obligation here is to return to the property to its status quo ante.  *See Matthews*, 395 F.3d at 484.

## CONCLUSION

For the foregoing reasons, and those set forth in the United States' Motion, the Court should grant the United States leave to amend its complaint, direct the United States to take prompt efforts to return Defendant Property 180 to its status quo before it was seized in connection with this action, deny all pending motions without prejudice as moot, and direct the parties to meet and confer on a schedule to govern further proceedings in this action.

Dated: July 8, 2024
        Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney


By:  _____*/s/ Brian P. Hudak*_____
        BRIAN P. HUDAK
        Chief, Civil Division
        601 D Street, NW
        Washington, DC 20530
        (202) 252-2549

*Attorneys for the United States of America*