UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

UNITED STATES OF AMERICA,

                         Plaintiff,

v.

FIFTY-THREE VIRTUAL CURRENCY
ACCOUNTS, *et al.*,

                         Defendants.

_____

Civil Action No. 1:20-cv-02227-RC

## THE WEINSTOCKS' [PROPOSED] SURREPLY

The Weinstocks respectfully submit this Surreply to address the raft of new arguments improperly raised for the first time in the Government's Reply in support of its motion to amend.

For the reasons presented below and in the Weinstocks' Partial Opposition to the motion to amend, the Court should deny the Government's request that the Court direct it "to return Defendant Property 180 to its status quo before it was seized in connection with this action."

### I.  The Government Has No Standing to Seek to Dispose of Property 180

The Government's opening motion made no attempt whatsoever to explain what standing it could conceivably have to dispose of Property 180, which it no longer seeks to forfeit. The Weinstocks' Partial Opposition showed that in fact, the Government lost all standing regarding the disposition of Property 180 (or to otherwise interfere with the Weinstocks' proceedings against Property 180). The Government now makes few anemic claims in support of its standing.

The Government's main argument is that it has standing to seek a court order canceling the Arrest Warrant that it issued against Property 180. (DE 65 at 12-13).  But the relief requested

by the Government goes far beyond merely *canceling* the Arrest Warrant – the Government is seeking an order *directing it "to return Defendant Property 180 to its status quo ante."* (*Id*. at 3).

There is a universe of difference between these two items of relief. Since the Government posits that Property 180 is not subject to forfeiture, the Warrant is effectively void in any event, and the Weinstocks have no objection to its ministerial cancelation by the Court if a court order is necessary for that. The Government is free to take its figurative legal hands off Property 180.

But the Government's demand to return Property 180 to "its status quo ante" is something else entirely. If the Government were merely asking to cancel the Arrest Warrant, it would have said so. Though the Government has carefully remained coy about what exactly it intends to do with Property 180 if permitted to return it to the "status quo ante," it is patently obvious that the Government is seeking leave to take some sort of affirmative actions to dispose of Property 180 in a manner that would place it beyond the jurisdiction of this Court and/or otherwise foil the Weinstocks' enforcement proceedings. But as demonstrated by the Weinstocks (DE 64 at 4-6), the Government has no standing to dispose of Property 180.

Therefore (except for the simple ministerial cancelation of the Arrest Warrant) the Government's request to dispose of Property 180 must be rejected for lack of standing.

The Government further argues that because it has "constructive possession" of Property 180 it has standing to seek to dispose of it. This argument fails because the claim to "constructive possession" is based on the Arrest Warrant, which the Government itself states is factually and legally baseless. The Government cannot base "constructive possession" on an invalid Warrant.

Moreover, the Government seeks to cancel the Arrest Warrant – which in turn inherently eliminates its claim of "constructive possession." Thus, at most, the Government has standing to request formal cancelation of the Warrant by the Court – and nothing beyond that.

Finally, the Government claims it has standing under *In re Debs*, 158 U.S. 564, 584 (1895). But *Debs* is limited to cases where the welfare of the public as a whole is at stake. *Clark v. Valeo*, 559 F.2d 642, 654 (D.C. Cir. 1977) (Tamm, Bazelon and Wright, C.J., concurring) (*Debs* dealt with "the right of the Government to seek assistance from its own courts in advancing the general welfare[.]"). Therefore, *Debs* clearly has no relevance or application in this case.

In sum, the Government lacks standing to dispose of Property 180.

## II.   Property 180 Is Not in Government Possession – Sovereign Immunity Is Irrelevant

The Government's Reply argues at length and for the first time that the Weinstocks' lien and creditor's bill action against Property 180 are barred by U.S. sovereign immunity. In support – and as a sine qua non predicate – of this immunity argument, the Reply asserts repeatedly that Property 180 is in the Government's possession. In fact, however, Property 180 is not in the Government's possession and the sovereign immunity claim is therefore a baseless red herring.[1]

The Weinstocks are at a severe information disadvantage at this stage of the proceedings because the Government has carefully refrained from identifying who is holding Property 180, but one thing is certain: Property 180 is not in the possession of the United States:

Property 180 is not tangible asset. It is a cryptocurrency account. (DE 1 at ¶¶ 103-107). Cryptocurrency accounts are held by cryptocurrency exchanges. The Arrest Warrant issued against Property 180 states that it is held by "Virtual Currency Exchange 12." (DE 8 at 6). Therefore, Property 180 cannot be, and was never, in the actual physical possession of the United States – or anyone else. Rather, the Government claims to have obtained constructive possession over the cryptocurrency account designated as Property 180, by operation of the Warrant.

---

[1] In order to bolster its strawman sovereign immunity claim, the Government repeatedly references the Weinstocks' creditor's bill against the United States, rather than their creditor's bill against Karatas – which is the main action relevant to Property 180 now that the Government has dropped its claim.

3

Thus, it appears that Property 180 is being held by the third-party cryptocurrency exchange ("Virtual Currency Exchange 12," whose identity is unknown to the Weinstocks) that held it when the Government issued its Warrant. This is the same method used by the Government when it seeks to forfeit other intangible assets held by third-parties, most typically bank accounts.

Now, however, the Government has decided that Property 180 is not subject to forfeiture, and has dropped its claim to that property. Thus, Property 180 is no longer subject to the Arrest Warrant – indeed, given the Government's admission that Property 180 is not subject to forfeiture the Warrant is <u>now void as a matter of law</u> – and the Government therefore <u>lacks even constructive possession</u> of Property 180.

Accordingly, the Court should reject the Government's meritless claim that Property 180 remains within its possession, as well as its corollary argument that the Weinstocks' lien and enforcement action against Property 180 impinges on the United States' sovereign immunity.

**III.   Karatas Has the Right to Possess Property 180 – Subject to the Weinstocks' Lien**

Notwithstanding the Reply's efforts to muddy the waters and manufacture controversies where none exist, now that the Government has relinquished any claims to Property 180 and lost constructive possession thereof, the dispute regarding Property 180 has become very simple:

All parties agree that Karatas has the right to possess Property 180 and to receive it from whoever is holding it. Therefore the only remaining dispute over Property 180 – a dispute which lies <u>solely between the Weinstocks and Karatas</u> – relates to the Weinstocks' assertion that Karatas' rights to Property 180, including his right to receive and take possession of it from whoever is holding it, are subject to the Weinstocks' lien and crossclaim creditor's bill against Karatas pursuant to § 201 of the Terrorism Risk Insurance Act ("TRIA").

The Court should, respectfully, direct its attention to the actual issues in dispute regarding Property 180, and ignore the Government's irrelevant diversionary arguments and baseless attempts to insert itself into the case and controversy between the Weinstock and Karatas.

## IV.     The Weinstocks Have a Valid Lien Over Property 180

The Weinstocks alleged in their crossclaims that the properties at issue in this matter (including Property 180) are subject to execution in satisfaction of their judgment against Hamas pursuant to TRIA § 201. (DE 53 at ¶¶ 134-137, 143-144). And the Weinstocks have shown that by bringing a crossclaim creditor's bill against Karatas, they established an equitable lien on Property 180 under the law of the District of Columbia. (DE 64 at 3-4, 8).

Notably, the Weinstocks' lien was effected and operates in personam. "The effect of filing the creditor's bill, with service of process, would ordinarily be to create a lien in equity upon the property of the judgment debtor." *Weightman v. Washington Critic Co.*, 4 App. D.C. 136, 143 (D.C. Cir. 1894). Thus, the Government's claim that "an in personam claim against a party does not establish a lien over specific property" (DE 65 at 4) is incorrect. *Weightman* makes clear that under D.C. law, the filing of a creditor's bill creates a lien in equity upon all "the property of the judgment debtor" without limitation.

The Government's Reply now seeks to argue that the Weinstocks' crossclaim creditor's bill against Karatas is invalid (and so did not create a lien on Property 180), because their sole judgment enforcement remedies under the law of the District of Columbia are the statutory mechanisms set forth in Title 16, Chapter 5 of the D.C. Code. (DE 65 at 5).

In fact, however, D.C. law says precisely the opposite. D.C. Code § 16-532, captioned "**Other remedies of judgment creditor**," expressly provides that judgment creditors like the Weinstocks are not limited to the statutory mechanisms specifically codified in D.C. law:

5

> Nothing herein contained <u>deprives a judgment creditor of the right to file a civil action to enforce his judgment against an equitable interest in real or personal estate of the judgment defendant</u>, or to have a conveyance of the real or personal estate by the defendant, made with intent to hinder, delay, and defraud his creditors, set aside.

*Id*. (emphasis added).

Thus, under the law of the District of Columbia, which controls here pursuant to Fed. R. Civ. P. 69(a), the Weinstocks are entirely within their rights to prosecute their creditor's bill – which is "a civil action to enforce [their] judgment" – in order to enforce their judgment. Indeed, creditor's bills remain in use in D.C. in the modern era. *See e.g. Pappas v. E. Sav. Bank, FSB*, 911 A.2d 1230 (D.C. 2006); *Goldsmith v. William S. Bergman Assocs.*, 708 A.2d 640, 641 (D.C. 1998).

Relatedly, the Government also appears to argue that Rule 69(a) incorporates only the <u>statutory</u> enforcement procedures of the state in which the federal court sits. (DE 65, n. 1, claiming that Rule 69(a) incorporates state "rules").

This is incorrect. Rule 69(a) incorporates <u>all</u> state-law judgment enforcement procedures -- including <u>non-statutory</u> equitable procedures, such as a creditor's bill. Thus, for example, in *H.H. Robertson Co., Cupples Prod. Div. v. V.S. DiCarlo Gen. Contractors, Inc.*, 789 F. Supp. 998 (E.D. Mo. 1992) the Missouri federal court held that under Rule 69 it has "the same authority to aid judgment creditors in supplementary proceedings of execution as the Missouri state courts," and a judgment creditor is thus entitled to bring a creditor's bill to enforce its judgment because "<u>Missouri case law indicates that this type of equitable relief</u> is within the general equitable jurisdiction of Missouri state courts." *Id.*, 789 F. Supp. at 999 (cleaned up) (emphasis added).

Indeed, the Eight Circuit has explicitly held that under Rule 69, "the district court has the same authority to aid judgment creditors in supplementary proceedings as that which is provided to state courts under local law … Our review of Missouri law persuades us that equitable relief in

6

the form of a creditor's bill is an available creditor's remedy." *U.S. ex rel. Goldman v. Meredith*, 596 F.2d 1353, 1357 (8th Cir. 1979) (cleaned up).

Thus, Rule 69(a) unquestionably permits the Weinstocks to bring their creditor's bill pursuant to the law of the District of Columbia.

The Government is now effectively inviting this Court to hold that Rule 69 permits a judgment creditor to use <u>only some</u> of the enforcement procedures available under the law of the District of Columbia. This invitation must be rejected. "Rule 69(a)(1) generally tasks this Court with applying Maine's rules in supplementary proceedings and not with <u>narrowing or modifying</u> Maine's rules." *Lobster 207, LLC v. Pettegrow*, 2023 WL 5604458, at *14 (D. Me. Aug. 30, 2023), *report and recommendation adopted*, 2023 WL 7681700 (D. Me. Nov. 15, 2023) (emphasis added).

## V.     The Weinstocks Have Standing

The Government's opening motion to amend did not challenge the Weinstocks' standing in this proceeding. The Government's Reply attempts to belatedly remedy this failure, arguing for the first time that the Weinstocks' enforcement proceedings here are invalid, and so not a bar to disposing of Property 180 adversely to the Weinstocks, because the Weinstocks have no standing to seek turnover of Property 180 in the context of this forfeiture action.

The question of whether judgment creditors such as the Weinstocks have constitutional and statutory standing to seek turnover under TRIA within the framework of a forfeiture proceeding was thoroughly analyzed by the Seventh Circuit in *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607 (7th Cir. 2015).

The Government argued in *R.J. O'Brien*, exactly as it does here, that such judgment creditors have no standing. In a highly detailed analysis the Seventh Circuit squarely rejected the Government's argument, and held that judgment creditors seeking to enforce under TRIA have both constitutional and statutory standing to do so within a forfeiture action. *Id*. at 616-622.

Accordingly, this Court should reject the Government's standing arguments, for all the reasons set forth by the Seventh Circuit in *R.J. O'Brien*.

### VI. This Court Has Authority and Jurisdiction to Adjudicate the Dispute Between the Weinstocks and Karatas Over Property 180

The Government further argues for the first time in its Reply that "that once it no longer believes it has grounds to forfeit property, it must seek to return that property to the status quo ante," and that this Court lacks authority to adjudicate the dispute between the Weinstocks and Karatas over Property 180. (DE 65 at 14). This argument too, is meritless.

In purported support of this argument, the Government relies on *In re Matthews*, 395 F.3d 477 (4th Cir. 2005). But *Matthews* is easily distinguishable here, because it involved dismissal of the <u>entire forfeiture action</u>, not a claim to a <u>single</u> property. *Matthews* held that dismissal of the entire action "operates to leave the parties as if no action had been brought at all" and therefore "the court lacks authority to conduct further proceedings on the merits." *Id*. at 480 (cleaned up).

Here, by contrast, the Government seeks to drop only a single claim. That distinction is critical, because under Fed. R. Civ. P. 54(b) the dismissal of "fewer than all the claims or the rights and liabilities of fewer than all the parties <u>does not end the action as to any of the claims or parties</u>." (Emphasis added). Thus, the Government's decision to drop its claim to Property 180 does not end this action "as to **any** of the claims or parties" – including the Weinstocks' claims to Property 180 – and this Court therefore remains fully empowered to adjudicate the dispute between the Weinstocks and Karatas over Property 180.

The decision of the Ninth Circuit in *United States v. Real Prop. Located at 475 Martin Lane, Beverly Hills, CA*, 545 F.3d 1134 (9th Cir. 2008) is highly instructive here. Cabining *Matthews* to its unique circumstances, the Ninth Circuit held that "the district court retained in rem

8

jurisdiction over the property after it dismissed the government's complaint, and had jurisdiction to resolve the remaining competing claims of interest in the property." *Id*. at 1144-46.

Among the numerous grounds cited for this conclusion, the *Martin Lane* court pointed to the fact that (unlike in *Matthews*) the claimants before it had already filed answers. So too here, the Weinstocks and Karatas have already answered the Government's complaint, and all parties have engaged in significant motion practice. These facts are highly salient:

> In the instant case, answers have been filed by the competing claimants to the defendant funds, and the Court has already considered multiple motions by claimants to the Funds. Thus, it cannot be said that the Government's dismissal "leave[s] the parties as though no action had been brought." *Martin Lane*, 545 F.3d at 1145. Additionally, unlike in the case of a voluntary dismissal, the Court has already invested a not insignificant amount of time in the case. As a result, even though it was the Government, rather than the Court, that brought an end to the forfeiture claim, given the Ninth Circuit's pro-in rem jurisdiction statements in *Martin Lane*, the Court concludes that it should maintain jurisdiction over the matter to adjudicate the competing interests of the claimants.

*United States v. 299,912.00 in Acct. Funds*, 2014 WL 12709018, at *4 (C.D. Cal. Aug. 8, 2014).

Thus, this Court has jurisdiction and the authority to adjudicate the dispute between the Weinstocks and Karatas over Property 180. "Indeed, the court ha[s] not only the jurisdiction <u>but the duty</u> to resolve the parties' competing claims to the res." *Martin Lane* at 1145 (emphasis added). The Government cannot be permitted to prevent that adjudication by disposing of Property 180.[2]

---

[2] On pages 10-11 of its Reply, the Government argues that "the rules governing forfeiture actions do not allow a claimant to bring a counterclaim against the United States or crossclaims against other claimants." But *Martin Lane* and its progeny prove that the Weinstocks <u>can</u> adjudicate their claims to Property 180 against Karatas, and the cases cited by the Government on pages 10-11 do not address crossclaims.

The Government's arguments regarding the Weinstocks' <u>counterclaims</u> are irrelevant to Property 180 because the Government has abandoned its claim to and constructive possession of Property 180, and thus there is no reason to address those counterclaim arguments here.

9

**VII.    The Weinstocks' TRIA Action Against Property 180 Are Entirely Unaffected By the Government's Decision to Drop Its Forfeiture Claims**

The Government's most peculiar new argument is that because it decided to drop its forfeiture action against Property 180, the Weinstocks cannot show that Property 180 is subject to execution under TRIA § 201. (DE 65 at 3, 11-12).

This argument is meritless. It goes without saying that the Government's allegations in this case cannot and do not control the Weinstocks' allegations. (It will be a very sorry day indeed if private litigants in U.S. courts are bound by the positions of the government).

Furthermore, the amenability of Property 180 to forfeiture under the relevant <u>forfeiture provisions</u> is completely irrelevant to whether or not Property 180 is subject to execution in satisfaction of the Weinstocks' judgment against Hamas under <u>the provisions of TRIA</u>. These are two entirely unrelated questions.

The Government also claims that since its <u>yet-to-be-docketed</u> proposed amended complaint drops its claims against Property 180, "there is [sic] no continuing allegations in the existing record before the Court (whether in the United States' complaint or in any pleading filed by the Weinstock Claimants) that Defendant Property 180 is the property of Hamas." (DE 65 at 12).

This argument, too, is baseless. The Government's operative complaint – which was verified under oath by both an IRS Special Agent and a Homeland Security Special Agent – alleged that Property 180 funded Hamas' military wing (the Al-Qassam Brigades). (DE 1 at ¶¶ 95-109). The Weinstocks' Answer, Crossclaims and Counterclaims admitted these allegations and sought turnover of all assets subject to execution in satisfaction of their judgment, "including without limitation Defendant Properties described in the Verified Complaint."  (DE 53 at ¶ 143).

The Weinstocks still credit the verified allegations about Property 180 in the Government's <u>still-fully-operative</u> original complaint.[3] Therefore, if and when the Court permits the Government to file its proposed amended complaint, the Weinstocks will exercise their right to file an Amended Answer, Crossclaims and Counterclaims, which will adopt and set forth, inter alia, the verified allegations regarding Property 180 contained in the Government's original complaint.

In sum, the Government's decision to drop claims against Property 180 does not detract one iota from the Weinstocks' right to pursue turnover of that property under TRIA.

## VIII. Conclusion

The Government's request that the Court direct it "to return Defendant Property 180 to its status quo before it was seized in connection with this action" should be denied.

Dated: July 30, 2024

Respectfully submitted,

By: /s/ Asher Perlin

Asher Perlin
LAW OFFICE OF ASHER PERLIN
Bar I.D. FL0006
4600 Sheridan Street, Suite 303
Hollywood, Florida 33021
786-687-0404
asher@asherperlin.com

Counsel for the Weinstock Claimants

---

[3] Notably, the Government has submitted no evidence – such as an affidavit – affirmatively asserting (much less showing) that its sworn allegations against Property 180 are untrue. The Weinstocks find those sworn allegations far more persuasive than the unsworn, unsupported and conclusory statements in the Government's motion papers that it no longer believes Property 180 is subject to forfeiture.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed on July 30, 2024, on the Court's CM/ECF system which will send a notice of electronic filing to counsel of record for all parties.

By: /s/ Asher Perlin

Asher Perlin
LAW OFFICE OF ASHER PERLIN
Bar I.D. FL0006
4600 Sheridan Street, Suite 303
Hollywood, Florida 33021
786-687-0404
asher@asherperlin.com

Counsel for the Weinstock Claimants