## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | : | | |
| | : | Civil Action No.: | 20-2227 (RC) |
| | : | | |
| v. | : | Re Document No.: | 54, 62, 68 |
| | : | | |
| | : | | |
| FIFTY-THREE VIRTUAL CURRENCY | : | | |
| ACCOUNTS, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING THE WEINSTOCK CLAIMANTS' MOTION FOR LEAVE TO FILE A SURREPLY;

### GRANTING THE GOVERNMENT'S MOTION TO AMEND; AND DENYING AS MOOT CLAIMANT

### KARATAS'S MOTION TO STAY DISCOVERY

## I. INTRODUCTION

The United States of America ("United States" or "Government") filed suit for forfeiture *in rem* against the Defendant Properties[1] – fifty-three virtual accounts, one hundred and twenty-seven virtual currency properties, five accounts held at a bank, and three internet domains. After the Internal Revenue Service – Criminal Investigation's Cyber Crimes Unit ("IRS-CI"), Homeland Security Investigations ("HIS"), and Federal Bureau of Investigation ("FBI") (collectively, the "Government Agencies") investigated online fundraising activities conducted by the Hamas-Islamic Republic Movement ("Hamas")'s military wing, the al-Qassam Brigades, the United States alleges that Defendants laundered monetary instruments, operated unlicensed

---

[1] This opinion will assume the definition of Defendant Properties included in the Complaint.

money transmitting businesses, and provided material support or resources to Hamas.  Compl. ¶ 2, ECF No. 1.  The Complaint includes two claims of civil forfeiture arising from those allegations.  *Id.* ¶¶ 1, 38–39.

After the United States filed suit against Defendant Properties, Claimant Husamettin Karatas ("Claimant Karatas") filed a verified claim and answer against one defendant property, Defendant Property 180, which he claims to own.  *See* Claimant Karatas's Claim, ECF No. 5; Claimant Karatas's Answer, ECF No. 9.  Additionally, Claimants Sharon Weinstock, Moshe Weinstock, Geula Weinstock, Aryeh Weinstock, and Chain Mishael Weinstock, and the Estates of Yitzchak Weinstock, Dov Weinstock, Simon Dolgin, and Shirley Dolgin (collectively, the "Weinstock Claimants") filed a verified claim, answer, a counterclaim against the United States, and a crossclaim against Claimant Karatas, alleging that all Defendant Properties should be turned over to them to satisfy their judgment against Hamas.  The Weinstock Claimants are the family members of Yitzchak Weinstock (both alive family members and representatives of other family members' estates), a United States citizen who was murdered by Hamas in a terrorist shooting near Jerusalem in December 1993.  The Weinstock Claimants hold a final judgment against Hamas in the amount of $78,873,000, which remains wholly unsatisfied.  *Weinstock v. Islamic Republic of Iran, et al.*, 2019 WL 1993778 (S.D. Fla. May 6, 2019).

Although there are currently six motions pending before the Court, this opinion will only consider the motions that are fully briefed: (1) the Weinstock Claimants' motion to file a surreply; (2) the Government's motion to amend the Complaint; and (3) Claimant Karatas's motion to stay discovery.  For the reasons set forth below, the Court finds that the Weinstock Claimants' motion for leave to file a surreply is granted, the Government's motion to

amend/correct the Complaint is granted, and Claimant Karatas's motion to stay discovery is denied as moot.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

In December 1993, Yitzchak Weinstock, a United States citizen, was murdered by the military wing of Hamas, the Al-Qassam Brigades, in a terrorist shooting near Jerusalem. Weinstock Claimants' Answer, Cross-cl. Against Claimant Karatas, and Countercl. Against Gov't ("Weinstock Claimants' Answer") ¶ 130, ECF No. 53.  On May 17, 2019, and on behalf of Yitzchak Weinstock, the estates of other Weinstock family members, and the remaining Weinstock family members, the Weinstock Claimants obtained a final judgment against Hamas for $78,873,000.  *Id.* ¶¶ 130–131; *Weinstock v. Islamic Republic of Iran, et al.*, 2019 WL 1993778 (S.D. Fla. May 6, 2019) ("2019 Judgment").  Despite receiving the necessary notices and proper service, Hamas has yet to "enter[] an appearance in or defend[] against the civil action against it," and the judgment remains wholly unfulfilled.  Weinstock Claimants' Verified Claim ("Weinstock Claimants' Claim") at 2, ECF No. 11.

On August 13, 2020, the Government filed the instant suit for forfeiture *in rem* against Defendant Properties, which are the following: "fifty-three virtual currency accounts (Defendant Properties 1, 2, 3, 131 through 180), one hundred and twenty-seven virtual currency properties (Defendant Properties 4 through 130), five accounts held at Financial Institution 1 (Defendant Properties 181 through 185), the alqassam.net domain (Defendant Property 186), the alqassam.ps domain (Defendant Property 187), and the qassam.ps domain (Defendant Property 188)." Compl. at 1-2.  After the Government Agencies investigated the online fundraising activities conducted by al-Qassam Brigades, the United States alleges that "[t]he owners of the Defendant Properties, as well as the users and administrators of the al-Qassam Brigades' [w]ebsites,

knowingly and willfully conspired with others, and acted individually, to commit the following

violations: laundering monetary instruments, in violation of 18 U.S.C § 1956(a)(2), operating

unlicensed money transmitting businesses, in violation of 18 U.S.C. § 1960, and providing

material support or resources to a designated foreign terrorist organization, namely Hamas, in

violation of 18 U.S.C § 2339B."  *Id.* ¶ 2.

On October 7, 2020, Claimant Karatas filed a verified claim in this action, alleging that

he is the owner of Defendant Property 180, one of the virtual currency accounts included as a

defendant in this suit, and he "did not and do[es] not have knowledge of any unlawful conduct

giving rise to the forfeiture."  Claimant Karatas's Claim.  On December 28, 2020, Claimant

Karatas filed an answer, alleging that he did not provide any materials to support Hamas, he did

not use his virtual currency account for unlawful purposes, and he is an "innocent owner" of

Defendant Property 180.  Claimant Karatas's Answer ¶¶ 1–3, 119.  On February 16, 2021, the

Weinstock Claimants filed a verified claim in this action, alleging to be "left to attempt to chase

down the assets of Hamas to recover what they can" to satisfy their 2019 Judgment.  Weinstock

Claimants' Claim at 2.  In other words, they cite to their 2019 Judgment as the basis for their

interest in this action, and specifically, the Defendant Properties.  *Id.*; *see* 2019 Judgment.

After the claimants filed their verified claims, the Government filed a motion to stay this

action, which the Court approved, so that the suit would not have an impact on the ongoing

criminal investigation performed by the Government Agencies.  Order, May 16, 2023, ECF No.

43.  On December 6, 2023, the Court adopted a new schedule to govern proceedings, which

included deadlines for the Government, the Weinstock Claimants, and Claimant Karatas to file

any answers, counterclaims, crossclaims, and dispositive motions.  Min. Order, Dec. 6, 2023.

Then, on May 2, 2024, the Court ordered all briefing deadlines on all pending motions to be

stayed pending further order of the Court, and it outlined a briefing schedule for the Government to file its motion for leave to amend the Complaint. Min. Order, May 2, 2024.

The motions that are pending before this Court are the following: (1) Claimant Karatas's motion to stay discovery, *see* Claimant Karatas's Mot. to Stay Disc. ("Claimant Karatas's Mot."), ECF No. 54; (2) Claimant Karatas's motion to strike the Weinstock Claimants' answer and crossclaim against him, *see* Claimant Karatas's Mot. to Strike Weinstock Claimants' Answer and Cross-cl., ECF No. 55; (3) the Government's motion to strike the Weinstock Claimants' claim and answer and dismiss its counterclaim against the United States, *see* Gov't's Mot. to Strike Weinstock Claimants' Claim and Answer, and Dismiss Countercl., ECF No. 56; (4) the Weinstock Claimants' motion for summary judgment, *see* Weinstock Claimants' Mot. for Summ. J., ECF No. 59; (5) the Government's motion for leave to amend the complaint, *see* Gov't's Mot. for Leave to Amend ("Gov't's Mot."), ECF No. 62; and (6) the Weinstock Claimants' motion to file a surreply, *see* Weinstock Claimants' Mot. to File Surreply ("Weinstock Claimants' Mot."), ECF No. 68. However, and although many of the issues overlap, the Court will only address the motions that are fully briefed: (1) the Weinstock Claimants' motion to file a surreply, *see* Weinstock Claimants' Mot.; (2) the Government's motion for leave to amend the complaint, *see* Gov't's Mot.; and (3) Claimant Karatas's motion to stay discovery, *see* Claimant Karatas's Mot.. The Court will first consider the Weinstock Claimants' motion to file a surreply, then resolve the Government's motion to amend the Complaint, and finally address Claimant Karatas's motion to stay discovery. Within its analysis, the Court will assess the Weinstock Claimants' standing in this action, which will also be relevant when resolving the remaining pending motions in this action once they are ripe for review.

## III. DISCUSSION

### A. Weinstock Claimants' Motion to File a Surreply

After the Government filed its motion for leave to amend the complaint on May 24, 2024, *see* Gov't's Mot., and the Weinstock Claimants filed a memorandum in opposition on June 24, 2024, *see* Weinstock Claimants' Partial Opp'n to Gov't's Mot. ("Weinstock Claimants' Opp'n"), ECF No. 64), the Government filed a reply to the opposition on July 8, 2024, *see* Gov't's Reply in Supp. of Mot. for Leave to Amend ("Gov't's Reply"), ECF No. 65.  After the Government's reply, the Weinstock Claimants filed a motion to file a surreply on July 30, 2024, *see* Weinstock Claimants' Mot., where they allege that the United States presented all of its "arguments in putative support of the request to dispose of Property 180" in its reply, which the Weinstock Claimants argue should have been included in the Government's initial motion, *id*. at 2.  The Weinstock Claimants allege that "the Government has laid a procedural ambush" because "it refrained from including in its motion any grounds whatsoever in support for its request to dispose of Property 180 adversely to the Weinstocks."  *Id*. at 3.

In its response to the Weinstock Claimants' surreply, the Government argues that the surreply motion should be denied because the Weinstock Claimants did not comply with Local Civil Rule 7(m).  Gov't's Resp. to Weinstock Claimants' Surreply ("Gov't's Opp'n") at 1-2, ECF No. 69.  Local Civil Rule 7(m) requires counsel to "discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought" "before filing any nondispositive motion in a civil action."  LCvR 7(m).  However, "when a party has failed to respect the requirements of Local Rule 7(m), the Court will exercise its discretion in selecting the remedy, bearing in mind the purposes of the rule."  *Steele v. United States*, No. 14-cv-1523, 2023 WL 6215790, at *4 (D.D.C. Sept. 5, 2023) (citing *Day v. Cornèr*

*Bank (Overseas) Ltd.*, 789 F. Supp. 2d 136, 144 (D.D.C. 2011)).  The Weinstock Claimants

concede to their noncompliance with Local Rule 7(m) because "of their sincere belief that in

light of [the Government's] hardball tactics[,] [it] would certainly and self-evidently refuse to

consent" to a discussion.  Weinstock Claimants' Reply in Supp. of Mot. to File Surreply

("Weinstock Claimants' Reply") at 2, ECF No. 72.  When a party filed a motion without

complying with Local Rule 7(m) because it "did not think further negotiation would be fruitful,"

the Court previously "remind[ed] the parties to diligently confer and be mindful of the burden

placed on the Court but declin[ed] to resolve the Petitioner's motion on Rule 7(m) grounds."  *See*

*DC2NY, Inc. v. Acad. Bus, LLC*, No. 18-cv-2127, 2020 WL 1536219, at *7 (D.D.C. Mar. 31,

2020).  Here, the Court holds similarly.  Although the parties should continue to be mindful

about conferring prior to filing any nondispositive motions, the Weinstock Claimants' surreply is

necessary to fully air the arguments about the central issue regarding the fate of Defendant

Property 180.  *See* Weinstock Claimants' Mot.; Weinstock Claimants' Proposed Surreply Ex. A

("Weinstock Claimants' Surreply"), ECF No. 68-1.

   "[W]hen [a] non-movant is deprived of the opportunity to contest [issues] raised for the

first time in the movant's reply, the non-movant may seek the [] court's leave to file a surreply."

*Glass v. Lahood,* 786 F. Supp. 2d 189, 231 (D.D.C. 2011) (citing *Ben–Kotel v. Howard*

*Univ.,* 319 F.3d 532, 536 (D.C. Cir. 2003)).  "In exercising its discretion, the [Court] consider[s]

whether the movant's reply in fact raises arguments or issues for the first time[,] whether the

non-movant's proposed surreply would be helpful to the resolution of the pending motion[,] and

whether the movant would be unduly prejudiced were leave to be granted."  *Id*. (citing *Akers v.*

*Beal Bank*, 760 F. Supp. 2d 1, 3–4 (D.D.C. 2011)).  The Court finds that the Weinstock

Claimants' rationale—that the Government "refrained from including in its motion any grounds

whatsoever in support for its request to dispose of Property 180 adversely to the Weinstocks"—

sufficiently demonstrates "good cause" warranting the granting of their motion, particularly

because the return of Defendant Property 180 has become one of the central disputes in this

action. Weinstock Claimants' Mot. at 3; *Alexander v. FBI,* 186 F.R.D. 71, 74 (D.D.C. 1998).

Accordingly, the Court grants the Weinstock Claimants' motion to file a surreply and its

proposed surreply shall be docketed as filed as of July 30, 2024.

### B. The Government's Motion for Leave to Amend the Complaint

On May 24, 2024, the Government filed a motion for leave to amend the complaint to

drop one defendant, Defendant Property 180, from the action. *See* Gov't's Mot. at 3; Gov't's

Am. Verified Compl. Ex. A ("Gov't's Am. Compl."), ECF No. 62-1. Defendant Property 180 is

the subject of Claimant Karatas's claim, where he alleges that he owns the property and it should

not be part of this suit. *See* Claimant Karatas's Claim at 1. After further investigation, the

Government has reached the same conclusion and now wishes to conform the allegations in the

Complaint to what it now believes the evidence supports: that Defendant Property 180 is no

longer "(a) the property of a perpetrator of a federal crime of terrorism or provided a person a

source of influence over such a perpetrator, or (b) involved in a money laundering conspiracy

(either to promote providing material support to a foreign terrorist organization or to promote

carrying on an unlicensed money transmitting business)." Gov't's Reply at 1. Courts grant a

plaintiff leave to amend so that they have the ability to correct its pleading when new

information arises. *See, e.g*., *Wharf, Inc. v. District of Columbia*, 321 F.R.D. 25, 31 (D.D.C.

2017) (granting leave to amend to include additional information). Claimant Karatas consents to

the relief sought in the Government's motion; and although the Weinstock Claimants do not

oppose the Government's request to amend the complaint, they do oppose part of the requested

relief – that Defendant Property 180 should be dismissed as a party in this action.  *See* Weinstock Claimants' Opp'n at 2.  Instead, the Weinstock Claimants argue that (1) the Court should continue to exercise its jurisdiction over Defendant Property 180 because they filed a "creditor's bill" as a crossclaim against Claimant Karatas and a counterclaim against the Government and (2) they successfully have a lien against the property.  *Id*. at 8.

Rule 15 "governs motions for leave to amend a complaint."  *Calixto v. U.S. Dep't of Army*,  No. 18-cv-1551, 2021 WL 2253351, at *3 (D.D.C. June 3, 2021) (granting leave to amend complaint).  When a party seeks to amend the complaint more than twenty-one days after a responsive pleading has been served, the party must request leave from the court to amend their pleading.  Fed. R. Civ. P. 15(a).  A court's decision to allow an amendment "is within the discretion of the district court: leave to amend should be freely given when justice so requires." *Calixto*, 2021 WL 2253351, at *3 (cleaned up) (citing Fed. R. Civ. P. 15(a)(2)).  "Because courts liberally apply Rule 15 when deciding whether to allow amendments, the nonmoving party generally 'carries the burden in persuading the court to deny leave to amend.'" *Id*. (quoting *Jackson v. Teamsters Loc. Union 922*, 991 F. Supp. 2d 64, 67 (D.D.C. 2013) (granting the motion for leave to amend complaint).

### 1.  The Weinstock Claimants' Creditor's Bill

In its analysis of the Government's motion to amend the Complaint, the Court will address the critical issues in the fully briefed motion, including the Weinstock Claimants' surreply.  First, the Weinstock Claimants refer back to their answer to the Complaint, where they assert a crossclaim against Claimant Karatas and a counterclaim against the Government in the form of a creditor's bill.  *See* Weinstock Claimants' Surreply at 4–7, 10; Weinstock Claimants' Answer ¶¶ 128–151.  In their creditor's bill, the Weinstock Claimants seek turnover of all

Defendant Properties to satisfy their 2019 Judgment, including Defendant Property 180. Weinstock Claimants' Answer ¶¶ 128–151.  Therefore, in its opposition to the Government's motion to amend the Complaint, it argues that the Government's request to forfeit Defendant Property 180 is not proper because "the dispute over Property 180" "will eventually be resolved in the context of the Weinstocks' creditor's bill."  Weinstock Claimants' Opp'n at 4.

The Weinstock Claimants argue that their "creditor's bill" crossclaim and counterclaim against Claimant Karatas and the Government, respectively, establish a lien over Defendant Property 180.  *Id.* at 3 (citing Weinstock Claimants' Answer ¶¶ 128–151; *Arlington Brewing v. Wyvill*, 35 App. D.C. 589, 591 (D.C. Cir. 1910); *Weightman v. Washington Critic,* 4 App. D.C. 136, 143 (D.C. Cir. 1894)).  Therefore, the Court should continue to exercise jurisdiction over Defendant Property 180 should it be dropped from this action.  *Id.* at 4.  Creditor's bills are used "to permit a judgment creditor to discover the debtor's assets, to reach equitable interests not subject to execution at law, and to set aside fraudulent conveyances."  *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999) (citations omitted).  "As a general rule, a creditor's bill could be brought only by a creditor who had already obtained a judgment establishing the debt."  *Id.* (citations omitted).  However, the Weinstock Claimants assert an *in personam* counterclaim and crossclaim against Claimant Karatas and the Government as parties, and not claims against any defendant property, including Defendant Property 180.  *See* Weinstock Claimants' Answer ¶¶ 128–151.  Because a party's "status as the holder of an *in personam* judgment against [another] does not give [that party] an interest in 'specific property,' as is required to establish standing in [an] action *in rem*," the Weinstock Claimants are not afforded any interest in a specific property by virtue of filing a creditor's bill. *United States v. All Assets Held at Bank Julius Baer & Co.*, 772 F. Supp. 2d 191, 199 (D.D.C.

2011) (citation omitted); *see also U.S. v. $299,218.48 in U.S. Currency*, 719 F. Supp. 3d 85, 94 (D.D.C. 2024) ("[A]n *in personam* judgment 'does not create any interest in particular property of the [debtor].'" (emphasis added) (citation omitted)).

Under 28 U.S.C. § 1963, a registered judgment "shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." In other words, once a judgment is registered in another federal district court, "the judgment may be enforced there in accordance with the law of that state as though originally rendered by that court." 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3012 (3d ed. 2014). Similarly, under Federal Rule of Civil Procedure 69(a)(1), "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). The Weinstock Claimants registered their 2019 Judgment in this Court, *see* 2019 Judgment; Weinstock Claimants' Answer ¶ 132, and thus, D.C. law governs when evaluating the method for creating a judgment lien on a piece of property. *See* Fed. R. Civ. P. 69(a)(1); *see also* D.C. Code § 15-307 ("A money judgment is enforced by a writ of execution," such as "the writ of fieri facias."). "In the post-judgment context, a writ of attachment is a means of enforcing a judgment, allowing a judgment creditor easy access to a debtor's assets. . . ." *Asal v. Mina*, 247 A.3d 260, 279 (D.C. 2021) (citing *John C. Flood of MD, Inc. v. Brighthaupt*, 122 A.3d 937, 941–42 (D.C. 2015)). "Service of the writ on the garnishee creates a valid lien in favor of the judgment creditor on the debtor's property held by the garnishee." *Id.* (citing *Consumers United Ins. Co. v. Smith*, 644 A.2d 1328, 1352 (D.C. 1994)). "In other words, under D.C. law, collection writs are used to create judgment liens in favor of a creditor and enforce judgments. *See id.* In their opposition to the Government's motion to amend, the Weinstock

Claimants cite to "creditor's bill" precedents from the late 1800s and early 1900s, *see* Weinstock

Claimants' Opp'n at 3 (citing to *Arlington Brewing,* 35 App. D.C. at 593; *Weightman*, 4 App.

D.C. at 143), which were all decided before D.C. law codified the processes to create judgment

liens and enforce judgments in 1963, *see* D.C. Code § 15-307.  The Weinstock Claimants'

reasoning is improper, as D.C. law controls regarding the process to create a judgment lien.  *See*

D.C. Code § 15-307; *see also* 28 U.S.C. § 1963; Fed. R. Civ. P. 69(a)(1).  Accordingly, this

Court finds that the Weinstock Claimants counterclaim and crossclaim against Claimant Karatas

and the Government, Weinstock Claimants' Answer ¶¶ 128–151, does not afford it any lien over

the Defendant Properties, including Defendant Property 180, because an *in personam* creditor's

bill claim does not establish a lien over a property, *see Grupo Mexicano de Desarrolo S.A.*, 527

U.S. at 319 ("A creditor's bill could be brought only by a creditor who had already obtained a

judgment establishing the debt.") (citations omitted).

### 2. The Possession of Defendant Property 180

Second, the Government argues that, after its review of the evidence, it no longer has a

viable claim against Defendant Property 180 and it is seeking to amend the Complaint for "a

limited purpose—to eliminate one tranche of cryptocurrency as a defendant in this *in rem*

proceeding because it no longer believes it is subject to forfeiture based on its review of the

evidence."  Gov't Mot. at 4.  It further requests that Defendant Property 180 be returned "to its

status quo before it was seized in connection with this action."  *Id.* at 6.  The Weinstock

Claimants urge the Court to maintain jurisdiction over Defendant Property 180 and argue that the

Government has no standing to request such an order from the Court, because the "'case and

controversy' regarding Property 180 is now between the Weinstocks and Karatas only" because

"the Government withdrew its claim to Property 180."  Weinstock Claimants' Opp'n at 5.  Here,

the Weinstock Claimants' central argument is that the Government has no standing to seek to dispose of Defendant Property 180 and it cannot request that the Court "return Defendant Property 180 to its status quo ante." *Id.* at 4–6.

Under the applicable civil forfeiture statute, "[a]ll assets, foreign or domestic" of individuals engaged in federal crimes of terrorism are "subject to forfeiture to the United States." 18 U.S.C. § 981(a)(1)(G)(i).  Forfeited property "shall be deemed to be in the custody of the Attorney General . . . subject only to the orders and decrees of the court or the official having jurisdiction thereof." *Id.* § 981(c).  And "[a]ll right, title, and interest" in forfeited property "shall vest in the United States upon commission of the act giving rise to forfeiture." *Id.* § 981(f).  When the Government filed suit against Defendant Properties, it believed that the defendants, including Defendant Property 180, laundered monetary instruments, operated unlicensed money transmitting businesses, and provided material support or resources to Hamas and were therefore subject to forfeiture at the onset of this action.  *See* Compl. ¶ 2.  Here, the Weinstock Claimants argue that Defendant Property 180 is not in the Government's possession because it "has decided that Property 180 is not subject to forfeiture[] and has dropped its claim to that property."  Weinstock Claimants' Surreply at 4.

In Claimant Karatas's answer, he asserts the innocent owner defense pursuant to 18 U.S.C. § 983(d).  *See* Claimant Karatas's Answer ¶ 119.  The innocent owner defense "allows claimants to defeat a civil forfeiture by proving their innocent ownership of the *res* by a preponderance of the evidence." *United States v. All Assets Held at Bank Julius Baer & Co., Ltd*, 959 F. Supp. 2d 81, 118 (D.D.C. 2013) (citing § 983(d)(1)).  "Innocent ownership 'remains an affirmative defense,'" which the claimant must prove only after the government first meets its own burden of "proving by a preponderance of the evidence that the property is subject

to forfeiture." *United States v. 2000 Toyota Celica,* No. 04–3063, 2005 WL 1502902, at *4 (E.D. Wash. June 23, 2005) (first citing § 983(d)(1); then citing § 983(c)(1)).  Here, the innocent owner defense does not apply, because Claimant Karatas does not assert that he is "an innocent owner of illegitimate funds" and the Government concedes that it wishes to drop Defendant Property 180 from the action based on evidence that it found supporting its belief that it is no longer subject to forfeiture.  *See* § 983(d)(2)(A)(i), (ii); Gov't's Mot. at 4.  The Court finds that the Government's request is proper, and Defendant Property 180 shall be returned to its status quo before it was seized in connection with this action because it is no longer at issue in this suit. Even if the Weinstock Claimants are correct in their claim that the Government no longer has an interest in the subject property because it has dropped its claim to Defendant Property 180, *see* Weinstock Claimants' Opp'n at 4, they are wrong in claiming that they still have an interest in the property.  As the Court held in (B)(1), an *in personam* creditor's bill claim does not establish a lien over a property and its counterclaim and crossclaim are not sufficient to establish a lien. *See supra* Section III.B.1.  Because neither the Government nor the Weinstock Claimants have an interest in Defendant Property 180, the ownership of the property reverts back to the owner of the property before this forfeiture action was instituted.[2]

### 3.  The Weinstock Claimants' Standing

Lastly, even if the Court assumed (contrary to the above) that the Weinstock Claimants could pursue some sort of claim – by lien or otherwise – against Defendant Property 180, the Government argues that they cannot do so in this action because the Weinstock Claimants lack standing to pursue such remedy through this suit.  *See* Gov't's Reply at 7–12.  The Court agrees.

---

[2] This Court will not decide whether Claimant Karatas is the rightful owner of Defendant Property 180.

At any time before trial, the Government "may move to strike a claim or answer . . . because the claimant lacks standing" in a forfeiture action brought *in rem* pursuant to a federal statute. Fed. R. Civ. P. Supp. R. G(8)(c)(i)(B). If a challenge to a party's claim and answer fits under this criteria, it "may be presented . . . as a motion to determine[,] after a hearing or by summary judgment[,] whether the claimant can carry the burden of establishing standing by a preponderance of the evidence." *Id.* G(8)(c)(ii)(B). For standing in civil forfeiture claims specifically, "[c]ivil forfeiture actions are brought against property, not people. The owner of the property may intervene to protect his interest." *United States v. All Funds in Acct. Nos. 747.034/278, 747.009/278, & 747.714/278 in Banco Espanol de Credito,* 295 F.3d 23, 25 (D.C. Cir. 2002). "Civil forfeiture actions are governed by the procedures set forth in 18 U.S.C. § 983 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"), a subset of the Federal Rules of Civil Procedure." *United States v. All Assets Held at Bank Julius*, 480 F. Supp. 3d 1, 11–12 (D.D.C. 2020). In order to object to the forfeiture of property to the federal government in an *in rem* forfeiture proceeding, a claimant must "assert[ ] an interest" in "specific property" that is named as a defendant. Fed. R. Civ. P. Supp. R. G(5)(a)(i)(A); *see* § 983(a)(4)(A) ("[A]ny person claiming an interest in the seized property may file a claim asserting such person's interest in the property. . . ."). A claimant who lacks such an interest has no standing to challenge the forfeiture. *See* Fed. R. Civ. P. Supp. R. G(8)(c)(i)(B); *see also United States v. Funds from Prudential Securities,* 300 F. Supp. 2d 99, 103 (D.D.C. 2004) (referring to Supplemental Rule C(6), the predecessor of Supplemental Rules G(5) and G(6)). "The extent of the interest in the defendant property sufficient to meet this standing requirement is left to case law." *All Assets Held at Bank Julius Baer & Co.*, 772 F. Supp. 2d at 198 (citing *Funds From Prudential Secs.*, 300 F. Supp. 2d at 103

(stating that a claimant must "demonstrat[e] an interest . . . sufficient to satisfy the court of his

standing")).

"To prevail, a claimant must meet both Article III and statutory standing requirements."

*United States v. $17,900 in U.S. Currency*, 859 F.3d 1085, 1089 (D.C. Cir. 2017) (internal

quotations omitted); *see also United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*,

234 F. Supp. 3d 115, 120 (D.D.C. 2017) ("[A] claimant must demonstrate Article

III standing in addition to the separate, though partly overlapping, requirements of statutory

standing."); *United States v. One-Sixth Share of Mass Millions Lottery Ticket*, 326 F.3d 36, 40

(1st Cir. 2003) ("Standing in [civil forfeiture] cases has both constitutional and statutory

aspects.").  For the Article III requirement, a claimant must show "(1) that they have suffered an

injury in fact – the invasion of a legally protected interest; (2) that the injury is fairly traceable to

the defendant's conduct (a causal connection); and (3) that a favorable decision on the merits

likely will redress the injury."  *See All Assets Held at Bank Julius*, 480 F. Supp. 3d at 12.  "The

alleged injury in fact must be concrete and particularized and actual or imminent, not conjectural,

hypothetical or speculative."  *Id*.  "[I]n a civil forfeiture case, a claimant's constitutional standing

'turns upon whether the claimant has a sufficient interest in the property to create a case or

controversy.'"  *United States v. 8 Gilcrease Lane*, 641 F. Supp. 2d 1, 6 (D.D.C. 2009) (citing

*United States v. 5208 Los Franciscos Way*, 385 F.3d 1187, 1191 (9th Cir. 2004)).  For the

statutory standing requirement, a claimant must have "assert[ed] [their] interest in the property in

the manner set forth in the Supplemental Rules."  *United States v. All Assets Held at Bank Julius*

*Baer & Co., Ltd.*, 228 F. Supp. 3d 118, 122 (D.D.C. 2017) (citing § 983(a)(4)(A)).  The statutory

standing requirement limits intervention in a civil forfeiture suit to "any person claiming an

interest in the seized property" who "file[s] a claim asserting such person's interest in the

property in the manner set forth in the Supplemental Rules." § 983(a)(4)(A). Supplemental Rule C requires a claimant to file a "verified statement of right or interest" that "must describe the interest in the property that supports the person's demand for its restitution or right to defend the action." Fed. R. Civ. P. Supp. R. C(6)(a)(i)-(ii).

The Weinstock Claimants allege that they have standing in this suit because they have an ownership and property interest in the Defendant Properties as a result of their wholly unsatisfied 2019 Judgment. *See* Weinstock Claimants' Surreply at 7. "Owner" means "a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest[.]" § 983(a)(4)(A). "Owner" does *not* include "a person with only a general unsecured interest in, or claim against, the property or estate of another." § 983(d)(6)(B). But this is exactly the type of ownership interest that the Weinstock Claimants assert here. They have a general, unsecured interest in the Defendant Properties because of their unfulfilled 2019 Judgment, which is not sufficient to establish an ownership interest in a specific property, i.e., Defendant Property 180. *See 8 Gilcrease Lane*, 641 F. Supp. 2d at 5 ("The generalized legal interest movants may have in the assets of [Defendant] does not equate to the necessary particularized interest in any specific asset of [Defendant] required for standing."). For the statutory standing requirement, the Weinstock Claimants have not asserted their interest in the Defendant Properties as directed by the Supplemental Rules. The Supplemental Rules limit the exact action that the Weinstock Claimants are seeking to take here by staking a claim to properties to which they lack an ownership or property interest. *See* § 983(d)(6)(B). The Weinstock Claimants' general interest in the Defendant Properties does not satisfy the statutory requirement because "[g]eneral creditors cannot claim an interest in any particular asset that makes up the debtor's estate," and

the Weinstock Claimants cannot go after any particular asset allegedly owned by Hamas to resolve a general claim to monetary damages awarded in another case. *United States v. $20,193.39 in U.S. Currency*, 16 F.3d 344, 346; *see also United States v. Ribadeneira*, 105 F.3d 833, 836 (2nd Cir. 1997) (stating that general creditors "cannot claim an interest in any particular asset that makes up [the] estate"). In their 2019 Judgment, it was never established that the Weinstock Claimants had a judgment lien against the specific Defendant Properties, and the Weinstock Claimants cannot attempt to satisfy their judgment by seeking to attach the Defendant Properties as a result of the seizure of this specific property and this action. *See Greenbaum v. Islamic Republic of Iran*, 67 F.4th 428, 435 (D.C. Cir. 2023) ("federal sovereign immunity prevents the attachment and garnishment of" assets seized under civil forfeiture). As this Court has previously held, as unsecured creditors of the Hamas, the Weinstock Claimants do not have standing in this *in rem* action brought against Defendant Property 180, which vitiates the Weinstock Claimants' ability to bring crossclaims against the Defendant Properties themselves. *See U.S. v. All Assets Held at Bank Julius Baer & Co.*, No. 04-cv-0798, 2023 WL 5000213, at *14 (D.D.C. 2023) ("[A]s this Court and others have noted, unsecured creditors lack standing to contest the forfeiture of their debtors' property."); *see also United States v. BCCI Holdings (Luxembourg), S.A.*, 46 F.3d 1185, 1191 (D.C. Cir. 1995) (holding that "a general creditor can never have an interest in specific forfeited property"); *see also United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 772 F. Supp. 2d 205, 212 (D.D.C. 2011) ("[T]he federal courts have consistently held that unsecured creditors do not have standing to challenge the civil forfeiture of their debtors' property." (citations omitted)).

      To satisfy the Article III requirement, a claimant must show a "colorable claim on the [defendant] property . . .—typically, an ownership or possessory interest, . . .because an owner or

possessor of property that has been sized necessarily suffers an injury that can be redressed at least in part by the return of the seized property." *$17,900 in U.S. Currency*, 859 F.3d at 1090 (internal quotations omitted).  As explained with respect to statutory standing, the Weinstock Claimants do not have a cognizable interest in the Defendant Properties.  First, the Weinstock Claimants' so-called injury in-fact, the unsatisfied 2019 Judgment, is not related to an injury in question in this action.  Because the Weinstock Claimants only have a "general unsecured interest, in or claim against, the property," § 983(d)(6), they do not have an interest sufficient to claim that they have suffered an injury in-fact related to this action.  Second, although the injury was established to be traceable to Hamas in the 2019 Judgment, it is not traceable to the alleged unlawful conduct by the Defendant Properties, which is the subject of this action.  *See 8 Gilcrease Lane*, 641 F. Supp. 2d at 6 ("[M]ovants lack constitutional standing because they have no interest sufficient to create a claim or controversy and, thus, they cannot intervene in this matter as of right.").  Lastly, it is unclear that a favorable decision on the merits will redress the Weinstock Claimants' injury, because it has yet to be established that the Defendant Properties are owned by Hamas or that the accounts included in the Defendant Properties can or will be used to satisfy the Weinstock Claimants' 2019 Judgment.  Thus, the Weinstock Claimants have not demonstrated how they suffered a redressable injury in this action because they have not established any ownership rights of property interest on the Defendant Properties.  *Id*. ("Similarly, [movants] have not demonstrated that they have a claim or defense available to them such that the Court should allow permissive intervention pursuant to [Fed. R. Civ. P.] 24(b)."); *see also $299,218.48 in U.S. Currency*, 719 F. Supp. 3d at 95 ("[C]onfer[ing] standing upon *any* claimant who suffered economic harm—no matter the nature of their interest in the seized

assets—does not square with the rest of civil forfeiture law.").  Thus, the Weinstock Claimants also lack Article III standing to assert claims to the seized Defendant Properties.

In conclusion, because the Government no longer believes that it has a viable claim against Defendant Property 180, and because the Weinstock Claimants do not have any lien to this property nor do they have standing in this action, the Government is granted leave to amend its pleadings so that it only includes the defendant properties that it still believes are subject to forfeiture.[3]  As such, this Court grants the Government's motion to amend, and the Amended Complaint attached to that motion shall be docketed and deemed filed as of May 24, 2024.

### C.  Claimant Karatas's Motion to Stay Discovery Pending Disposition of Dispositive Motions

On March 11, 2024, Claimant Karatas filed a motion to stay discovery in which he asked the Court to resolve whether the Weinstock Claimants have standing in the lawsuit before allowing them to take discovery.  Claimant Karatas's Mot. at 3.  The Government mostly agreed with Claimant Karatas's motion, but the Weinstock Claimants opposed Claimant Karatas's motion because they allege that he needs to be deposed immediately.  *See* Weinstock Claimants' Opp'n to Claimant Karatas's Mot., ECF No. 57.

Because Defendant Property 180 will no longer be a party in this suit and its ownership shall be transferred back to the status quo ante, neither Claimant Karatas nor the Weinstock Claimants will maintain any interest in this action and will no longer be part of its discovery. Therefore, Claimant Karatas's Motion to Stay Discovery is denied as moot.

---

[3] The Government, for similar reasons, seeks to omit 18 U.S.C. § 1960 as a specified unlawful activity from the action.  Gov't Mot. at 4.  The Government has a responsibility to amend its complaint if it includes the "prosecution of a meritless claim," and it is seeking to do just that with this motion.  *United States v. Wallace*, 964 F.2d 1214, 1220 (D.C. Cir. 1992) (quoting *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 875 (5th Cir.1988) (en banc)).

## IV.  CONCLUSION

For the foregoing reasons, the Court finds that the Weinstock Claimants' motion for leave to file a surreply is granted, the Government's motion to amend/correct the Complaint is granted, and Claimant Karatas's motion to stay discovery is denied as moot.  However, it is hereby ORDERED that the return of Defendant Property 180 shall be stayed for thirty days from this Order, which will give the Weinstock Claimants an opportunity to seek any appeal and a further stay from the Circuit.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

SO ORDERED.

Dated:  November 19, 2024                                       RUDOLPH CONTRERAS
                                                               United States District Judge