UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

UNITED STATES OF AMERICA,

Plaintiff,

v.

FIFTY-THREE VIRTUAL CURRENCY
ACCOUNTS, *et al.*,

Defendants.
_____

**JURY TRIAL DEMANDED**

Civil Action No. 1:20-cv-02227-RC

**THE WEINSTOCK CLAIMANTS' ANSWER TO THE
AMENDED VERIFIED COMPLAINT FOR FORFEITURE IN REM, THEIR
CROSSCLAIMS/THIRD PARTY CLAIMS AGAINST CLAIMANT HUSAMETTIN
KARATAS
AND THEIR COUNTERCLAIMS AGAINST THE UNITED STATES**

Claimants Sharon Weinstock, Moshe Weinstock, Geula Weinstock, Aryeh Weinstock, and Chaim Mishael Weinstock, and the Estates of Yitzchak Weinstock, Dov Weinstock, Simon Dolgin and Shirley Dolgin ("Weinstock Claimants") by and through counsel, hereby file their Answer to the Amended Verified Complaint for Forfeiture *in Rem*, their Crossclaims/Third Party Claims against Husamettin Karatas ("Karatas") and their Counterclaims against the United States, and state as follows:

**NATURE OF ACTION AND THE DEFENDANT *IN REM***

1. Answering ¶ 1, the Weinstock Claimants admit the allegations.

2. Answering ¶ 2, the Weinstock Claimants admit that the owners of the Defendant Properties, as well as the users and administrators of the al-Qassam Brigades' Websites, knowingly and willfully conspired with others, and acted individually, to provide material support and

1

resources to Hamas. The Weinstock Claimants deny that the Defendant Properties are subject to forfeiture. The Weinstock Claimants lack sufficient knowledge or information to enable them to answer the remaining allegations in this paragraph.

3. Answering ¶ 3, the Weinstock Claimants admit that the Defendant Properties are assets of Hamas. The Weinstock Claimants deny that the Defendant Properties are subject to forfeiture. The Weinstock Claimants lack sufficient knowledge or information to enable them to answer the remaining allegations in this paragraph.

## JURISDICTION AND VENUE

4. Answering ¶ 4, the Weinstock Claimants admit that this Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355(a).

5. Answering ¶ 5, the Weinstock Claimants deny that venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1355(b)(1)(A). The Weinstock Claimants lack sufficient knowledge or information to enable them to answer the allegations that venue is proper under 28 U.S.C. § 1355 (b)(2) or 28 U.S.C. § 1395(c).

## FACTS GIVING RISE TO FORFEITURE

I. **DEFINITION OF TERMS**

A. **Bitcoin**

6. Answering ¶ 6, the Weinstock Claimants lack sufficient knowledge or information to enable them to answer these allegations.

7. Answering ¶ 7, the Weinstock Claimants lack sufficient knowledge or information to enable them to answer these allegations.

8. Answering ¶ 8, the Weinstock Claimants lack sufficient knowledge or information to enable them to answer these allegations.

9. Answering ¶ 9, the Weinstock Claimants lack sufficient knowledge or information to enable them to answer these allegations.

### B. Blockchain Analysis

10. Answering ¶ 10, the Weinstock Claimants lack sufficient knowledge or information to enable them to answer these allegations.

11. Answering ¶ 11, the Weinstock Claimants lack sufficient knowledge or information to enable them to answer these allegations.

12. Answering ¶ 12, the Weinstock Claimants lack sufficient knowledge or information to enable them to answer these allegations.

## II. CURRENT INVESTIGATION OF TERRORIST FUNDING

### A. Designation of Hamas and the al-Qassam Brigades

13. Answering ¶ 13, the Weinstock Claimants admit the allegations.

14. Answering ¶ 14, the Weinstock Claimants admit the allegations.

15. Answering ¶ 15, the Weinstock Claimants admit the allegations.

### B. Terrorist Fundraising Campaign

16. Answering ¶ 16, the Weinstock Claimants admit the allegations.

a. STAGE ONE

17. Answering ¶ 17, the Weinstock Claimants admit the allegations.

18. Answering ¶ 18, the Weinstock Claimants admit the allegations.

19. Answering ¶ 19, the Weinstock Claimants admit the allegations.

20. Answering ¶ 20, the Weinstock Claimants admit the allegations.

21. Answering ¶ 21, the Weinstock Claimants admit the allegations.

22. Answering ¶ 22, the Weinstock Claimants admit the allegations.

23. Answering ¶ 23, the Weinstock Claimants admit the allegations.

24. Answering ¶ 24, the Weinstock Claimants admit the allegations.

    b.    <u>STAGE TWO</u>

25. Answering ¶ 25, the Weinstock Claimants admit the allegations.

26. Answering ¶ 26, the Weinstock Claimants admit the allegations.

27. Answering ¶ 27, the Weinstock Claimants admit the allegations.

28. Answering ¶ 28, the Weinstock Claimants admit the allegations.

    c.    <u>STAGE THREE</u>

29. Answering ¶ 29, the Weinstock Claimants admit the allegations.

30. Answering ¶ 30, the Weinstock Claimants admit the allegations.

31. Answering ¶ 31, the Weinstock Claimants admit the allegations.

32. Answering ¶ 32, the Weinstock Claimants admit the allegations.

33. Answering ¶ 33, the Weinstock Claimants admit the allegations.

34. Answering ¶ 34, the Weinstock Claimants admit the allegations.

35. Answering ¶ 35, the Weinstock Claimants admit the allegations.

36. Answering ¶ 36, the Weinstock Claimants admit the allegations.

37. Answering ¶ 37, the Weinstock Claimants admit the allegations.

38. Answering ¶ 38, the Weinstock Claimants admit the allegations.

39. Answering ¶ 39, the Weinstock Claimants admit the allegations.

**III.    INFRASTRUCTURE OF THE AL-QASSAM BRIGADES' WEBSITES**

40. Answering ¶ 40, the Weinstock Claimants admit the allegations.

41. Answering ¶ 41, the Weinstock Claimants admit the allegations.

**IV.    ACCOUNTS OF DONORS TO THE FUNDRAISING CAMPAIGN**

    42.    Answering ¶ 42, the Weinstock Claimants admit the allegations.

**a.    Virtual Currency Exchange 1:**

    43.    Answering ¶ 43, the Weinstock Claimants admit the allegations.

    44.    Answering ¶ 44, the Weinstock Claimants admit the allegations.

    45.    Answering ¶ 45, the Weinstock Claimants admit the allegations.

    46.    Answering ¶ 46, the Weinstock Claimants admit the allegations.

**b.    Virtual Currency Exchange 2:**

    47.    Answering ¶ 47, the Weinstock Claimants admit the allegations.

    48.    Answering ¶ 48, the Weinstock Claimants admit the allegations.

    49.    Answering ¶ 49, the Weinstock Claimants admit the allegations.

    50.    Answering ¶ 50, the Weinstock Claimants admit the allegations.

    51.    Answering ¶ 51, the Weinstock Claimants admit the allegations.

    52.    Answering ¶ 52, the Weinstock Claimants admit the allegations.

    53.    Answering ¶ 53, the Weinstock Claimants admit the allegations.

    54.    Answering ¶ 54, the Weinstock Claimants admit the allegations.

    55.    Answering ¶ 55, the Weinstock Claimants admit the allegations.

    56.    Answering ¶ 56, the Weinstock Claimants admit the allegations.

    57.    Answering ¶ 57, the Weinstock Claimants admit the allegations.

    58.    Answering ¶ 58, the Weinstock Claimants admit the allegations.

    59.    Answering ¶ 59, the Weinstock Claimants admit the allegations.

    60.    Answering ¶ 60, the Weinstock Claimants admit the allegations.

    61.    Answering ¶ 61, the Weinstock Claimants admit the allegations.

62. Answering ¶ 62, the Weinstock Claimants admit the allegations.

63. Answering ¶ 63, the Weinstock Claimants admit the allegations.

64. Answering ¶ 64, the Weinstock Claimants admit the allegations.

c. **Virtual Currency Exchange 3:**

65. Answering ¶ 65, the Weinstock Claimants admit the allegations.

66. Answering ¶ 66, the Weinstock Claimants admit the allegations.

d. **Virtual Currency Exchange 4:**

67. Answering ¶ 67, the Weinstock Claimants admit the allegations.

68. Answering ¶ 68, the Weinstock Claimants admit the allegations.

e. **Virtual Currency Exchange 5:**

69. Answering ¶ 69, the Weinstock Claimants admit the allegations.

70. Answering ¶ 70, the Weinstock Claimants admit the allegations.

f. **Virtual Currency Exchange 6:**

71. Answering ¶ 71, the Weinstock Claimants admit the allegations.

72. Answering ¶ 72, the Weinstock Claimants admit the allegations.

g. **Virtual Currency Exchange 7:**

73. Answering ¶ 73, the Weinstock Claimants admit the allegations.

74. Answering ¶ 74, the Weinstock Claimants admit the allegations.

h. **Virtual Currency Exchange 8:**

75. Answering ¶ 75, the Weinstock Claimants admit the allegations.

76. Answering ¶ 76, the Weinstock Claimants admit the allegations.

77. Answering ¶ 77, the Weinstock Claimants admit the allegations.

i. **Virtual Currency Exchange 9:**

78. Answering ¶ 78, the Weinstock Claimants admit the allegations.

79. Answering ¶ 79, the Weinstock Claimants admit the allegations.

80. Answering ¶ 80, the Weinstock Claimants admit the allegations.

81. Answering ¶ 81, the Weinstock Claimants admit the allegations.

82. Answering ¶ 82, the Weinstock Claimants admit the allegations.

j. **Virtual Currency Exchange 10:**

83. Answering ¶ 83, the Weinstock Claimants admit the allegations.

84. Answering ¶ 84, the Weinstock Claimants admit the allegations.

85. Answering ¶ 85, the Weinstock Claimants admit the allegations.

86. Answering ¶ 86, the Weinstock Claimants admit the allegations.

k. **Virtual Currency Exchange 11:**

87. Answering ¶ 87, the Weinstock Claimants admit the allegations.

88. Answering ¶ 88, the Weinstock Claimants admit the allegations.

**V. UNLICENSED MONEY SERVICE BUSINESS LINKED TO THE AL-QASSAM BRIGADES' FUNDRAISING SCHEME**

89. Answering ¶ 89, the Weinstock Claimants admit the allegations.

90. Answering ¶ 90, the Weinstock Claimants admit the allegations.

91. Answering ¶ 91, the Weinstock Claimants admit the allegations.

92. Answering ¶ 92, the Weinstock Claimants admit the allegations.

93. Answering ¶ 93, the Weinstock Claimants deny the allegation that "Due to the nature of correspondent bank transactions, these international wires transited from outside the United States into the United States and then back out to the intended destination[,]" to the extent that allegation is based on the presumption or belief that all dollar wire transfers pass through the

United States. *Tamam v. Fransabank SAL*, 677 F. Supp. 2d 720, 729-730 (S.D.N.Y. 2010) (rejecting claim that all dollar transactions pass through the United States and finding as a matter of fact that dollar clearance is available through correspondent banks "all over the world."). To the extent that the foregoing allegation is purportedly based on actual proof that the international wires in question passed through the United States, then the Weinstock Claimants lack sufficient knowledge or information to enable them to answer this allegation. The Weinstock Claimants admit the other allegations in this paragraph.

94. Answering ¶ 94, the Weinstock Claimants admit the allegations.

95. Answering ¶ 95, to the extent that the allegations about U.S. customers imply that those customers were involved in transactions relating to Hamas, the Weinstock Claimants lack sufficient knowledge or information to enable them to answer these allegations. The Weinstock Claimants admit the other allegations of this paragraph.

96. Answering ¶ 96, the Weinstock Claimants admit the allegations.

**COUNT ONE – FORFEITURE**
**(18 .S.C. § 981(A)(1)(G)(I))**

97. Answering ¶ 97, the Weinstock Claimants incorporate by reference their responses to the allegations set forth in Paragraphs 1 to 107 above as if fully set forth herein.

98. Answering ¶ 98, the Weinstock Claimants admit the allegations.

99. Answering ¶ 99, the Weinstock Claimants admit the allegations.

100. Answering ¶ 100, the Weinstock Claimants admit that the Defendant Properties are assets of Hamas, and deny that the Defendant Properties are subject to forfeiture.

**COUNT TWO – FORFEITURE**
**(18 U.S.C. § 981(a)(1)(A))**

8

101. Answering ¶ 101, the Weinstock Claimants incorporate by reference their responses to the allegations set forth in Paragraphs 1 to 96 above as if fully set forth herein.

102. Answering ¶ 102, the Weinstock Claimants admit that the Defendant Properties are assets of Hamas, and lack sufficient knowledge or information to enable them to answer the other allegations in this paragraph.

103. Answering ¶ 103, the Weinstock Claimants lack sufficient knowledge or information to enable them to answer the allegations in this paragraph.

## **THE WEINSTOCK CLAIMANTS' AFFIRMATIVE DEFENSE**

104. The Weinstock Claimants assert an affirmative defense of lack of jurisdiction over the *res* and lack of personal jurisdiction over the owners of the *res*.

105. "[B]oth *in rem* and *quasi in rem* jurisdiction require the relevant property to reside within the court's geographic jurisdiction." *Agudas Chasidei Chabad of United States v. Russian Fed'n*, No. 1:05-CV-1548-RCL, 2020 WL 13611456, at *23 (D.D.C. Nov. 6, 2020).

106. In rem jurisdiction is an "elliptical way of referring to jurisdiction over the interests of persons in a thing … in order to justify an exercise of jurisdiction in rem, the basis for jurisdiction must be sufficient to justify exercising jurisdiction over the interests of persons in a thing. The standard for determining whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum-contacts standard elucidated in *International Shoe*." *Shaffer v. Heitner*, 433 U.S. 186, 207 (1977) (cleaned up).

107. Because this is a civil, not a criminal, forfeiture action, under the law of this Circuit, the regular Due Process standards for civil actions apply here. *Livnat v. Palestinian Auth.*, 851

F.3d 45, 56 (D.C. Cir. 2017). *Cf. Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 341 (2d Cir. 2016) (noting "the more expansive due process test in criminal cases.").

108. The Amended Verified Complaint indicates that some or all of the Defendant Properties are located without the United States – *i.e.*, beyond this Court's "geographic jurisdiction" – and that all the persons with interests in the Defendant Properties are outside of the United States.

109. Exercise of *in rem* jurisdiction in this action does not comply with the Fifth Amendment's Due Process Clause because the Plaintiff has failed to allege, much less prove, and cannot prove, that the Defendant Properties and the persons with interests in the Defendant Properties, have minimum contacts with the United States.

110. Under the law of this Circuit, the due process standards of the Fifth Amendment are identical to those of the Fourteenth Amendment. *Livnat*, 851 F.3d at 54. Thus, under Circuit law, the fact that this action was brought by the federal government and not a state government permits no leeway or special consideration in the application of the Due Process Clause. The United States Government cannot skirt the Due Process Clause any more than Rhode Island can.

111. This Court's lack of jurisdiction over the *res* and lack of personal jurisdiction over the owners of the *res* is reflected in the fact that the Plaintiff's Amended Verified Complaint fails to "state the grounds for … in rem jurisdiction over" the Defendant Properties, as explicitly required by Fed. R. Civ. P. Supp. R. G(2).

112. Therefore, Plaintiff's forfeiture action must be dismissed under the Due Process Clause.

## THE WEINSTOCK CLAIMANTS' CROSSCLAIMS AND COUNTERCLAIMS

113. For their Crossclaims and Counterclaims, the Weinstock Claimants allege as follows:

## INTRODUCTION

114. The Weinstock Claimants are the family members (and the estates of deceased family members) of Yitzchak Weinstock, a 19-year-old American citizen who was murdered in a terrorist shooting attack carried out by the Hamas terrorist organization.

115. On May 17, 2019, the Weinstock Claimants obtained a final judgment in the United States District Court for the Southern District of Florida against Hamas, under the Antiterrorism Act, 18 U.S.C. § 2333 (the "Judgment"). *See Weinstock v. Islamic Republic of Iran, et al.*, 2019 WL 1993778, (S.D. Fla. May 6, 2019).

116. The total amount of the Judgment (before post-judgment interest) is $78,873,000. The Judgment remains wholly unsatisfied.

117. The Judgment was registered in this Court pursuant to 28 U.S.C. § 1963. *Weinstock v. Islamic Republic of Iran, et al*. 23-mc-00050 (D.D.C.). The Judgment thus has "the same effect as a judgment of" this Court, and "may be enforced in like manner." § 1963.

118. The Weinstock Claimants assert their crossclaims and counterclaims in this action in the form of a creditors' bill to enforce their Judgment. "A judgment creditor's bill is in essence an equitable execution comparable to proceedings supplementary to execution." *Pierce v. United States*, 255 U.S. 398, 401-02 (1921). *Cf. Grupo Mexicano de Desarrollo v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999) (discussing the "equitable action known as a 'creditor's bill.'").

119. Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA") (appearing at 28 U.S.C. § 1610 (note)) provides in relevant part: "Notwithstanding any other provision of law

… in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism … the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable." TRIA § 201(a) .

120.    Hamas is a "terrorist party" within the meaning of TRIA § 201(a) because it is a "terrorist organization" as defined in section 212(a)(3)(B)(vi) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(3)(B)(vi))). *See* definition in TRIA § 201(d)(4).

121.    The Judgment was entered "on a claim based upon an act of terrorism" within the meaning of TRIA § 201(a) because the murder of Yitzchak Weinstock was "terrorist activity" as defined in section 212(a)(3)(B)(iii) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(3)(B)(iii))). *See* definition in TRIA § 201(d)(1)(B).

122.    The Weinstock Claimants are therefore also entitled to enforce their Judgment under TRIA § 201(a).

## JURISDICTION

123.    This Court has subject-matter to adjudicate the Weinstocks' crossclaims and counterclaims pursuant to its ancillary jurisdiction to enforce its own judgments (including judgments registered in this Court under 28 U.S.C. § 1963), and pursuant to § 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"), 28 U.S.C. § 1610 (note).

124.    The Court has personal jurisdiction over Karatas to adjudicate the Weinstock Claimants' crossclaims because he voluntarily appeared in this action.

125. Additionally, the Court has personal jurisdiction over Karatas because a significant portion of the funds that were invested in, and/or transferred out of Defendant Property 180 were transferred by United States persons and/or were transferred through the United States.

126. The Court has personal jurisdiction over Plaintiff United States to adjudicate the Weinstock Claimants' counterclaims claims because it initiated this action.

127. By initiating this action, Plaintiff United States waived its sovereign immunity from the Weinstock Claimants' counterclaims.

## FACTS

128. The Weinstock Claimants incorporate by reference their responses to Plaintiff's allegations set forth above, their own allegations set forth above, and, to the extent consistent with the other allegations herein, the factual allegations of the Affidavit in Support of an Application for a Criminal Complaint and Arrest Warrant sworn to and signed by Special Agent Jonathan Gebhart on August 12, 2020, and filed herein by the Government (the "Gebhart Affidavit," ECF No. 16-1), as if fully set forth herein.

### A. Karatas Used Virtual Currency Accounts to Launder Money for Hamas and the Al-Qassam Brigades.

129. Defendant Property 179, which was registered to Turkish national, Mehmet Akti ("Akti"), operated an unlicensed money service business ("MSB") which Akti used to enable the al-Qassam Brigades to convert virtual currency to traditional fiat currency or exchange it for something of value to enable it to spend the virtual currency.

130. Between October 2017 and March 2019, Defendant Property 179 was in receipt of approximately 2,328 BTC, 2,296 ETH, and U.S. dollar wires totaling $82.8 million. Gebhart Affidavit at ¶ 30.

131. All of the U.S. dollar wires transferred to Defendant Property 179 originated from a

Turkish bank account held in the name Deniz Royal Dis Ticaret Limited Sirketi ("Deniz Royal"). Gebhart Affidavit at ¶ 30.

132. Upon information and belief and as alleged by the government, these international dollar transfers transited from outside the United States into the United States and then back out to the intended destination. Akti then used these U.S. dollar wires to acquire additional virtual currencies. Gebhart Affidavit at ¶ 30.

133. Another virtual currency account, identified in the Original Complaint as Defendant Property 180.[1], also operated an unlicensed MSB that was intertwined with Defendant Property 179.

134. On or about February 25, 2019, Virtual Currency Exchange 12 requested "Know-Your-Customer" ("KYC") information from Akti.

135. On or about March 8, 2029, Akti provided the requested KYC information.

136. Within days of Akti providing the KYC information, three things happened: (1) Akti liquidated most of Defendant Property 179 by transferring almost all of his cryptocurrency to other wallet addresses; (2) Husamettin Karataş ("Karataş") opened **Defendant Property 180**; and (3) in the process of liquidating Defendant Property 179, Akti transferred nearly half of his cryptocurrency into Karatas's **Defendant Property 180**. *See* Amended Verified Complaint at ¶ 96; *See also* Government's Motion to Stay, ECF No. 16 at 4 and Gebhart Affidavit at ¶¶ 33-34.

137. In other words, Karatas opened Defendant Property 180, at approximately the same time that Atki liquidated Defendant Property 179. And he funded the account largely with the assets of Defendant Property 179.

138. In total, approximately 42.2 BTC, 2,465 ETH, 123,500 XRP, and 70,055 EOS were

---

[1] For the sake of consistency, the Weinstocks Claimants will continue to refer to this account as "Defendant Property 180." As indicated in Attachment A to the Original Complaint, Defendant Property 180 is an account at Virtual Currency Exchange 12 and bears or bore the User ID, 2319627.  ECF No. 1 at 46.

transferred through a network of intermediary wallet addresses from **Defendant Property 179** to **Defendant Property 180.**

139. As alleged in the Original Complaint, **Defendant Properties 179** and **180** both used Virtual Currency Exchange 12 ("VCE 12"), and together conspired to launder monetary instruments and violate MSB registration requirements for the benefit of Hamas and the al-Qassam Brigades, as alleged in the Original Complaint and in the Gebhart Affidavit.

140. As the Government has confirmed, **Defendant Property 180** is an asset of Hamas's al-Qassam Brigades, a designated foreign terrorist organization. See e.g., Government's Motion to Stay, ECF No. 16 at 1; see also Gebhart Affidavit, ECF No. 16-1. The Government also confirmed that Karatas used Defendant Property 180 to launder monetary instruments to provide material support to a designated foreign terrorist organization (Hamas) in violation of 18 U.S.C. § 2339B and the operation of an unlicensed money transmitting business in violation of 18 U.S.C. § 1960. *Id*.

141. Karataş admitted in a signed affidavit that he operated a cryptocurrency exchange from **Defendant Property 180**. Financial records and Blockchain analysis confirm this fact. These records and analysis also reveal that **Defendant Property 180** relied on the U.S. financial system to operate this exchange business, without the requisite FinCEN registration.

142. The Gebhart Affidavit confirms that between in or about October 2017 and in or about August 2019, Karatas and Akti accessed the U.S. financial system and both knowingly operated an unlicensed money transmitting business and conspired to launder monetary instruments utilizing cryptocurrency accounts based at a single virtual currency exchange believed to be VCE 12.

143. Specifically, in addition to the cryptocurrency received from Akti, **Defendant Property 180** received cryptocurrency and U.S. dollar wires valued at approximately $2.1 million dollars between April 2019 and July 2019. During this same four-month period, **Defendant Property 180** withdrew

cryptocurrency valued at approximately $2.3 million dollars, transferring this cryptocurrency to approximately 17 unique wallet addresses.

144. One of Karataş's customers transacted within a U.S.-based virtual currency exchange. In total, this customer received approximately $19,290 USD from **Defendant Property 180**. Notably, this same customer and account had previously transacted with Akti a **Defendant Property 179** in the amount of 2 BTC.

145. **Defendant Property 179** and **Defendant Property 180** shared a number of other customers. Among their shared customers was Deniz Royal, which sent U.S. dollar wires, totaling approximately $82.8 million dollars and $500,000 respectively, to **Defendant Property 179** and **Defendan Property 180**.

146. **Defendant Property 179** and **Defendant Property 180** also shared common IP addresses and log in identifiers. Further linking the accounts and their owners: **Defendant Property 179** and **Defendant Property 180** were both logged into within minutes of each other using a mobile device utilizing the same IP address, operating system version, and internet browser version between May 2019 and August 2019. One of these IP addresses, 78.180.183.249 was the primary IP address utilized to access both accounts.

147. Notwithstanding their shared customers, IP address, the transfer of substantial assets from Akti to Karatas and the timing of the transfers, Karatas denied that he and Akti were business partners or were otherwise related. He claimed that he had given Akti money to purchase cryptocurrency on his behalf. However, Karatas claimed to have no documentation, receipts, agreements, or bank statements substantiating his explanation for the transfer of Akti's cryptocurrency assets to Karatas's **Defendant Property 180**.

148. **Defendant Property 179** and **Defendant Property 180** were also involved in a

conspiracy to launder and the laundering of monetary instruments intended to promote the carrying on of a specified unlawful activity, that is, operating an unlicensed money transmitting business, violations of 18 U.S.C. § 1960.

## COUNT ONE
## CROSSCLAIM FOR TURNOVER AGAINST KARATAS

1. The Weinstock Claimants incorporate by reference their responses to Plaintiff's allegations set forth above, and their own allegations set forth above, as if fully set forth herein.

2. Karatas has in his possession, custody or control assets of Hamas subject to turnover to the Weinstock Claimants in satisfaction of their Judgment, including without limitation Defendant Property 180.

3. To the extent that any Hamas assets in Karatas' possession, custody or control are blocked they are subject to turnover to the Weinstock Claimants in satisfaction of their Judgment pursuant to TRIA § 201(a).

4. To the extent that the Hamas assets in Karatas' possession, custody or control, whether blocked or not blocked, are the subject of the Plaintiff's forfeiture action and/or any restraints or encumbrances issued pursuant thereto, they are nonetheless subject to turnover to the Weinstock Claimants in satisfaction of their Judgment because Plaintiff's forfeiture action must be dismissed on the merits and/or pursuant to the Weinstock Claimants' affirmative defense.

5. To the extent that any blocked Hamas assets in Karatas' possession, custody or control are the subject of the Plaintiff's forfeiture action and/or any restraints or encumbrances issued pursuant thereto, they are nonetheless subject to turnover to the Weinstock Claimants in satisfaction of their Judgment because TRIA § 201(a) permits enforcement of the Judgment "[n]otwithstanding

any other provision of law" and therefore overrides Plaintiff's forfeiture action and/or any restraints or encumbrances issued pursuant thereto.

## COUNT TWO
## COUNTERCLAIM FOR TURNOVER AGAINST THE UNITED STATES

6. The Weinstock Claimants incorporate by reference their responses to Plaintiff's allegations set forth above, and their own allegations set forth above, as if fully set forth herein.

7. Though the Amended Verified Complaint is vague on this point, the United States may currently have in its possession, custody or control assets of Hamas subject to turnover to the Weinstock Claimants in satisfaction of their Judgment, including without limitation Defendant Property 180 and other Defendant Properties described in the Amended Verified Complaint.

8. If the United States prevails on its forfeiture action, the United States will have in its possession, custody or control assets of Hamas subject to turnover to the Weinstock Claimants in satisfaction of their Judgment, including without limitation Defendant Property 180 and other Defendant Properties described in the Amended Verified Complaint.

9. The assets of Hamas currently in the United States' possession, custody or control, or that come into the United States' possession, custody or control as a result of the forfeiture actions, are subject to turnover to the Weinstock Claimants in satisfaction of their Judgment because (i) the United States waived its sovereign immunity by initiating this action; (ii) any assets restrained or encumbered by the United States but not held by the United States Treasury or in a bank account titled to the United States are not protected from execution by the United States' sovereign immunity; and/or (iii) the "notwithstanding" provision of § 201(a) overrides the United States' sovereign immunity.

10. If the forfeiture action is dismissed, the assets of Hamas currently in the United States' possession, custody or control, or that come into the United States' possession, custody or control
18

during the course of the forfeiture action, will be subject to turnover to the Weinstock Claimants in satisfaction of their Judgment as garden-variety assets of Hamas.

**WHEREFORE**, the Weinstock Claimants pray for a judgment:

a. **ORDERING** Karatas to turnover to the Weinstock Claimants forthwith any and all assets of Hamas in his possession, custody or control;

b. **ORDERING** the United States to turnover to the Weinstock Claimants forthwith any and all assets of Hamas in its possession, custody or control;

c. If necessary to grant the relief described in (a) and (b) above, **DISMISSING** the United States' forfeiture action on the merits or on the basis of the Weinstock Claimants' affirmative defense; and

d. **GRANTING** such other relief as the Court deems just and proper.

Dated: December 8, 2024                                     Respectfully submitted,

By: /s/ Asher Perlin
Asher Perlin
LAW OFFICE OF ASHER PERLIN
Bar I.D. FL0006
4600 Sheridan Street, Suite 303
Hollywood, Florida 33021
786-687-0404
asher@asherperlin.com

*Counsel for the Weinstock Claimants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed on December 8, 2024, on the Court's CM/ECF system which will send a notice of electronic filing to counsel of record for all parties.

By: /s/ Asher Perlin

Asher Perlin
LAW OFFICE OF ASHER PERLIN
Bar I.D. FL0006
4600 Sheridan Street, Suite 303
Hollywood, Florida 33021
786-687-0404
asher@asherperlin.com

*Counsel for the Weinstock Claimants*