UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>   v.<br><br>FIFTY-THREE VIRTUAL CURRENCY<br>ACCOUNTS, et al.,<br><br>       Defendants in rem,<br><br>HUSAMETTIN KARATAS,<br><br>       Claimant,<br><br>   - and -<br><br>SHARON BETH WEINSTOCK, et al.,<br><br>       Claimants. | Civil Action No. 20-2227 (RC) |

**UNITED STATES' RENEWED MOTION TO STRIKE WEINSTOCK CLAIMANTS'
CLAIM AND ANSWER AND TO DISMISS THEIR COUNTERCLAIM AGAINST
THE UNITED STATES AND OPPOSITION TO THE WEINSTOCK CLAIMANTS'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ........................................................................................................ 3

ARGUMENT ............................................................................................................. 4

I.    The Court Should Strike the Weinstock Claimants' Claim and Answer Because
      They Lack Standing. ....................................................................................... 5

      A.    A Claimant Must Have Constitutional and Statutory Standing to
            Participate in a Civil Forfeiture Action........................................................ 5

      B.    The Weinstock Claimants Lack Standing to Participate in This Action
            Because They Have No Specific Property or Ownership Interest in the
            Defendant Properties. ................................................................................... 7

      C.    The Weinstock Claimants Have Alternative Routes to Pursue a Portion
            of the Defendant Properties. ...................................................................... 10

II.   The Weinstock Claimants' Counterclaim Against the United States Should Be
      Dismissed........................................................................................................ 12

      A.    Because the Weinstock Claimants Lack Standing to Assert a Claim in
            This Action, They Have No Right to Pursue Their Counterclaim ........... 12

      B.    A Claimant in a Forfeiture Action Cannot Bring a Counterclaim
            Against the United States............................................................................ 13

      C.    The United States Has Not Waived Its Sovereign Immunity for the
            Weinstock Claimants' Counterclaim. ........................................................ 14

III.  The Weinstock Claimants' Motion for Summary Judgment Fails. ...................... 17

      A.    The Weinstock Claimants Have a Burden on Their Motion...................... 18

      B.    The Court Enjoys In Rem Jurisdiction Over This Action and In
            Personam Jurisdiction Is Irrelevant........................................................... 19

CONCLUSION......................................................................................................... 21

# TABLE OF AUTHORITIES

## Authorities Chiefly Relied Upon

*Greenbaum v. Islamic Republic of Iran,*
67 F.4th 428 (D.C. Cir. 2023) ............................................................................ 2, 9, 15, 16, 17

*United States v. All Assets Held at Bank Julius Baer & Co.,*
772 F. Supp. 2d 205 (D.D.C. 2011) (Friedman, J.) ....................................................... 8

*United States v. BCCI Holdings (Luxembourg), S.A.,*
46 F.3d 1185 (D.C. Cir. 1995) ................................................................................... 8, 9

*United States v. Fifty-Three Virtual Currency Accts.,*
Civ. A. No. 20-2227 (RC), 2024 WL 4827321 (D.D.C. Nov. 19, 2024) ...................... 1, 5, 6, 7, 9

## Cases

*Alexander v. FBI,*
691 F. Supp. 2d 182 (D.D.C. 2010) ................................................................................ 18

*Block v. North Dakota,*
461 U.S. 273, 287 (1983) ................................................................................................. 15

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) .......................................................................................................... 18

*Cromartie v. District of Columbia,*
479 F. App'x 355 (D.C. Cir. 2012) .................................................................................. 18

*Deaf Smith Cnty. Grain Processors, Inc. v. Glickman,*
162 F.3d 1206 (D.C. Cir. 1998) ...................................................................................... 16

*Kalodner v. Abraham,*
310 F.3d 767 (D.C. Cir. 2002) ........................................................................................ 15

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ............................................................................................................ 6

*Teen. Student Assistance Corp. v. Hood,*
541 U.S. 440 (2004) .......................................................................................................... 19

*United States v. $10,000.00 in U.S. Funds,*
863 F. Supp. 812 (S.D. Il. 1994) ............................................................................... 13, 17

*United States v. $20,193.39 in U.S. Currency,*
16 F.3d 344 (9th Cir. 1994) ............................................................................................ 6, 8

*United States v. $4,480,466.16 in Funds Seized from Bank of Am.*,
942 F.3d 655 (5th Cir. 2019) ................................................................ 14, 17

*United States v. 2,164 Watches, More or Less Bearing a Registered Trademark of Guess?, Inc.*,
366 F.3d 767 (9th Cir. 2004) ........................................................................ 20

*United States v. 2004 Ferrari 360 Modeno*,
544 F. App'x 545 (5th Cir. 2013) ................................................................... 8

*United States v. 51 Pieces of Real Prop. Roswell*,
17 F.3d 1306 (10th Cir. 1994) ...................................................................... 20

*United States v. 8 Luxury Vehicles*,
88 F. Supp. 3d 1332 (M.D. Fla. 2015) ........................................................ 13

*United States v. All Assets Held at Bank Julius Baer & Co.*,
Civ. A. No. 04-0798 (PLF), 2023 WL 5000213 (D.D.C. Aug. 4, 2023) ............ 5, 6, 7

*United States v. All Funds in Acct. No. 747.034/278*,
295 F.3d 23 (D.C. Cir. 2002) ....................................................................... 20

*United States v. All Right, Title & Int. in Real Prop. & Bldgs. Known as 228 Blair Ave.*,
821 F. Supp. 893 (S.D.N.Y. 1993) ............................................................... 17

*United States v. Assorted Computer Equip.*,
Civ. A. No. 03-2356, 2004 WL 784493 (W.D. Tenn. Jan. 9, 2004) ................ 13, 14

*United States v. Emor*,
850 F. Supp. 2d 176 (D.D.C. 2012) (Friedman, J.) ....................................... 11

*United States v. Five Hundred Thousand Dollars*,
730 F.2d 1437 (11th Cir. 1984) ..................................................................... 7

*United States v. McCorkle*,
143 F. Supp. 2d 1311 (M.D. Fla. 2001) ....................................................... 10

*United States v. N.Y. Rayon Importing Co.*,
329 U.S. 654 (1947) .................................................................................... 15

*United States v. Nasri*,
119 F.4th 1172 (9th Cir. 2024) ..................................................................... 19

*United States v. Obaid*,
971 F.3d 1095 (9th Cir. 2020) ................................................................ 19, 20

*United States v. One Hundred Thirty-Three U.S. Postal Serv. Money Orders*,
496 F. App'x 723 (9th Cir. 2012) ................................................................. 10

*United States v. One Lot of U.S. Currency*,
927 F.2d 30 (1st Cir. 1991) ..................................................................................... 13

*United States v. One Parcel of Land, Known as Lot 111-B*,
902 F.2d 1443 (9th Cir. 1990) ..................................................................................... 7

*United States v. One-Sixth Share of James J. Bulger in All Present & Future Proceeds of Mass Millions Lottery Ticket*,
326 F.3d 36 (1st Cir. 2003) ........................................................................... 6, 10, 11

*United States v. PokerStars*,
Civ. A. No. 11-2564, 2012 WL 1659177 (S.D.N.Y. May 9, 2012) ........................... 12

*United States v. Real Prop. Located at Layton*,
Civ. A. No. 07-0006, 2007 WL 2572385 (D. Utah Sept. 5, 2007) ........................... 15

*United States v. Ribadeneira*,
105 F.3d 833 (2d Cir. 1997) ........................................................................................ 8

*United States v. Seventeen Thousand Nine Hundred Dollars in U.S. Currency*,
859 F.3d 1085 (D.C. Cir. 2017) ................................................................................... 6

*Weinstock v. Islamic Republic of Iran*,
Civ. A. No. 17-23272, 2019 WL 1993778 (S.D. Fla. May 6, 2019) ............................ 1

*Zappone v. United States*,
870 F.3d 551 (6th Cir. 2017) ..................................................................................... 14

**Statutes, Regulations, Rules, and Other Authorities**

18 U.S.C. § 981 ............................................................................................... 10, 11

18 U.S.C. § 983 ..................................................................................................... 7

28 C.F.R § 9.4 ...................................................................................................... 10

28 U.S.C. § 1355 ................................................................................................... 20

34 U.S.C. § 20144 ................................................................................................. 11

Fed. R. Civ. P. 12 ................................................................................................... 1

Fed. R. Civ. P. 56 ................................................................................................. 18

Fed. R. Civ. P. 8 ................................................................................................... 14

Fed. R. Civ. P. Supp. R. G ....................................................................... 1, 5, 6, 12

Terrorism Risk Insurance Act of 2002,
Pub. L. No. 107-297, 116 Stat. 2322 (Nov. 26, 2002)................................................. 2, 14, 15, 16

Plaintiff the United States of America ("United States" or "Government") respectfully moves to strike the claim (ECF No. 11, "Weinstock Claim") and answer (ECF No. 75, "Weinstock Am. Answer") filed by Claimants Sharon Beth Weinstock, Moshe Y. Weinstock, Aryeh T. Weinstock, Chaim Mishael Weinstock, Geula B. Weinstock, the Estate of Yitzchak Weinstock, the Estate of Dov Weinstock, the Estate of Simon Dolgin, and the Estate of Shirley Dolgin (collectively, the "Weinstock Claimants") pursuant to Supplemental Rule G(8)(c)(i)(B) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") to the Federal Rules of Civil Procedure ("Rules").  The United States also seeks to dismiss the counterclaim set forth in the Weinstock Claimants' answer under Rules 12(b)(1) and 12(b)(6).  Lastly, the United States respectfully opposes the Weinstock Claimants' motion for summary judgment (ECF No. 76, "Weinstock MSJ").

## PRELIMINARY STATEMENT

The Weinstock Claimants have undoubtedly suffered a profound loss at the hands of the Hamas-Islamic Republic Movement ("Hamas").  As detailed in the opinion accompanying their judgment, Hamas murdered nineteen-year-old Yitzchak Weinstock, a United States citizen, in a terrorist shooting in December 1993 near Jerusalem.  *Weinstock v. Islamic Republic of Iran*, Civ. A. No. 17-23272, 2019 WL 1993778, at *1 (S.D. Fla. May 6, 2019).  And as recent events have demonstrated, Hamas remains a deadly terrorist organization, murdering thousands of civilians in its recent terror campaign in Israel.

As the Court has already ruled, however, this forfeiture action is not the proper place for the Weinstock Claimants to seek recompense for their tragedy.  *United States v. Fifty-Three Virtual Currency Accts.*, Civ. A. No. 20-2227 (RC), 2024 WL 4827321, at *8 (D.D.C. Nov. 19, 2024) ("the Weinstock Claimants do not have a cognizable interest in the Defendant Properties").  To state a viable claim in a civil forfeiture action, a claimant must have a preexisting property interest

in the defendant property. *Id.* at *6. The Weinstock Claimants have no such interests in the Defendant Properties[1] in this action. *Id.* at *7 ("the Weinstock Claimants do not have a cognizable interest in the Defendant Properties"). Instead, they are unsecured creditors of Hamas. *Id.* at *7 ("as unsecured creditors of the Hamas, the Weinstock Claimants do not have standing in this in rem action brought against Defendant Property 180"). That interest is insufficient to confer on them constitutional or statutory standing in this case. *Id.* at *7–8. Accordingly, the Court should strike their claim and answer.

Additionally, the Weinstock Claimants' attempt to assert a counterclaim against the United States is improper and should fail for several reasons. *First*, the Weinstock Claimants' counterclaim fails for the same reason its claim and answer should be stricken—the Weinstock Claimants had no property interest in the Defendant Properties when the United States seized them and filed this action, so they lack standing to participate in this case. *Second*, the Rules do not permit the Weinstock Claimants to assert a counterclaim against the United States in an in rem forfeiture action. *Third*, even if the Weinstock Claimants had standing, the United States has not waived its sovereign immunity to be subject to creditor process or claims regarding assets in its possession that were seized under forfeiture. That was the holding of the D.C. Circuit in *Greenbaum v. Islamic Republic of Iran*, 67 F.4th 428, 431 (D.C. Cir. 2023), where the court affirmed the quashing of writs obtained by terrorist victims against assets seized by the United States under civil forfeiture and held that the Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, 116 Stat. 2322 (Nov. 26, 2002) (codified as amended at 28 U.S.C. § 1610 note) ("TRIA"), did not waive its immunity. Moreover, and contrary to the Weinstock Claimants' assertions, the

---

[1]    Unless otherwise noted, defined terms used herein are intended to have the same meaning as those used in the United States' Amended Complaint (ECF No. 62-1).

United States does not waive its sovereign immunity against creditor process by seeking to forfeit property.  Only Congress can waive the United States' immunity from suit.  As such, the Court should also dismiss the Weinstock Claimants' counterclaim against the United States.

## BACKGROUND

On August 13, 2020, the United States filed this action against the Defendant Properties. Compl. (ECF No. 1).  On November 19, 2024, the Court granted the United States leave to amend its complaint.  Order (ECF No. 73).  In its Amended Complaint, which dropped one property as a defendant, the United States alleges that the owners of the Defendant Properties laundered money and provided material support to Hamas, a designated foreign terrorist organization.  Am. Compl. (ECF No. 62-1) ¶ 2.  The United States' Amended Complaint states two claims of civil forfeiture against the Defendant Properties arising from those allegations.  Am. Compl. (ECF No. 62-1) at 35–36.

On February 16, 2021, the Weinstock Claimants filed their verified claim.  Weinstock Claim (ECF No. 11).  In their claim, the Weinstock Claimants cited their money judgment against Hamas as the basis for their interest in the Defendant Properties.  *Id.* at 2.  Notably, the Weinstock Claimants identified no judgment lien on or other specific property interests in the Defendant Properties arising from their unsecured money judgment against Hamas.  *Id.*  On December 8, 2024, the Weinstock Claimants answered the United States' Amended Complaint.  Weinstock Am. Answer (ECF No. 75).  In their answer, the Weinstock Claimants generally admit the Government's factual allegations but contest the United States' right to forfeit the Defendant Properties.  *See id.*  The Weinstock Claimants also assert an affirmative defense, claiming that because the Court lacks personal jurisdiction over the owners of the Defendant Properties, presumably referring to Hamas.  *Id.* ¶ 104.  Additionally, the Weinstock Claimants assert a counterclaim of "turnover" against the United States and a crossclaims seeking the same from

another former claimant in this suit, Husamettin Karatas. *Id.* at 17–19. As to the claim against the United States, the Weinstock Claimants cite no statute or legal basis for their claim,[2] but they allege that the Defendant Properties "are subject to turnover to the Weinstock Claimants in satisfaction of their Judgment because (i) the United States waived its sovereign immunity by initiating this action; (ii) any assets restrained or encumbered by the United States but not held by the United States Treasury or in a bank account titled to the United States are not protected from execution by the United States' sovereign immunity; and/or (iii) the "notwithstanding" provision of § 201(a) overrides the United States' sovereign immunity." *Id.* ¶ 9.

The same day as answering the United States' Amended Complaint, the Weinstock Claimants filed a motion for summary judgment. Weinstock MSJ (ECF No. 76). In their motion, the Weinstock Claimants contend that this action should be dismissed because the Court lacks "jurisdiction over the res" and lacks "personal jurisdiction over the owners of the res." *Id.* at 2. Specifically, it appears the Weinstock Claimants allege without citation that "some or all of the Defendant Properties are located outside of the United States" and that "all the persons with interests in the Defendant Properties are outside of the United States[,]" which somehow deprives the Court of in rem or in personam jurisdiction in this action. *Id.* at 5.

## ARGUMENT

In short, as the Court has already rule, the Weinstock Claimants lack standing to participate in this forfeiture action because they held no ownership interest in the Defendant Properties when the United States seized those properties and filed this case against them. *Fifty-Three Virtual*

---

[2]    The Weinstock Claimants generally make mention of a creditors bill in the body of their cross and counterclaims, but they cite no statutory or common law basis for their turnover claim in their count against the United States. *Compare* Weinstock Am. Answer (ECF No. 75) at 11, *with id.* at 18–19.

*Currency Accts.*, 2024 WL 4827321, at *8.  Because the Weinstock Claimants lack standing, they have no legal basis to participate in this action whether as a claimant or as a counterclaimant (or cross-claimant).  Even were the Weinstock Claimants to have standing, their counterclaim against the United States should be dismissed because the United States has not waived its sovereign immunity to be subject to creditor process for assets in its possession or custody that it seized under the civil forfeiture laws of the United States.  Moreover, the Supplemental Rules do not permit a party to assert counterclaims against the United States in an in rem forfeiture action.  Lastly, the Weinstock Claimants' summary judgment motion fails because they lack standing, and if they did not, it is legally unsupportable.

I.    **The Court Should Strike the Weinstock Claimants' Claim and Answer Because They Lack Standing.**

    A.    **A Claimant Must Have Constitutional and Statutory Standing to Participate in a Civil Forfeiture Action.**

"In a forfeiture action brought in rem pursuant to a federal statute, at any time before trial, the United States 'may move to strike a claim or answer . . . because the claimant lacks standing.'" *United States v. All Assets Held at Bank Julius Baer & Co.*, Civ. A. No. 04-0798 (PLF), 2023 WL 5000213, at *6 (D.D.C. Aug. 4, 2023) (quoting Fed. R. Civ. P. Supp. R. G(8)(c)(i)(B)); *see also Fifty-Three Virtual Currency Accts.*, 2024 WL 4827321, at *6.  Such a motion may be made as one on the pleadings, one for summary judgment, or one for relief after a hearing, Fed. R. Civ. P. Supp. R. G(8)(c)(ii)(B), and be made "[a]t any time before trial[.]"  Fed. R. Civ. P. Supp. R. G(8)(c)(i).

Here, the United States seeks to strike the claim of the Weinstock Claimants on the face of the claim—a claim being a "responsive pleading" as defined by the Supplemental Rules.  *See* Fed. R. Civ. P. Supp. R. G(5)(a).  A party's claim must, in relevant part, "identify the specific property claimed" and "identify the claimant and state the claimant's interest in the property[.]"  Fed. R.

Civ. P. Supp. R. G(5)(a)(i)(A), (B).  "When the government moves to strike a claim for lack of standing, a claimant has the burden to establish standing by a preponderance of the evidence." *United States v. Seventeen Thousand Nine Hundred Dollars in U.S. Currency*, 859 F.3d 1085, 1089 (D.C. Cir. 2017).  "To prevail, a claimant must meet both Article III and statutory standing requirements.  The term 'statutory standing' relates to a claimant's ability to show that he has satisfied whatever statutory requirements Congress has imposed for contesting a civil forfeiture action in federal court, while 'Article III standing' or 'constitutional standing' relates to the claimant's ability to show that he has a sufficient interest in the property to satisfy the case-or-controversy requirement of Article III of the Constitution."  *Bank Julius Baer*, 2023 WL 5000213, at *7; *see also United States v. One-Sixth Share of James J. Bulger in All Present & Future Proceeds of Mass Millions Lottery Ticket*, 326 F.3d 36, 40 (1st Cir. 2003) ("Standing in such cases has both constitutional and statutory aspects."); *Fifty-Three Virtual Currency Accts.*, 2024 WL 4827321, at *7.

For constitutional standing, "any colorable claim on the property suffices—typically, an ownership or possessory interest[.]" *Seventeen Thousand Nine Hundred Dollars*, 859 F.3d at 1090 (cleaned up).  "[S]tanding must be supported with the manner and degree of evidence required at each successive stage of the litigation." *Id.* (cleaned up; quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)); *Fifty-Three Virtual Currency Accts.*, 2024 WL 4827321, at *7 ("a claimant's constitutional standing turns upon whether the claimant has a sufficient interest in the property to create a case or controversy" (cleaned up)).  "At the pleading stage, a claimant need only allege a colorable interest in the property."  *Seventeen Thousand Nine Hundred Dollars*, 859 F.3d at 1090; *see also United States v. $20,193.39 in U.S. Currency*, 16 F.3d 344, 346 (9th Cir. 1994) ("The claimant in a forfeiture action bears the burden of showing that he owns or has

an interest in the forfeited property."); *United States v. One Parcel of Land, Known as Lot 111-B*, 902 F.2d 1443, 1444 (9th Cir. 1990) (same in substance); *United States v. Five Hundred Thousand Dollars*, 730 F.2d 1437, 1439 (11th Cir. 1984) ("One must claim an ownership or possessory interest in the property seized.  The burden of establishing standing in forfeiture proceedings is on the claimant.") (citation omitted).

Similarly, "[t]he statutory standing requirement is grounded in 18 U.S.C. § 983, which limits intervention in civil forfeiture actions to any person claiming an interest in the seized property who files a claim asserting such person's interest in the property in the manner set forth in the Supplemental Rules."  *Bank Julius Baer*, 2023 WL 5000213, at *8 (citing 18 U.S.C. § 983(a)(4)(A)).  Where claimants contend that they are innocent owners of the defendant property (as the Weinstock Claimants appear to do here), Section 983(d)(6) defines who can sustain a claim. Specifically, Section 983(d)(6)(A) provides that the term "owner" means:

> a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest[.]

18 U.S.C. § 983(d)(6)(A).  To be clear, the statute goes on and specifies that the term "owner" does not include "a person with only a general unsecured interest in, or claim against, the property or estate of another[.]"  18 U.S.C. § 983(d)(6)(B).

**B.     The Weinstock Claimants Lack Standing to Participate in This Action Because They Have No Specific Property or Ownership Interest in the Defendant Properties.**

Even assuming the Defendant Properties are the property of Hamas, the Weinstock Claimants have no specific property interest in the Defendant Properties.  *Fifty-Three Virtual Currency Accts.*, 2024 WL 4827321, at *7 (The Weinstock Claimants "have a general, unsecured interest in the Defendant Properties because of their unfulfilled 2019 Judgment, which is not

sufficient to establish an ownership interest in a specific property[.]").  As such, they lack standing to participate in this civil forfeiture action.

Whether viewed as a constitutional or statutory infirmity, it is well-established that unsecured creditors of the alleged owner of a defendant property lack standing to contest a civil forfeiture of that property.  *See United States v. BCCI Holdings (Luxembourg), S.A.*, 46 F.3d 1185, 1191 (D.C. Cir. 1995) ("We think the government is correct that a general creditor can never have an interest in specific forfeited property[.]"); *$20,193.39 in U.S. Currency*, 16 F.3d at 346 ("federal courts have consistently held that unsecured creditors do not have standing to challenge the civil forfeiture of their debtors' property") (collecting cases); *United States v. 2004 Ferrari 360 Modeno*, 544 F. App'x 545, 546 (5th Cir. 2013) ("Although [claimant] allegedly provided money to [the debtor], which he used to purchase the Ferrari, at most this makes [claimant] an unsecured creditor and is insufficient to afford her standing."); *United States v. Ribadeneira*, 105 F.3d 833, 837 (2d Cir. 1997) ("we hold that Appellants have no specific interest in property greater than that of a general creditor, and thus cannot claim standing to petition to modify an Order of Forfeiture"); *see also United States v. All Assets Held at Bank Julius Baer & Co.*, 772 F. Supp. 2d 205, 212 (D.D.C. 2011) (Friedman, J.) ("While a variety of types of property interests in defendant assets thus may confer standing upon a claimant, the federal courts have consistently held that unsecured creditors do not have standing to challenge the civil forfeiture of their debtors' property." (cleaned up)).   This is because "general creditors cannot claim an interest in any particular asset that makes up the debtor's estate" and, thus, can claim no specific, traceable injury to the disposition of any particular asset.  *$20,193.39 in U.S. Currency*, 16 F.3d at 346; *Ribadeneira*, 105 F.3d at 836 ("petitioners here can point to no particular asset and call it their own").  As the D.C. Circuit has held:

> We think the government is correct that a general creditor can never have an interest in specific forfeited property, no matter what the relative size of his claim vis-a-vis the value of the defendant's post-forfeiture estate. Were it otherwise, the court litigating the forfeiture issue would be converted into a bankruptcy court and would not be able to grant forfeiture to the government until it determined that no general creditor would be unable to satisfy its claim against the defendant. That result appears patently at odds with the statutory scheme, which directs parties without an interest in specific property to seek relief from the Attorney General, not the court adjudging the forfeiture.

*BCCI Holdings*, 46 F.3d at 1191–92.

Here, the Weinstock Claimants are unsecured creditors of Hamas with respect to the Defendant Properties. *Fifty-Three Virtual Currency Accts.*, 2024 WL 4827321, at *7 (The Weinstock Claimants "have a general, unsecured interest in the Defendant Properties because of their unfulfilled 2019 Judgment, which is not sufficient to establish an ownership interest in a specific property[.]"). That is, the Weinstock Claimants do not contend that they recorded their judgment in a manner to establish a judgment lien against the Defendant Properties before they were seized, and the Weinstock Claimants are precluded from attaching the Defendant Properties after their seizure. *Greenbaum*, 67 F.4th at 435 ("federal sovereign immunity prevents the attachment and garnishment of" assets seized under civil forfeiture).

As such, the Weinstock Claimants are unsecured creditors and, thus, lack standing to pursue their claim in this matter. *Fifty-Three Virtual Currency Accts.*, 2024 WL 4827321, at *7 ("The Supplemental Rules limit the exact action that the Weinstock Claimants are seeking to take here by staking a claim to properties to which they lack an ownership or property interest."); *id.* at *8 ("the Weinstock Claimants have not demonstrated how they suffered a redressable injury in this action because they have not established any ownership rights of property interest on the Defendant Properties"); *see also BCCI Holdings*, 46 F.3d at 1191 ("bank depositors, as general creditors, have no interest in the specific accounts to which their deposits might be traced, only in the defendant's estate as a whole—and therefore can have no interest in particular assets forfeited,

as required under both prongs of [the RICO civil forfeiture statute], unless they have already secured a judgment against the debtor and perfected a lien against a particular item"); *United States v. One Hundred Thirty-Three U.S. Postal Serv. Money Orders*, 496 F. App'x 723, 724 (9th Cir. 2012) ("[Claimant] had acquired a judgment in California against one of the people whose assets were subject to civil forfeiture. However, that judgment was not recorded, and the district court properly determined that [the claimant] was an only unsecured creditor at the time of forfeiture and therefore lacked standing."); *One-Sixth Share*, 326 F.3d at 44 ("if [claimants] held a judgment, it would not solve the problem. Even were we to assume that they held a judgment against [the debtor], it would be only a general in personam judgment, not a secured interest against any particular asset that he owned"); *Three Hundred Nine Million Five Hundred Thousand Dollars*, 85 F. Supp. 3d at 116 ("in order for a judgment creditor to stake a colorable interest in defendant property, the creditor must have a perfected lien against that specific property"); *United States v. McCorkle*, 143 F. Supp. 2d 1311, 1319 (M.D. Fla. 2001) ("A general creditor has no 'vested' or 'superior' interest in particular assets forfeited unless he not only has secured a judgment against the debtor, but also has perfected a lien against a particular item.").

### C.    The Weinstock Claimants Have Alternative Routes to Pursue a Portion of the Defendant Properties.

While the Weinstock Claimants lack standing in this action to contest forfeiture, the law affords them two general routes to pursue a recovery from the Executive Branch arising from the Defendant Properties. First, the Weinstock Claimants can file a petition for remission or mitigation with the Justice Department under 18 U.S.C. § 981(d) and 28 C.F.R § 9.4. That is, "[a]lthough the Court may not order restitution to be paid out of forfeited assets, victims may petition the Department of Justice for remission of forfeited assets, and the Attorney General's designee can transfer forfeited assets to victims to satisfy or partially satisfy a restitution order." *United States*

*v. Emor*, 850 F. Supp. 2d 176, 216 (D.D.C. 2012) (Friedman, J.).  Government counsel understands that the Weinstock Claimants have already lodged such a petition with the Justice Department. *See* Weinstock Claimants Petition, attached hereto as Exhibit A.  Second, the Weinstock Claimants can apply to participate in the U.S. Victims of State Sponsored Terrorism Fund.  *See* 34 U.S.C. § 20144.  That Fund "has paid over $3 billion to eligible claimants" and "continues to work diligently to identify matters that qualify for deposit and to accumulate deposits."  U.S. Victims of State Sponsored Terrorism Fund, http://www.usvsst.com/index.php (last visited Mar. 18, 2024).

To be clear, the United States takes no position in this action on whether the Weinstock Claimants would be successful in obtaining recoveries were they to pursue these methods or whether the Defendant Properties qualify for them—these alternative procedures are governed by their own regulatory and statutory requirements.  Rather, the United States notes these procedures here to underscore that there exist potential avenues for relief for the Weinstock Claimants outside this forfeiture case.

In closing, the Weinstock Claimants grief and sorrow is obvious and understandable, and their quest for justice is noble.  But as the First Circuit held in *One-Sixth Share* when affirming the exclusion of a claim of individuals suffering from a similar unimaginable loss:

> The anguish of a parent whose child has been murdered is unending.  Taking the property of the murderer is incomplete recompense, at best, but may provide some sense of justice.  Congress has provided for justice a different way: it has provided that the government, which stands for all the citizens, may take the criminal's property by forfeiture, and it has limited those who may assert competing claims. Courts must adjudicate the laws which Congress enacts.  If [claimants] wish to pursue the matter, they should turn to the executive branch, to which the property was properly forfeit.  *See* 18 U.S.C. § 981(d) ("The Attorney General shall have sole responsibility for disposing of petitions for remission or mitigation with respect to property involved in a judicial forfeiture proceeding.").

*One-Sixth Share*, 326 F.3d at 45.

II.    **The Weinstock Claimants' Counterclaim Against the United States Should Be Dismissed.**

    A.    **Because the Weinstock Claimants Lack Standing to Assert a Claim in This Action, They Have No Right to Pursue Their Counterclaim .**

Because the Court should strike the Weinstock Claimants' answer under Supplemental Rule G(8)(c)(i)(B) for a lack of standing, the Weinstock Claimants have no basis to continue their counterclaim and crossclaim in this action. Indeed, Supplemental Rule G contemplates that the method for a third-party to participate in a civil forfeiture case is by filing a claim and answer. Fed. R. Civ. P. Supp. R. G(5)(a), (b). When those papers are stricken for a lack of standing, there is no procedure for that party to have any further role in a forfeiture action.

The court's holding in *United States v. PokerStars*, Civ. A. No. 11-2564, 2012 WL 1659177, at *4 (S.D.N.Y. May 9, 2012), is instructive. In that case, as here, the United States filed a civil forfeiture case against certain properties. *See id.* at *1. A third-party claimant filed a claim and answer asserting an ownership interest in portions of the defendant property. *Id.* In his answer, the claimant also filed a counterclaim against the Untied States. *Id.* The United States moved to strike the claimant's claim and answer and dismiss the counterclaim. *Id.* The court struck the claimants' claim and answer for a lack of standing, finding that the claimant was a mere unsecured or general creditor of the purported owners of the defendant property. *Id.* at *2–3. Next, the court considered the claimant's counterclaim and dismissed it. In so doing, the court reasoned "[w]hether or not a claimant in a civil forfeiture has the right to file a counterclaim against the government" in any circumstance "there is no question that someone, like [the claimant], who is *not* a claimant in a civil forfeiture action and not otherwise a party to the litigation, has no right to assert a counterclaim." *Id.* at *4 (emphasis in original).

The Court should follow the same reasoning here. Because the Weinstock Claimants' claim and answer should be stricken for a lack of standing, they have no basis for asserting a

counterclaim against the United States (or crossclaim against Karatas) in this action. Of course, the Weinstock Claimants could attempt to assert their purported causes of action in a separate action (were they are able to surpass insurmountable jurisdictional hurdles to their claims, which they cannot). But the Court here should at the threshold dispense with the Weinstock Claimants' counterclaim against the United States (and crossclaim against Karatas) because the Weinstock Claimants have no basis to further participate in this case.

### B. A Claimant in a Forfeiture Action Cannot Bring a Counterclaim Against the United States.

Even if the Weinstock Claimants had a basis to participate in this forfeiture case, the rules governing forfeiture actions do not allow a claimant to bring a counterclaim against the United States. Under the Rules, "[a] counterclaim is an action brought by a defendant against the plaintiff." *United States v. $10,000.00 in U.S. Funds*, 863 F. Supp. 812, 816 (S.D. Il. 1994). But in a civil forfeiture proceeding, a claimant is not a defendant—e.g., in this case the United States asserts no cause of action against the Weinstock Claimants. *Id.* The lone defendants in this case are the Defendant Properties. As such, courts have held that "[c]ounterclaims are generally not allowed by third parties in civil in rem forfeiture proceeding*." United States v. Assorted Computer Equip.*, Civ. A. No. 03-2356, 2004 WL 784493, at *2 (W.D. Tenn. Jan. 9, 2004) (citing *United States v. One Lot of U.S. Currency*, 927 F.2d 30, 34 (1st Cir. 1991) ("Since no civil claim was filed by the government against [the claimant]—indeed, rather than being dragooned into the case as a *defendant*, he intervened as a *claimant*—there was no 'claim' to 'counter.'" (emphasis in original)), and *$10,000.00 in U.S. Funds*, 863 F. Supp. at 816 ("A counterclaim is an action brought by a defendant against the plaintiff. Whatever the claimants' pleading is, it is not properly a counterclaim.")); *see also United States v. 8 Luxury Vehicles*, 88 F. Supp. 3d 1332, 1336 (M.D. Fla. 2015) ("the Court finds counterclaims are not generally permitted by claimants in civil

forfeiture proceedings").  As the court in *Assorted Computer Equipment* explained the majority rule:

> A forfeiture action is in rem, not in personam.  The property, e.g., the computer equipment in this case, is the defendant, not the claimant.  By definition, a counterclaim is a pleading which sets forth a claim that the pleader has against an opposing party arising out of the opposing party's claim against the pleader. Because the government has not asserted a claim against [the claimant], there can be no counterclaim.

*Assorted Computer Equip.*, 2004 WL 784493, at *2 (citations omitted); *see also Zappone v. United States*, 870 F.3d 551, 561 (6th Cir. 2017) ("while the purported owner of the property may intervene in the action, he may not assert counterclaims against the United States"); *but see United States v. $4,480,466.16 in Funds Seized from Bank of Am.*, 942 F.3d 655, 663 (5th Cir. 2019) (declining to adopt First Circuit's reasoning in *One Lot of U.S. Currency*; dismissing claimant's counterclaim on sovereign immunity grounds).  The Court should adopt the majority rule and hold that counterclaims are not permitted against the United States in civil forfeiture actions.

### C. The United States Has Not Waived Its Sovereign Immunity for the Weinstock Claimants' Counterclaim.

In all events, the United States has not waived its sovereign immunity for the Weinstock Claimants' counterclaim, which independently dooms that claim in this suit and in any other.  As noted above, it is not entirely clear the legal basis for the Weinstock Claimants' counterclaim in this case against the United States.  That said, under a most generous reading, the Weinstock Claimants appear to assert a claim for attachment or execution under TRIA, the lone legal authority mentioned in its counterclaim.  Weinstock Am. Answer (ECF No. 75) at 18–19.[3]  But as the D.C.

---

[3]     If the Weinstock Claimants rely on another source of law that purportedly creates a cause of action against the United States and waives the United States' sovereign immunity for such a claim, it is absent from their counterclaim and should not be considered by the Court.  Fed. R. Civ. P. 8(a)(1) (a claim for relief must plead a basis for the court's jurisdiction).

Circuit ruled last year, TRIA does not waive the United States' sovereign immunity for claims of attachment or execution of property seized or arrested under civil forfeiture over which the United States has possession or custody.

"It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Real Prop. Located at Layton*, Civ. A. No. 07-0006, 2007 WL 2572385, at *1 (D. Utah Sept. 5, 2007) (dismissing claimants' counterclaims in civil forfeiture action); *see also Kalodner v. Abraham*, 310 F.3d 767, 769 (D.C. Cir. 2002) (affirming dismissal of claim against the United States as escrowee of funds; "'The basic rule of federal sovereign immunity,' the Supreme Court has explained, 'is that the United States cannot be sued at all without the consent of Congress.'" (quoting *Block v. North Dakota*, 461 U.S. 273, 287 (1983)). "The government need not have an actual interest in the funds in order to invoke the defense." *Kalodner*, 310 F.3d at 769 (citing *United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654 (1947) (federal sovereign immunity precludes award of prejudgment interest based on funds held by the United States but belonging to private parties)).

Applying these principles in *Greenbaum*, the D.C. Circuit concluded that sovereign immunity attaches to claims seeking property in the United States' possession or custody seized or arrested under civil forfeiture. In *Greenbaum*, citing TRIA, terrorist-victim creditors sought to attach and execute upon the proceeds of the sale of certain Iranian-sourced petroleum. 67 F.4th at 430. The D.C. Circuit began "by considering whether federal sovereign immunity applies." *Id.* at 431. It swiftly answered that question in the affirmative. Specifically, it repeated controlling precedents holding that "sovereign immunity bars creditors from attaching or garnishing funds in

the Treasury" and found that attempts to lay claim to assets seized or arrested by the United States under forfeiture "conflict with sovereign immunity[.]" *Id.*

It then turned to the question of whether TRIA waived the United States' sovereign immunity to be subject to claims of attachment or execution by terrorist-victim creditors. *Id.* at 431–35. After conducting a detailed analysis, the court held that it did not. In part, the court rejected the creditors' attempt to rely on TRIA's "notwithstanding any other provision of law" clause as a clear and unmistakable waiver, concluding "referring to 'any other provision of law' would be at best an abstruse way to waive federal sovereign immunity, and the sovereign immunity canon requires clarity." *Id.* at 433.

*Greenbaum*'s holding is controlling and is on all fours with the claim presented here. The Weinstock Claimants seek to hold the United States liable to turn over the Defendant Properties to them under the attachment and execution provisions of TRIA. But the United States enjoys sovereign immunity from such claims and TRIA does not waive that immunity. As such, the Court lacks jurisdiction over the Weinstock Claimants' counterclaim against the United States.

In their Answer, the Weinstock Claimants preview certain arguments to evade this straightforward application of controlling law. *First*, the Weinstock Claimants suggest TRIA's "notwithstanding" clause waives the United States' sovereign immunity. Weinstock Am. Answer (ECF No. 75) at 18. The D.C. Circuit in *Greenbaum* squarely rejected that contention. *See supra*.

*Second*, the Weinstock Claimants argue that "the United States waived its sovereign immunity by initiating this action[.]" Weinstock Am. Answer (ECF No. 75) at 18. Not so. Only Congress can waive the United States' sovereign immunity. *Greenbaum*, 67 F.4th at 431 ("Even when federal sovereign immunity would otherwise apply, the Congress may consent to suit."); *Deaf Smith Cnty. Grain Processors, Inc. v. Glickman*, 162 F.3d 1206, 1210 (D.C. Cir. 1998) ("It

has long been settled that the federal Government may be sued in federal court only if Congress has waived sovereign immunity for the lawsuit."). As such, it is "clearly established that the mere fact that the government is the plaintiff and has brought the forfeiture action does not constitute a waiver of sovereign immunity and authorize the bringing of a counterclaim." *$10,000.00 in U.S. Funds*, 863 F. Supp. at 816 (citing *United States v. All Right, Title & Int. in Real Prop. & Bldgs. Known as 228 Blair Ave.*, 821 F. Supp. 893, 899 (S.D.N.Y. 1993) ("Initiation of a forfeiture action does not constitute a waiver of sovereign immunity.")); *$4,480,466.16 in Funds*, 942 F.3d at 665 ("[Claimant] also argues that the United States waives sovereign immunity simply by 'initiating an in rem proceeding.' Claimant cites no authority supporting that grandiose proposition." (cleaned up)).

*Third*, the Weinstock Claimants posit that "any assets restrained or encumbered by the United States but not held by the United States Treasury or in a bank account titled to the United States are not protected from execution by the United States' sovereign immunity[.]" Weinstock Am. Answer (ECF No. 75) at 18. That too is incorrect as the Weinstock Claimants' counterclaim seeks to compel the United States to act "under compulsion of a 'judgment of condemnation'" and thus they seek "monetary relief against the United States[.]" *Greenbaum*, 67 F.4th at 431. But it is also beside the point—if the United States does not have possession or custody of the funds, it cannot turn them over to the Weinstock Claimants, the purported relief sought by their counterclaim. Accordingly, the Weinstock Claimants can find no waiver of the United States' sovereign immunity for their counterclaim.

## III.    **The Weinstock Claimants' Motion for Summary Judgment Fails.**

The Weinstock Claimants' motion for summary judgment fails at the threshold because they have no standing to participate in this action. *See supra*. But even if they had standing, their summary judgment motion is completely devoid of merit.

### A.    The Weinstock Claimants Have a Burden on Their Motion.

As an initial matter, the Weinstock Claimants are incorrect that they have no burden when they move for summary judgment.  Weinstock MSJ (ECF No. 76) at 4–5.  Under Rule 56(a), a summary judgment movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  That means that it is the Weinstock Claimants' burden to demonstrate an entitlement to summary judgment.  *Cromartie v. District of Columbia*, 479 F. App'x 355, 356 (D.C. Cir. 2012) ("[E]ven where a summary judgment motion is unopposed, it is only properly granted when the movant has met its burden." (quoting *Alexander v. FBI*, 691 F. Supp. 2d 182, 193 (D.D.C. 2010))).  The cases cited by the Weinstock Claimants are not the contrary.  While the Weinstock Claimants accurately quote a passage from *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), noting that "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case," they conveniently skipped over the Supreme Court's observation that

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323.  This matters here because the Weinstock Claimants make no effort whatsoever to cite or direct the Court to the portions of the Amended Complaint on which they rely for their factual assertions.  For example, the Weinstock Claimants argue, "The Amended Complaint indicates that some or all of the Defendant Properties are located outside of the United States—i.e., beyond this Court's "geographic jurisdiction" (*Agudas* at *23)—and that all the persons with interests in the Defendant Properties are outside of the United States."  Weinstock MSJ (ECF No. 76) at 5.  But the Weinstock Claimants fail to cite any portion of the Amended Complaint supporting this

proposition. *See id.* The Weinstock Claimants barebones request for summary judgment is, thus, deficient on its face.[4]

**B.    The Court Enjoys In Rem Jurisdiction Over This Action and In Personam Jurisdiction Is Irrelevant.**

Even were to the Court to entertain the legal merits of the Weinstock Claimants' arguments, they would fail. Fundamentally, the Weinstock Claimants conflate in rem and in personam jurisdiction and confuse what in rem jurisdiction requires.

1.    In Personam Jurisdiction Is Irrelevant to Civil Forfeiture Actions.

Quite simply, the well-recognized minimum contacts test for in personam actions does not extend to in rem actions. *United States v. Nasri*, 119 F.4th 1172, 1176 (9th Cir. 2024) ("we have since expressly recognized that [the] minimum contacts requirement does not extend to in rem actions" (citing *United States v. Obaid*, 971 F.3d 1095, 1105 (9th Cir. 2020) ("the Supreme Court has continued to recognize in rem jurisdiction predicated on presence of the res in civil forfeiture proceedings")). This distinction makes sense because when "the court's jurisdiction is premised on the res, [ ] a nonparticipating [litigant] cannot be subjected to personal liability." *Teen. Student Assistance Corp. v. Hood*, 541 U.S. 440, 448 (2004). In rem jurisdiction allows a court to adjudicate a claim against property without in personam jurisdiction over potential claimants to it. *Id.* at 453 ("jurisdiction over the person is irrelevant if the court has jurisdiction over the property"). Because this suit is a true in rem proceeding (i.e., one brought against property), the Government

---

[4]    Because the Weinstock Claimants identified no facts in their statement of material facts (ECF No. 76-1), the United States has nothing to respond to in any responsive statement. *See* LCvR 7(h)(1).

does not need to establish anyone's minimum contacts with the United States to proceed against the Defendant Properties.[5]

       2.    The Weinstock Claimants Fail to Establish a Lack of In Rem Jurisdiction.

As to in rem jurisdiction, the Weinstock Claimants' arguments fare no better. Typically, the concept of in rem jurisdiction turns on whether a court can execute service of process on the res. *United States v. 51 Pieces of Real Prop. Roswell*, 17 F.3d 1306, 1310 (10th Cir. 1994) ("To obtain jurisdiction over the property, the court must be able to execute service of process on it."). This is because the defendant in a true in rem proceeding such as this one is the res itself, not the res as a substitute for a person. *United States v. Obaid*, 971 F.3d 1095, 1102 (9th Cir. 2020) (in a civil forfeiture action "the res is the subject of the action, not a substitute for the *person* who is the subject of the action" (emphasis in original)). Accordingly, "[j]urisdiction in this sense depends on whether the court has power over the defendant res to enforce a judgment against it. Service of process is the mechanism by which the court acquires this power." *United States v. 2,164 Watches, More or Less Bearing a Registered Trademark of Guess?, Inc.*, 366 F.3d 767, 771 (9th Cir. 2004).

The in rem jurisdiction of civil forfeiture courts also extends to assets that are not in its control. That is, Congress expanded the in rem jurisdiction of this Court to include property located in foreign locales. 28 U.S.C. § 1355(b)(2). Accordingly, when acting under this authority, the lack of the Court's control over the res would not deprive it of in rem jurisdiction. *See United States v. All Funds in Acct. No. 747.034/278*, 295 F.3d 23, 27 (D.C. Cir. 2002) ("It may well be that a forfeiture order of a United States court will not have its full effect until the *res*—the money—is brought within the territory of the United States. . . . But [a foreign nation's] compliance

---

[5]    It is also unclear how the Weinstock Claimants could have standing to assert a personal jurisdiction defense belonging to another (here, presumably Hamas).

and cooperation determines only the effectiveness of the forfeiture orders of the district courts, not their jurisdiction to issue those orders.").

Here, the Weinstock Claimants' entire argument that the Court lacks in rem jurisdiction is premised on the unsupported assertion that "some or all of the Defendant Properties are located outside of the United States[.]" Weinstock MSJ (ECF No. 76) at 5. Even were that true, which the Weinstock Claimants make no effort to substantiate, it is irrelevant. If any of the Defendant Properties are currently outside the United States, the Court's in rem jurisdiction would be undisturbed under the above cited authorities.

## CONCLUSION

For the foregoing reasons, the Court should strike the claim and answer of the Weinstock Claimants, dismiss them and their counterclaim against the United States from this suit, and deny their motion for summary judgment. A proposed order is enclosed herewith.

Dated: May 16, 2025
     Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By: _____/s/ Brian P. Hudak_____
    BRIAN P. HUDAK
    Chief, Civil Division
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2549

*Attorneys for the United States of America*