UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>FIFTY-THREE VIRTUAL CURRENCY ACCOUNTS, et al.,<br><br>　　　　　Defendants in rem,<br><br>HUSAMETTIN KARATAS,<br><br>　　　　　Claimant,<br><br>　- and -<br><br>SHARON BETH WEINSTOCK, et al.,<br><br>　　　　　Claimants. | Civil Action No. 20-2227 (RC) |

**UNITED STATES' REPLY IN FURTHER SUPPORT OF ITS RENEWED MOTION TO STRIKE WEINSTOCK CLAIMANTS' CLAIM AND ANSWER AND TO DISMISS THEIR COUNTERCLAIM AGAINST THE UNITED STATES**

Plaintiff the United States of America respectfully submits this reply in further support of its renewed motion to strike (ECF No. 85, "Renewed Motion") the claim and answer filed by the Weinstock Claimants.[1] In their Opposition (ECF No. 92), the Weinstock Claimants largely fail to meaningfully respond to the points raised in the Government's Renewed Motion, and when they do, their responses are unpersuasive, including in light of the Court's prior decision in this matter. *See United States v. Fifty-Three Virtual Currency Accts.*, Civ. A. No. 20-2227 (RC), 2024 WL

---

[1] Defined terms used herein are intended to have the same meaning as those used in the United States' Renewed Motion.

4827321, at *8 (D.D.C. Nov. 19, 2024). Accordingly, the Court should strike the Weinstock Claimants' claim and answer and dismiss their counterclaim against the United States.

*First*, in its Renewed Motion, the United States explained in depth how the Weinstock Claimants have no standing in this forfeiture action because they have no cognizable interest in the Defendant Properties. Renewed Mot. (ECF No. 85) at 5–11. The only argument offered by the Weinstock Claimants in response is based on a distinguishable out-of-circuit decision, *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607 (7th Cir. 2015). Unlike here, the victim creditors in *R.J. O'Brien* secured a lien on the defendant properties, which was their hook for standing in the case. *See id.* at 614. Here, the Weinstock Claimants have no such lien and, indeed, "the Weinstock Claimants do not have a cognizable interest in the Defendant Properties" as the Court previously ruled. *Fifty-Three Virtual Currency Accts.*, 2024 WL 4827321, at *8. Notably, before the creditors in *R.J. O'Brien* secured their lien, the district court had dismissed their forfeiture claim for a lack of standing. *R.J. O'Brien*, 783 F.3d at 614 (citing *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, Civ. A. No. 11-4175, 2012 WL 1032904, at *5 (N.D. Ill. Mar. 27, 2012) ("The claimants' status as unsecured creditors means that they are outside the zone of interests protected by the forfeiture statute."))). The Weinstock Claimants are in the same position as the *R.J. O'Brien* creditors before they secured their lien— they have no standing in this action.

The Weinstock Claimants also cite an unreported decision from the Second Circuit in support of their argument, *Levin v. Miller*, No. 21-1116, 2022 WL 17574574, at *3 (2d Cir. Dec. 12, 2022). But that decision does not support the Weinstock Claimants. To the contrary, the Second Circuit rejected an argument by terrorist-victim creditors that "TRIA was superior to the Government's forfeiture judgment[.]" *Id.* at *2. In so doing, the court held that TRIA itself did

not afford the creditors statutory standing, and that because the creditors lacked a perfected interest in the defendant property (i.e., a "TRIA turnover order against" the purported owner of the property), the creditors had no standing to contest the forfeiture. *Id.* Consequently, even were *Levin* relevant here, it fails to support the Weinstock Claimants' standing in this action.

*Second*, the Weinstock Claimants wrongly accuse the United States of "bad faith" in noting that victim creditors have other means of collecting for harms inflicted by terrorist parties. Opp'n (ECF No. 92) at 2-3. For example, the Weinstock Claimants contend that the U.S. Victims of State Sponsored Terrorism Fund provides them no avenue for relief because they have a judgment against Hamas, not Iran or another "foreign state." *Id.* But the Weinstock Claimants have a judgment against Iran. *See* Judgment, *Weinstock v. Islamic Republic of Iran*, Civ. A. No. 17-23272 (S.D. Fla. May 2, 2019), ECF No. 54. As such, it is unclear how the Government acted in "bad faith" by noting that victims have alternative means to seek compensation when the forfeiture laws of the United States do not afford them relief.

*Third*, ignoring the wealth of authority establishing a majority rule that a claimant may not assert a counterclaim in an in rem forfeiture action (including reported decisions from the First and Sixth Circuits, Renewed Mot. (ECF No. 85) at 13–14), the Weinstock Claimants urge the Court without any discussion whatsoever to adopt the Fifth Circuit's minority rule permitting such a claim. Opp'n (ECF No. 92) at 3 (citing *United States v. $4,480,466.16 in Funds Seized from Bank of Am.*, 942 F.3d 655 (5th Cir. 2019)). As explained in the Government's Renewed Motion, the minority rule runs contrary to the concept of an in rem action. The Government is asserting no claim against the Weinstock Claimants. Instead, it asserts a claim against the Defendant Properties. Accordingly, there is no claim to counter with a competing cause of action—the premise of a counterclaim. Indeed, the Rules recognize this distinction in Rule 13(a)'s definition

of compulsory counterclaim, excepting from its definition a claim brought by a plaintiff in rem that "did not establish personal jurisdiction" over the other party. Fed. R. Civ. P. 13(a)(2)(B).[2]

*Fourth*, even were the Court inclined to adopt the Fifth Circuit's minority rule that a claimant in a forfeiture action may assert a counterclaim against the United States, the Weinstock Claimants' counterclaim here fails because the United States has not waived its sovereign immunity for such a claim. Indeed, while touting the Fifth Circuit's approach in *$4,480,466.16 in Funds* that permits procedurally a claimant to assert a claim, the Weinstock Claimants lose track of the ultimate holding in that case—the claimant's counterclaim failed because the United States had not waived its sovereign immunity. 942 F.3d at 666 ("Because [claimant's] counterclaims sought precisely those kinds of damages [i.e., damages from constitutional torts arising out of a property seizure], we hold its counterclaims are barred by sovereign immunity."). As the United States established in its Renewed Motion, the D.C. Circuit has directly held that TRIA does not waive the United States' sovereign immunity for victim creditor claims. Renewed Mot. (ECF No. 85) at 14–17 (citing *Greenbaum v. Islamic Republic of Iran*, 67 F.4th 428, 430–35 (D.C. Cir. 2023)). In their Opposition, the Weinstock Claimants argue to the contrary but "acknowledge that *Greenbaum* rejected this argument." Opp'n (ECF No. 92) at 4. That ends the Court's inquiry here—the Weinstock Claimants' counterclaim is barred.

*Lastly*, the Weinstock Claimants continue to misunderstand and confuse concepts of in rem and in personam jurisdiction. Opp'n (ECF No. 92) at 5; *see also* Mot. Summ. J. Reply (ECF No. 91) at 2, 4 (arguing that the minimum contacts test of *International Shoe* applies to this in rem statutory forfeiture action). This confusion, however, is now beside the point. The Supreme

---

[2] Notably, Rule 12 also recognizes that the "rules do not expand the right to assert a counterclaim—or to claim a credit—against the United States or a United States officer or agency." Fed. R. Civ. P. 13(d)

Court's recent decision in *Fuld v. Palestine Liberation Organization*, 145 S. Ct. 2090, 2105 (June 20, 2025), dispels any notion that the minimum contacts test of the Fourteenth Amendment discussed in *Shaffer v. Heitner*, 433 U.S. 186 (1977), and *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), applies to this action. In *Fuld*, the Court considered whether a provision of an enactment that deemed certain terrorist organizations to have consented to personal jurisdiction in the United States was constitutional. 145 S. Ct. at 2099. In considering that question, the Court discussed whether its existing personal jurisdiction jurisprudence of "minimum contacts" based on limitations of state sovereignty under the Fourteenth Amendment applied to the "territorial reach of the Federal Government's sovereign power[.]" *Id.* at 2102–05. The Court concluded it did not. Specifically, the Court reasoned:

> [T]o the extent that the Due Process Clauses of the Fourteenth and Fifth Amendments both implicitly limit the jurisdictional authority of courts, they do so with respect to the distinct sovereignties from which those courts derive their authority. Because the State and Federal Governments occupy categorically different sovereign spheres, we decline to import the Fourteenth Amendment minimum contacts standard into the Fifth Amendment. Rather, the Due Process Clause of the Fifth Amendment necessarily permits a more flexible jurisdictional inquiry commensurate with the Federal Government's broader sovereign authority.

*Id.* at 2105. The Court then held that the challenged enactment did not offend any due process limitations of the Fifth Amendment when the enactment was one implicating the United States' foreign affairs power—subjecting terrorist organizations "to liability in U.S. courts as part of a comprehensive legal response to halt, deter, and disrupt acts of international terrorism that threaten the life and limb of American citizens." *Id.* at 2106–07 (citation modified).

The same is easily said for the United States' primary forfeiture claim here. In relevant part, the United States seeks to forfeit the Defendant Properties under 18 U.S.C. § 981(a)(1)(G)(i), which subjects to forfeiture "[a]ll assets, foreign or domestic" of persons who commit a federal crime of terrorism "against the United States, citizens or residents of the United States, or their

property, and all assets, foreign or domestic, affording any person a source of influence over any such entity or organization[.]" *Id.* This statute, as with the enactment in *Fuld*, is plainly an exercise of the United States' foreign affairs and policing powers and designed to hold accountable in U.S. courts those that commit terrorist acts against the United States' interests. Accordingly, the minimum contacts test of *International Shoe*, even were it relevant to an in rem forfeiture proceeding (which it is not, Renewed Mot. (ECF No. 85) at 19–21), has no bearing on this case brought under the United States' sovereign powers "to halt, deter, and disrupt acts of international terrorism that threaten the life and limb of American citizens." 145 S. Ct. at 2017.

## CONCLUSION

For the foregoing reasons, the Court should strike the claim and answer of the Weinstock Claimants and dismiss them and their counterclaim against the United States from this suit.

Dated: July 9, 2025

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:    */s/ Brian P. Hudak*
    BRIAN P. HUDAK, D.C. Bar #90034769
    Chief, Civil Division
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2549

*Attorneys for the United States of America*