**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | |
| v. | : | Civil Action No.:    20-2227 (RC) |
| | : | |
| | : | Re Document Nos.:    76, 85, 87 |
| FIFTY-THREE VIRTUAL CURRENCY | : | |
| ACCOUNTS, *et al.*, | : | |
| | : | |
| Defendants. | : | |

MEMORANDUM OPINION

GRANTING THE UNITED STATES' MOTION TO STRIKE; GRANTING CLAIMANT KARATAS'S
MOTION TO STRIKE; DENYING THE WEINSTOCK CLAIMANTS' MOTION FOR SUMMARY
JUDGMENT

## I.  INTRODUCTION

In this *in rem* forfeiture action, the United States of America ("United States" or the

"Government") filed suit against Defendant Properties[1]—fifty-two virtual accounts, one hundred

and twenty-seven virtual currency properties, five accounts held at a bank, and three internet

domains.  After the Internal Revenue Service—Criminal Investigation's Cyber Crimes Unit

("IRS-CI"), Homeland Security Investigations ("HSI"), and Federal Bureau of Investigation

("FBI") (collectively, the "Government Agencies") investigated online fundraising activities

conducted by the Hamas-Islamic Republic Movement's ("Hamas") military wing, the United

States alleged that individuals associated with the Defendant Properties laundered monetary

instruments, operated unlicensed money transmitting businesses, and provided material support

or resources to Hamas.  Because they allege specific property or ownership interest in the

---

[1] This opinion will assume the definition of Defendant Properties included in the
Amended Complaint.  *See* Am. Compl., Attach. A, ECF No. 62-1.

Defendant Properties, the family members of Yitzchak Weinstock (the "Weinstock Claimants")

now move for summary judgment dismissing the Government's Amended Complaint for lack of

personal jurisdiction.  The Weinstock Claimants argue that they have no burden to prove in the

motion that the Government does not possess personal jurisdiction over the Defendant

Properties, and the Government contends that the Weinstock Claimants' motion for summary

judgement fails because the Weinstock Claimants lack standing to participate in this action.

Additionally, the Government and dismissed Claimant Husamettin Karatas ("Claimant Karatas")

move to strike the answer filed by the Weinstock Claimants and dismiss the claims made against

them by the Weinstock Claimants.  In the motions to strike, both the Government's and Claimant

Karatas's main argument is that the Weinstock Claimants lack standing.  For the foregoing

reasons, the Court grants the United States' motion to strike, grants Claimant Karatas's motion to

strike, and denies the Weinstock Claimants' motion for summary judgment.

## II.  FACTUAL BACKGROUND

The Court assumes knowledge of the factual and legal background, as detailed in its

previous memorandum opinion.  *See* Mem. Op. Den. as Moot Claimant Karatas's Mot. to Stay

Disc., granting Gov't's Mot. to Am./Correct Compl., granting Weinstock Claimants' Mot. for

Leave to File Surreply ("Mem. Op."), ECF No. 74.  A brief overview is provided below.

In December 1993, Yitzchak Weinstock, a United States citizen, was killed in a terrorist

shooting near Jerusalem by Hamas's military wing, the Al-Qassam Brigades.  Weinstock

Claimants' Answer, Cross-cl. Against Claimant Karatas, and Countercl. Against Gov't Am.

Compl. ("Weinstock Claimants' Operative Answer") ¶ 114, ECF No. 75.  On May 17, 2019, a

federal court in Florida issued a final judgment of $78,873,000 in favor of the Weinstock

Claimants—including the estates and family members of Weinstock—and against Hamas.  *Id.*

¶¶ 115–116; *Weinstock v. Islamic Republic of Iran*, No. 17-23272-CIV, 2019 WL 1993778 (S.D.

Fla. May 6, 2019) ("2019 Florida Judgment").  Hamas neither appeared in nor defended that civil

action, and the judgment remains unpaid.  Weinstock Claimants' Verified Claim ("Weinstock

Claimants' Claim") at 2, ECF No. 11.

On August 13, 2020, the Government initiated the instant forfeiture action against the

Defendant Properties.  Am. Compl. at 1, ECF No. 62-1.  Following investigations into the al-

Qassam Brigades' online fundraising, the Government alleged that individuals associated with

these Defendant Properties conspired to launder money (18 U.S.C. § 1956(a)(2)) and provide

material support to Hamas (18 U.S.C. § 2339B).  *Id.* ¶ 2.  On October 7, 2020, Claimant Karatas

asserted ownership of Defendant Property 180, one of the virtual accounts included in the

original suit, denying any knowledge of unlawful activity.  *See* Claimant Karatas's Claim, ECF

No. 5.  He later filed an answer to the original Complaint, maintaining that he did not support

Hamas or use the account unlawfully and is an "innocent owner."  *See* Claimant Karatas's

Answer ¶¶ 1–3, 119, ECF No. 9.  On February 16, 2021, the Weinstock Claimants filed a

verified claim, asserting an interest in the Defendant Properties to satisfy their 2019 Florida

Judgment against Hamas.  Weinstock Claimants' Claim at 2; *see* 2019 Florida Judgment.

In its November 19, 2024 Opinion in this action, this Court found that the Weinstock

Claimants' counterclaim and crossclaim against Claimant Karatas and the Government, *see*

Weinstock Claimants' Answer to Original Compl. ¶¶ 128–151, ECF No. 53, do not create any

lien on the Defendant Properties, as an *in personam* creditor's bill does not, on its own, establish

a lien.  *See* Mem. Op. at 12.  Additionally, after granting the Government leave to file its

Amended Complaint so that it could drop Defendant Property 180 as a defendant, the Court held

that because neither the Government nor the Weinstock Claimants has a valid interest in

Defendant Property 180, ownership of the property reverts to the individual or entity that held title prior to the initiation of this forfeiture action.[2]  *Id*. at 14.  Lastly, the Court ruled that neither the Weinstock Claimants nor Claimant Karatas has standing because they do not maintain any interest in the Defendant Properties.  *Id*. at 14–20.

After the issuance of that opinion, the Weinstock Claimants filed an answer to the Amended Complaint,[3] crossclaims against Claimant Karatas, and a counterclaim against the Government.  *See generally* Weinstock Claimants' Operative Answer.  The Weinstock Claimants also moved for summary judgment, arguing that they "have no burden on this motion" and that "[t]he Government cannot prove personal jurisdiction."  *See* Weinstock Claimants' Mot. Summ. J. ("Weinstock Claimants' Mot.") at 3–5, ECF No. 76.  In response, the Government opposes the Weinstock Claimants' motion and files a renewed motion to strike the Weinstock Claimants' claim and answer and to dismiss their counterclaim against it, arguing that the Weinstock Claimants lack standing in this suit.  *See* Gov't Renewed Mot. to Strike Weinstock Claimants' Claim & Answer & to Dismiss Their Countercl. Against the U.S. & Opp'n to Weinstock Claimants' Mot. for Summ. J. ("Gov't Mot."), ECF No. 85.  Claimant Karatas also opposes the Weinstock Claimants' motion and files a renewed motion to strike their claim and answer and to dismiss their crossclaims against him, also arguing that the Weinstock Claimants

---

[2] Although the Court ruled that Claimant Karatas does not have standing in this action because Defendant Property 180 will no longer be a party in this suit, it declined to decide whether Claimant Karatas is the rightful owner of Defendant Property 180.  *See* Mem. Op. at 14 n.2.

[3] From the original Complaint to the Amended Complaint, the Government revised its pleadings to (1) include only those defendant properties it still believes are subject to forfeiture, and (2) assert only the charges it deems applicable to this action.  *See* ECF No. 62-2 (redline reflecting the removal of Defendant Property 180 as a defendant and the omission of 18 U.S.C. § 1960 as a specified unlawful activity).  Accordingly, the Court finds that the Government's amendments to the Complaint do not affect the Court's standing analysis in its prior Opinion.

lack standing.  *See* H. Karatas's Renewed Mot. to Strike the Weinstock Claimants' Answer & to

Dismiss Their Crosscls. Against H. Karatas & Opp'n to the Weinstock Claimants' Mot. for

Summ. J. ("Claimant Karatas's Mot."), ECF No. 87.  All three of the motions are ripe for the

Court's review.

### III.  LEGAL STANDARD

Civil forfeiture actions are *in rem* proceedings brought against property, not individuals.

However, individuals may intervene to protect their interests in the property.  *See United States*

*v. All Funds in Account Nos. 747.034/278, 747.009/278, & 747.714/278 in Banco Espanol de*

*Credito, Spain*, 295 F.3d 23, 25 (D.C. Cir. 2002).  These actions are governed by 18 U.S.C.

§ 983 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture

Actions ("Supplemental Rules"), a subset of the Federal Rules of Civil Procedure.  *See United*

*States v. All Assets Held at Bank Julius*, 480 F. Supp. 3d 1, 11–12 (D.D.C. 2020); *see also* Fed.

R. Civ. P. Supp. R. A(1)(B).

To contest forfeiture, a claimant must file a verified claim and an answer pursuant to

Supplemental Rule G(5).  *See* Stefan D. Cassella, *Asset Forfeiture Law in the United States*

§ 7–13(a), at 371 (3d ed. 2022); *United States v. 8 Gilcrease Lane*, 641 F. Supp. 2d 1, 4–6

(D.D.C. 2009).  Courts strictly enforce these requirements, which are referred to as "statutory

standing."  *See United States v. All Assets Held at Bank Julius Baer & Co.*, No. 04-cv-0798,

2023 WL 5000213, at *7–8 (D.D.C. Aug. 4, 2023).

Statutory standing requires a claimant to assert an interest in the specific property named

as a defendant.  *See* Supp. R. G(5)(a)(i)(A); 18 U.S.C. § 983(a)(4)(A) ("[A]ny person claiming

an interest in the seized property may file a claim asserting such person's interest in the

property[.]").  A claimant who fails to assert such an interest lacks standing.  *See* Supp.

R. G(8)(c)(i)(B); *United States v. Funds from Prudential Secs.*, 300 F. Supp. 2d 99, 103 (D.D.C.

2004).  "The extent of the interest in the defendant property sufficient to meet this standing

requirement is left to case law."  *United States v. All Assets Held at Bank Julius Baer & Co.*, 772

F. Supp. 2d 191, 198 (D.D.C. 2011) (citation omitted); *see also Funds from Prudential Secs.*,

300 F. Supp. 2d at 103 (stating that a claimant must "demonstrat[e] an interest . . . sufficient to

satisfy the court of his standing").

In addition to statutory standing, a claimant must also demonstrate Article III standing.

*See United States v. $487,825.00 in U.S. Currency*, 484 F.3d 662, 664 (3d Cir. 2007).  This

requires a "colorable claim" to the property, typically through an ownership or possessory

interest, as such an interest creates an injury-in-fact redressable by return of the property.  *See*

*United States v. $17,900.00 in U.S. Currency*, 859 F.3d 1085, 1090 (D.C. Cir. 2017) (quoting

*United States v. Emor*, 785 F.3d 671, 676 (D.C. Cir. 2015)); *United States v. $515,060.42 in U.S.*

*Currency*, 152 F.3d 491, 497 (6th Cir. 1998)).

To establish standing, a claimant must show a facially colorable interest in the defendant

property—such as actual possession, control, title, or a financial stake.  *See United States v. Real*

*Property Located at 475 Martin Lane*, 545 F.3d 1134, 1140 (9th Cir. 2008); *United States v. One*

*Lincoln Navigator*, 328 F.3d 1011, 1013 (8th Cir. 2003).  At the summary judgment stage, the

claimant bears the burden of establishing such an interest by a preponderance of the evidence.

*See United States v. $148,840 in U.S. Currency*, 521 F.3d 1268, 1273 (10th Cir. 2008); Supp.

R. G(8)(c)(ii)(B).  However, the claimant need not definitively prove ownership; it must only

demonstrate a sufficiently colorable claim to establish standing.  *See $148,840*, 521 F.3d at 1273;

*United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 79 (2d Cir. 2002);

*United States v. 116 Emerson St.*, 942 F.2d 74, 78 (1st Cir. 1991).

Ultimately, the purpose of standing in forfeiture cases is to ensure that the government is required to prove the forfeitability of property only when someone with a legitimate interest contests the action. *See $557,933.89*, 287 F.3d at 79. The nature of a claimant's property interest is defined by the law of the jurisdiction, state or nation, where the interest arose. At any time before trial, the United States "may move to strike a claim or answer . . . because the claimant lacks standing." Supp. R. G(8)(c)(i)(B). If appropriate, such a challenge may be resolved "after a hearing or by summary judgment." Supp. R. G(8)(c)(ii)(B).

## IV.  ANALYSIS

At the core of the pending motions is the question of whether the Weinstock Claimants have standing in this action. This determination affects not only their ability to file an answer to the Amended Complaint, but also whether they may assert a counterclaim against the United States or crossclaim against dismissed Claimant Karatas, and whether the Weinstock Claimants' motion for summary judgment is properly before the Court (or if they are even entitled to file such a motion in this proceeding). For the reasons stated below, the Court again holds that the Weinstock Claimants do not have standing in this action because they do not have any interest in the Defendant Properties. Accordingly, the Court grants the Government's and Claimant Karatas's motions to strike the Weinstock Claimants' answer, counterclaim, and crossclaims, and it denies the Weinstock Claimants' motion for summary judgment.

### A.  The Weinstock Claimants' Standing

First, the Court reaffirms its holding from its prior Opinion, *see* Mem. Op. at 14–20, that the Weinstock Claimants lack both constitutional and statutory standing to participate in this civil forfeiture action. The Weinstock Claimants assert a right to the Defendant Properties based solely on its unsatisfied 2019 Florida judgment against Hamas. *See* Weinstock Claimants'

Opp'n to Mots. to Strike Their Claim & Answer & to Dismiss Their Claims ("Weinstock Claimants' Opp'n to Mots. to Strike") at 1–2, ECF No. 92.  However, this claim amounts only to a general unsecured interest, not a specific ownership or lien against the Defendant Properties. *See 8 Gilcrease Lane*, 641 F. Supp. 2d at 5 ("The generalized legal interest movants may have in the assets of [the Defendant Properties] does not equate to the necessary particularized interest in any specific asset of [the Defendant Properties] required for standing.").  No lien was perfected against the Defendant Properties prior to their seizure, and federal sovereign immunity prevents any post-seizure attachment.  *See Greenbaum v. Islamic Republic of Iran*, 67 F.4th 428, 435 (D.C. Cir. 2023) (holding that "federal sovereign immunity prevents the attachment and garnishment of" assets obtained through civil forfeiture).  Accordingly, the Weinstock Claimants' failure to establish a concrete, particularized injury related to the forfeiture of the Defendant Properties means that they lack constitutional standing.  Their property interest, an unsecured interest resulting from the 2019 Florida judgment, has no direct connection to the seized assets in this action, nor would a ruling in their favor redress their harm.  As this Court ruled in its prior Opinion, "the Weinstock Claimants have not demonstrated how they suffered a redressable injury in this action because they have not established any ownership rights of property interest on the Defendant Properties."  *See* Mem. Op. at 19.

The Weinstock Claimants likewise fail to meet the statutory standing requirements.  They have not filed a verified claim asserting a specific property interest, nor do they qualify as "owners" under § 983(d)(6).  As numerous courts have held, unsecured creditors "cannot claim an interest in any particular asset that makes up the debtor's estate," and thus lack standing in forfeiture proceedings.  *See, e.g.*, *United States v. BCCI Holdings (Luxembourg), S.A.*, 46 F.3d 1185, 1191–92 (D.C. Cir. 1995); *United States v. $20,193.39 in U.S. Currency*, 16 F.3d 344, 346

8

(9th Cir. 1994); *United States v. Ribadeneira*, 105 F.3d 833, 836–37 (2d Cir. 1997).

"[U]nsecured creditors do not have standing to challenge the civil forfeiture of their debtors'

property." *All Assets Held at Bank Julius Baer & Co.*, 772 F. Supp. 2d at 198 (quoting *United

States v. One–Sixth Share*, 326 F.3d 36, 44 (1st Cir. 2003)).  The Weinstock Claimants have not

shown any perfected lien, nor have they demonstrated a legally recognized interest in the

Defendant Properties.  Thus, they lack both constitutional and statutory standing in this action.

The Weinstock Claimants argue that other courts have ruled that judgment creditors who

file a timely claim have constitutional and statutory standing to contest the Government's

forfeiture action under § 201 of the Terrorism Risk Insurance Act ("TRIA").  *See* Weinstock

Claimants' Opp'n to Mots. to Strike at 1–2.  However, the Weinstock Claimants' reliance on

*Levin v. Miller*, No. 21-cv-1116, 2022 WL 17574574 (2d Cir. Dec. 12, 2022) does not support

their standing in this case.  In *Levin*, the Second Circuit rejected a similar argument from

terrorist-victim creditors, finding that the TRIA did not confer standing on creditors without a

perfected interest in the property.  2022 WL 17574574, at *2 (rejecting the argument by creditors

that "TRIA was superior to the Government's forfeiture judgment").  The ruling in *Levin*

reinforces the notion that the Weinstock Claimants, who lack a perfected interest in the

Defendant Properties, similarly do not have standing to contest the forfeiture in this action.  *Id*.

(holding that TRIA does not confer statutory standing on its own, and that creditors lacked

standing to contest forfeiture without a perfected interest in the property, such as a TRIA

turnover order).  Thus, and as the Court has concluded here and in its prior Opinion, the

Weinstock Claimants have no standing in this action.

### B. The Weinstock Claimants' Counterclaim and Crossclaims

Because the Court finds that the Weinstock Claimants lack standing in this action, it also

holds that their counterclaim against the United States and crossclaim against dismissed

Claimant Karatas are dismissed because the Weinstock Claimants have no right to pursue them.

A court must strike a claimant's claim and answer if standing is not properly established. *See*

Supp. R. G(8)(c)(i)(B). Without a valid claim and answer, a party has no procedural or

substantive basis to participate in the action at all, let alone to assert affirmative claims against

other parties.

Once a claimant's claim and answer are stricken for lack of standing, as is warranted

here, the claimant is effectively no longer a party to the litigation. *United States v. PokerStars*,

No. 11 Civ. 2564, 2012 WL 1659177, at *4 (S.D.N.Y. May 9, 2012). Consequently,

"someone . . . who is *not* a claimant in a civil forfeiture action and not otherwise a party to the

litigation, has no right to assert a counterclaim." *Id*. The logic is straightforward: without

standing, the Weinstock Claimants do not have a stake in the litigation and thus cannot pursue a

counterclaim or a crossclaim within it. This position aligns with the structure of civil forfeiture

proceedings under Supplemental Rule G, which provides a narrow procedural pathway for third

parties to intervene: by filing a verified claim and an answer under Rule G(5). Once those

documents are invalidated (due to lack of standing or otherwise), the claimants cease to have any

role in the action. Thus, lacking a stake in the Defendant Properties, the Weinstock Claimants

lack a path to assert further claims.

Even if the Weinstock Claimants could establish standing (which they cannot), their

counterclaim against the United States would still be subject to dismissal because claimants in a

forfeiture proceeding are not defendants for purposes of Rule 13 and thus cannot bring

counterclaims. "A counterclaim is an action brought by a defendant against the plaintiff."

*United States v. $10,000.00 in U.S. Funds*, 863 F. Supp. 812, 816 (S.D. Ill. 1994). However, in

civil forfeiture proceedings, the defendant is the property, not the person laying claim to it.

Accordingly, the Weinstock Claimants are not defendants, and the Government has not asserted

any claim against them personally. In the Weinstock Claimants' case in this action, "there was

no 'claim' to 'counter.'" *United States v. One Lot of U.S. Currency*, 927 F.2d 30, 34 (1st Cir.

1991); *see also United States v. 8 Luxury Vehicles*, 88 F. Supp. 3d 1332, 1336 (M.D. Fla. 2015);

*United States v. Assorted Computer Equip.*, No. 03-2356V, 2004 WL 784493, at *2 (W.D. Tenn.

Jan. 9, 2004); *United States v. $43,725.00 in U.S. Currency*, No. CIV.A. 4:08-1373, 2009 WL

347475, at *1 (D.S.C. Feb. 3, 2009). Therefore, under the majority rule in other circuits,

counterclaims are generally impermissible in civil forfeiture actions because the structure of *in*

*rem* litigation precludes the procedural reciprocity required for a counterclaim.

 Assuming that the Weinstock Claimants could validly assert a counterclaim in this

context, such a claim against the United States would nonetheless be barred by sovereign

immunity. The United States, as sovereign, may be sued only where Congress has expressly

waived immunity. *See Mullen v. Bureau of Prisons*, 843 F. Supp. 2d 112, 115 (D.D.C. 2012)

("Under the doctrine of sovereign immunity, the United States is immune from suit unless

Congress has expressly waived the defense of sovereign immunity by statute."); *United States v.*

*Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued

without its consent and that the existence of consent is a prerequisite for jurisdiction."). No such

waiver exists here. Although the Weinstock Claimants appear to rely on TRIA, *see* Weinstock

Claimants' Opp'n to Mots. to Strike at 1–2, the D.C. Circuit has held that TRIA does not waive

the United States' sovereign immunity for claims seeking attachment or execution of assets

11

seized through forfeiture.  *Greenbaum*, 67 F.4th at 430–35 ("TRIA does not, 'standing

alone,' . . . clearly waive federal sovereign immunity.").  Thus, any counterclaim premised on

TRIA is barred by the United States' sovereign immunity.

The Weinstock Claimants' crossclaim against Claimant Karatas also fails because neither

of them are "parties" or "coparties" in this action within the meaning of Federal Rule of Civil

Procedure 13(g).  The crossclaim rule permits such claims only "by one party against a coparty."

*See* Fed. R. Civ. P. 13(g).  But the Weinstock Claimants are not parties to the litigation once their

claim and answer are stricken for lack of standing, and Claimant Karatas is no longer a named

defendant or claimant either once Defendant Property 180 was dropped from the case.  The plain

text of Rule 13(g) must be enforced according to its terms.  Courts have interpreted "party" and

"coparty" narrowly in this context.  *See, e.g.*, *In re Oil Spill by Amoco Cadiz*, 699 F.2d 909, 913

(7th Cir. 1983) ("A Rule 13(g) cross-claim will lie only against an existing defendant."); *see also*

*Seiffer v. Topsy's Int'l, Inc.*, 487 F. Supp. 653, 709 (D. Kan. 1980); *Footlick v. Topstep LLC*, No.

22 CV 6152, 2025 WL 744069, at *2 (N.D. Ill. Mar. 7, 2025).  Claimant Karatas is not a

defendant in this forfeiture case because the Government's Amended Complaint does not name

him as a party and he has not made a claim against any of the properties remaining in this case.

*See generally* Am. Compl.  And without standing, the Weinstock Claimants are similarly outside

the litigation.  Rule 13(g) does not permit "outsiders" to assert crossclaims, and therefore, the

Weinstock Claimants' crossclaim must be dismissed as procedurally defective.

Because the Weinstock Claimants lack standing, they have no right to participate in this

forfeiture action under Supplemental Rule G.  That deficiency alone mandates dismissal of both

their counterclaim against the United States and their crossclaim against Claimant Karatas.

Moreover, the counterclaim also fails due to the absence of a waiver of the United States'

12

sovereign immunity, and the crossclaim is improper under Rule 13(g) because neither the Weinstock Claimants nor Claimant Karatas are proper parties. Accordingly, the Weinstock Claimants' claims must be dismissed as a matter of law.

### C. The Weinstock Claimants' Motion for Summary Judgment

Lastly, the Court concludes that the Weinstock Claimants are not entitled to seek summary judgment in this action, as again, they lack standing. "[Rule G(8)(c)(ii)] directs that a motion to strike a claim or answer be decided before any motion by the claimant to dismiss the action. A claimant who lacks standing is not entitled to challenge the forfeiture on the merits." *All Assets Held at Bank Julius Baer & Co.*, 2023 WL 5000213, at \*18 (quoting Supp. R. G Advisory Committee's Notes (2006)). In this case, because the Weinstock Claimants have failed to demonstrate the requisite standing required to be a party in this forfeiture action, their motion for summary judgment is improper and must be denied.

### V. CONCLUSION

For the foregoing reasons, the United States' Motion to Strike (ECF No. 85) is **GRANTED**, Claimant Karatas's Motion to Strike (ECF No. 87) is **GRANTED**, and the Weinstock Claimants' Motion for Summary Judgment (ECF No. 76) is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 25, 2025                                  RUDOLPH CONTRERAS
                                                           United States District Judge