UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

UNITED STATES OF AMERICA,

          Plaintiff,

    v.

FIFTY-THREE VIRTUAL CURRENCY
ACCOUNTS, *et al.*,

          Defendants.

Civil Action No. 1:20-cv-02227-RC

---

### **(CORRECTED) MOTION FOR RECONSIDERATION**

The Weinstocks Claimants respectfully move for reconsideration of the orders and opinions dated September 25, 2025 (referred to herein as the "2025 Decision" or "Mem. Op.") and November 19, 2024 (the "2024 Decision") striking their Counterclaim and Crossclaim and denying their Motion for Summary Judgment.

On September 25, 2025, the Court entered an order and memorandum opinion holding that under the civil forfeiture statute, the Weinstocks lack both Article III and statutory standing to enforce their judgment from the assets at issue in this case under the Terrorism Risk Insurance Act ("TRIA") (ECF 95-96). The very next day, September 26, 2025, the D.C. Circuit issued an opinion holding that TRIA prevails over the civil forfeiture statute and permits enforcement of terrorism judgments from assets at issue in civil forfeiture proceedings. *See Levin v. Wells Fargo Bank, N.A.*, ___ F.4th ____, 2025 WL 2737588, at *8 n.1 (D.C. Cir. Sept. 26, 2025) ("*Levin II*"). The D.C. Circuit's holding in *Levin II* upends entirely the basis for this Court's September 25, 2025 and November 19, 2024 opinions and requires reversal the accompanying orders.

Additionally, the D.C. Circuit's decision in *Levin* aligns with the Seventh Circuit's decision in *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607 (7th Cir. 2015). *R.J. O'Brien* explicitly holds that judgment creditors seeking to enforce under TRIA have **both** constitutional and statutory standing to seek turnover within the context of a forfeiture proceeding. *Id*. at 616-622. The Weinstocks relied heavily on *R.J. O'Brien* in their oppositions to the motions to strike. However, in granting the motions to strike and denying the Weinstocks' Motion for Summary Judgment, the Court appears to have overlooked that authority[1].

As discussed below, under the D.C. Circuit's recent decision in *Levin* II and as supported by the holdings of the Seventh and Second Circuits in *R.J. O'Brien* and *Levin v. Miller*, No. 21-1116, 2022 WL 17574574 (2d Cir. Dec. 12, 2022) (*Levin I*), respectively, the Weinstocks have both Article III and statutory standing, and the Court should reconsider and reverse its contrary rulings and orders.

## Standard of Review

District courts have discretion in ruling on motions for reconsideration. *Messina v. Krakower*, 439 F.3d 755 (D.C. Cir. 2006). However, reconsideration may be granted where "the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id. citing, Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (quoting *Nat'l Trust v. Dep't of State*, 834 F. Supp. 453, 455 (D.D.C. 1993)); *see also,* 11 Fed. Prac. & Proc. Civ. § 2810.1 (noting that "four basic

---

[1] "[D]istrict courts, like the circuits, should give most respectful consideration to the decisions of the other courts of appeals and follow them whenever they can, bearing in mind the interest in maintaining a reasonable uniformity of federal law." *Horn v. United States Department of the Army*, 284 F.Supp.2d 1, 9 (D.D.C. 2003) (cleaned up) (emphasis added).

grounds" for a Rule 59(e) motion are "manifest errors of law or fact," "newly discovered or previously unavailable evidence," "to prevent manifest injustice," and "intervening change in controlling law"). The D.C. Circuit's decision in *Levin II* created an intervening change in controlling law in that prior to that decision, the Court of Appeals had not directly addressed the questions presented herein. Additionally, the Court overlooked the Seventh Circuit's decision in *R.J. O'Brien* and the actual holding of the Second Circuit in *Levin I*. The failure to follow the holdings of two federal courts or appeal constitutes clear error that should now be corrected.

## Background

On May 17, 2019, the United States District Court for the District of Florida found that Hamas was liable under the Anti-Terrorism Act, 18 U.S.C. § 2333, for the terrorist murder of Yitzchak Weinstock, a 19-year old United States citizen. *Weinstock v. Islamic Republic of Iran*, No. 17-23272-CIV, 2019 WL 1993778 (S.D. Fla. May 6, 2019) ("2019 Florida Judgment"). The Court awarded his estate, his family members, and estates of now-deceased family members (the "Weinstocks") damages in the total amount of $78,873,000.

On December 17, 2020, the government posted a Notice of Forfeiture Action ("Notice") online. The Notice pertained to the Defendant Properties that were identified in the government's forfeiture complaint herein. On February 16, 2021, the Weinstocks filed a timely verified claim in this action. ECF No. 11.

Beginning in April 2021, the government sought numerous stays in this action to enable it to conduct its investigation pursuant to a related criminal case it had filed against Claimant Husamettin Karatas ("Karatas") and another defendant. See Government's Motion to Stay, ECF 16. The government alleged that Karatas and his criminal co-defendant, Mehmet Atki had conspired to use Defendant Properties 179 and 180 to launder money and to provide unlicensed financial

3

services to Hamas. *Id*. at 3, 12. The government charged that Karatas and Atki used Defendant Properties 179 and 180 to help Hamas cash-out illegal donations made to the terrorist organization in cryptocurrency. *Id*. at 7. In support of its allegations that Karatas and Atki participated in the Hamas financing conspiracy, the government filed a copy of the Affidavit signed by Special Agent, Jonathan Gebhart. ECF No. 16-1.

While the stay was in effect, the Weinstocks registered the Florida Judgment in this district pursuant to 28 U.S.C. § 1963. *Weinstock v. Islamic Republic of Iran, et al*. 23-mc-00050 (D.D.C.). Thus, the Florida Judgment thus has "the same effect as a judgment of" this Court, and "may be enforced in like manner." 28 U.S.C. § 1963. Pursuant to Fed. R. Civ. P. 69(a)(1), District of Columbia law governs proceedings to enforce the Judgment. *Bayani v. Islamic Republic of Iran*, 2021 WL 6805390, at *1 (D.D.C. Mar. 31, 2021) ("Pursuant to Federal Rule of Civil Procedure 69(a)(1), 'the procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located.' Fed. R. Civ. P. 69(a)(1)." (cleaned up).

The stay remained in place until December 4, 2023. See Minute Order dated November 14, 2023. The Court then entered a scheduling order directing the Weinstocks to file their answer including any counterclaims and crossclaims and allowing the parties to brief the government's and Karatas's dispositive motions. Minute Order dated December 6, 2023.

On February 15, 2024, the Weinstock Claimants filed their Answer to the Government's Complaint, in which they asserted counterclaims and crossclaims in the form of a creditor's bill to enforce the Florida Judgment. ECF No. 53. Under District of Columbia law (applicable here pursuant to Rule 69(a)(1)) the filing of a creditor's bill creates a lien on the assets sought. *Arlington Brewing v. Wyvill*, 35 App. D.C. 589, 593 (D.C. Cir. 1910); *Weightman v. Washington Critic*, 4

App. D.C. 136, 143 (D.C. Cir. 1894). In their creditor's bill the Weinstocks sought turnover of all Defendant Properties described in the government's complaint.

The Weinstock Claimants' Answer also asserted, as an Affirmative Defense, that the Court lacks personal jurisdiction over the *res* and the owners of the *res* that are the subjects of the Government's forfeiture Complaint (*Id*. at ¶¶ 119-127).

The government moved to strike the Weinstocks' Answer and Counterclaim for lack of Standing. ECF No. 56. Similarly, Karatas moved to strike the Weinstocks' Answer and Cross-claims arguing that the Weinstocks lacked Article III and statutory standing. ECF No. 55. The Weinstocks moved for summary judgment against the government. ECF No. 59. They argued that government had failed to meet its burden to establish a factual basis for the Court to exercise jurisdiction over the Defendant Properties or Karatas. *Id*.

Before the Weinstocks responded to the motions to strike, the government moved for leave to amend its complaint. ECF No. 61, 62. However, rather than merely seeking to amend the complaint, the government also slipped into the penultimate sentence of its motion a request "to return Defendant Property 180 to its status quo before it was seized in connection with this action." ECF No. 62 at 6. The Weinstocks objected to the Court allowing the government to release Defendant Property 180 which was subject to the lien created by the Weinstocks' creditor's bill. ECF No. 64.

In its reply memorandum in support of its motion to amend its complaint, the government raised numerous arguments that it had not asserted in its opening motion to amend. Among other things, the government argued that the Weinstocks lacked standing in this proceeding. In a brief surreply, the Weinstocks demonstrated their standing with the Seventh Circuit's thorough decision in *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607 (7th Cir. 2015),

5

which held that judgment creditors seeking to enforce terrorism judgments under TRIA have both constitutional and statutory standing to do so within a forfeiture action. *Id*. at 616-622.

On November 19, 2024, the Court entered an order that resolved several pending motions including the government's motion to amend the complaint, which the Court granted. ECF 74. In resolving the motions, the Court assessed the Weinstocks' standing. Specifically, the Court held that "as unsecured creditors of the Hamas, the Weinstock Claimants do not have standing in this *in rem* action brought against Defendant Property 180, which vitiates the Weinstock Claimants' ability to bring crossclaims against the Defendant Properties themselves." ECF 74 at 18. The Court did not address the Seventh Circuit's holding in *R.J. O'Brien,* 783 F.3d 607, which squarely holds that TRIA provides judgment creditors like the Weinstocks with both statutory and Article III standing. The Court ordered the return of Property 180, but stayed such return for 30 days to allow the Weinstocks to appeal to the D.C. Circuit. Id. at 21.

The Weinstocks filed an Answer to the government's Amended Complaint, which included their counterclaims and crossclaims against the government and Karatas, respectively. ECF No. 75. They also filed a Motion for Summary Judgment directed at the Amended Complaint. ECF No. 76. The Weinstocks then filed a timely notice of appeal. ECF No. 77. But the Court of Appeals found that because this Court had not entered a final order, appellate jurisdiction was lacking. The appeal was dismissed. D.C. Cir. case no. 24-5280, Order dated March 12, 2025.

Upon remand, the government and Karatas filed new motions to strike the Weinstocks' Answer to the Amended Complaint and their Amended Counterclaims and Crossclaims. ECF Nos. 86, 87. They also both opposed the Weinstocks' Motion for Summary Judgment. ECF Nos. 86,

6

88. The Weinstocks filed a Reply in support of their Motion for Summary Judgment, again explaining that the government had failed to submit any evidence establishing the Court's jurisdiction over the assets that are the subject of this proceeding. ECF No. 91.

The Weinstocks also filed a memorandum in opposition to the motions to strike. ECF. No. 92. As they had done previously, the Weinstocks relied upon *R.J. O'Brien* for the proposition that "judgment creditors seeking to enforce under TRIA have both constitutional and statutory standing to do so within a forfeiture action." 783 F.3d at 616-622. The Weinstocks also noted that the Second Circuit has cited *R.J. O'Brien* with approval, and held that a TRIA judgment creditor who (like the Weinstocks) files a timely claim, has standing to "contest[] the Government's forfeiture action." *Levin I* at *3.

## The 2025 Decision

On September 25, 2025, the Court issued its decision granting the government's and Karatas' motions to strike and denying the Weinstocks' Motion for Summary Judgment. ECF No. 96. The Court noted that the government's and Karatas' arguments against summary judgment and in support of striking the Weinstocks' pleadings were based upon the Weinstocks' purported lack of standing. *Id*. at 2 ("both the Government's and Claimant Karatas's main argument is that the Weinstock Claimants lack standing"). The Court agreed and denied the Weinstocks' Motion for Summary Judgment and granted the motions to strike. *Id*.

The Court held that the Weinstocks' asserted right to the Defendant Properties is based upon the Florida Judgment. *Id*. at 7. The Court noted that the Weinstocks' failed to perfect a lien against the Defendant Properties prior to their seizure and that federal sovereign immunity prevents any post-seizure attachment. *Id*. at 8. The Court further held that the Weinstocks' property interest was merely an unsecured interest. And, the Court held that "numerous courts have held, unsecured

creditors cannot claim an interest in any particular asset that makes up the debtor's estate, and thus lack standing in forfeiture proceedings." *Id*. (cleaned up, citations omitted). Accordingly, the Court concluded that the Weinstocks lack both constitutional and statutory standing. *Id*. at 9.

The Court noted the Weinstocks' argument that terrorism judgment creditors have standing under TRIA. But the Court discussed only the Second Circuit's decision in *Levin I*. *Id*. at 9. It did not discuss the Seventh Circuit's decision in *R.J. O'Brien*, which squarely holds "judgment creditors seeking to enforce under TRIA have both constitutional and statutory standing to do so within a forfeiture action." 783 F.3d at 616-622.

Based upon its conclusion that the Weinstocks lack standing, the Court dismissed their counterclaims and crossclaims. *Id*. at 10. And on the same reasoning, the Court denied their Motion for Summary Judgment. *Id*. at 13.

### *Levin v. Wells Fargo* Represents a Change in Controlling Law that Warrants Reconsideration

On September 26, 2025, one day after the Court dismissed the Weinstocks' claims for lack of standing, the D.C. Circuit rejected the argument that the civil forfeiture statute bars enforcement of terrorism judgments under TRIA. *See Levin v. Wells Fargo Bank, N.A.*, ___ F.4th ____, 2025 WL 2737588, at *8 n.1 (D.C. Cir. Sept. 26, 2025). The D.C. Circuit observed that under the civil forfeiture statute property seized by the government "shall not be repleviable, but shall be deemed to be in the custody of the [government], subject only to the orders and decrees of the court or the official having jurisdiction thereof." *Id*. Notwithstanding this language, the Court of Appeals rejected the government's suggestion that the forfeiture statute bars attachments under TRIA. The Court held that because TRIA allows judgment enforcement "[n]otwithstanding any other provision of law," TRIA prevails over the forfeiture statute even where the language of the forfeiture statute explicitly prohibits judgment enforcement.

Thus, while this Court held that unsecured creditors lack standing in forfeiture proceedings [Mem. Op. at 8], *Levin II* holds that TRIA judgment creditors' claims to assets subject to forfeiture not only have standing, but have priority, and can enforce their judgments "notwithstanding any other provision of law." *Levin II* at *8 n.1. Additionally, this Court held that because the Weinstocks failed to perfect a lien against the Defendant Properties prior to their seizure federal sovereign immunity prevented any post-seizure attachment[2]. However, the *Levin* claimants did not perfect a lien against the assets prior to their seizure [*Levin* II at *3]. And nonetheless, the D.C. Circuit reversed the decision of the district court quashing the Levins' writs of attachment. *Levin* II at *9.

The D.C. Circuit's holding in *Levin II* is consistent with the Seventh Circuit's reasoning in *R.J. O'Brien*, which this Court overlooked in its Memorandum Opinion of September 25, 2025. Indeed, as the D.C. Circuit pointed out in *Levin II*, the obstacle to the plaintiffs' enforcement under TRIA in *R.J. O'Brien*, was **not** the forfeiture, but the specific license granted to the government, which placed the assets outside the definition of "blocked assets," and beyond the reach of TRIA. But the D.C. Circuit otherwise agreed with the Seventh Circuit's finding that TRIA judgment creditors have standing to enforce their judgments within a forfeiture proceeding.

Similarly, this Court's 2025 Decision misunderstands the Second Circuit's ruling in *Levin I.* In its decision, this Court found that the Second Circuit rejected the Levins' claims because they lacked a "perfected interest in the property" and that the *Levin I* court held that TRIA judgment creditors did not have priority over the government's forfeiture. Mem. Op, at 9[3]. In fact, the Second

---

[2] In fact, this conclusion was erroneous. The Weinstocks established a lien through their creditor's bill, as explained in their Partial Opposition to the Government's Motion for Leave to Amend (ECF No. 64 at 3-4, 8) and in their Surreply. ECF 68-1 at 5-7.

[3] The Court's citation to *Levin I* appears to reference the district court's ruling as presented by the Second Circuit. See Mem. Op. at 9, citing page *2 of *Levin I*. The ruling of the Second Circuit appears on page *3 of the appellate decision.

9

Circuit held "had the Levins filed a timely claim, they *could* have contested the Government's forfeiture action." *Id*. at *3. Unlike the Levins, and as this Court recognized (Mem. Op. at 3, *citing* Weinstock Claimants' Versified Claim, ECF No. 11), the Weinstocks filed a timely claim at the outset of this proceeding. Thus, the Second Circuit's decision in *Levin I* also recognizes that TRIA judgment creditors have standing to challenge a forfeiture action.

Thus to the extent this Court may not have been bound by the holdings of the Seventh and Second Circuits, the D.C. Circuit's holding in *Levin II* provides controlling authority for the proposition that TRIA judgment creditors like the Weinstocks have constitutional and statutory standing to enforce their judgments in a forfeiture proceeding.

## Conclusion

For the foregoing reasons, this Court's holding that the Weinstocks lack standing and its decisions that flowed from the standing holding should be reconsidered and reversed.

Dated: October 24, 2025

        Respectfully submitted,

        /s/ Asher Perlin
        Asher Perlin
        Bar I.D. FL0006
        LAW OFFICE OF ASHER PERLIN
        4600 Sheridan Street, Suite 303
        Hollywood, Florida 33021
        (786) 687-0404
        asher@asherperlin.com

        *Counsel for the Weinstock Claimants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed on October 24, 2025, on the Court's CM/ECF system which will send a notice of electronic filing to counsel of record for all parties.

By: /s/ Asher Perlin

Asher Perlin
LAW OFFICE OF ASHER PERLIN
Bar I.D. FL0006
4600 Sheridan Street, Suite 303
Hollywood, Florida 33021
786-687-0404
asher@asherperlin.com

*Counsel for the Weinstock Claimants*