UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>FIFTY-THREE VIRTUAL CURRENCY ACCOUNTS, et al.,<br><br>　　　　　Defendants in rem,<br><br>HUSAMETTIN KARATAS,<br><br>　　　　　Claimant,<br><br>　- and -<br><br>SHARON BETH WEINSTOCK, et al.,<br><br>　　　　　Claimants. | Civil Action No. 20-2227 (RC) |

**UNITED STATES' OPPOSITION TO THE WEINSTOCK CLAIMANTS'
<u>MOTION FOR RECONSIDERATION</u>**

Plaintiff the United States of America respectfully submits this opposition to the motion for reconsideration (ECF No. 99, "Mot. Recon.") filed by Claimants Sharon Beth Weinstock, Moshe Y. Weinstock, Aryeh T. Weinstock, Chaim Mishael Weinstock, Geula B. Weinstock, the Estate of Yitzchak Weinstock, the Estate of Dov Weinstock, the Estate of Simon Dolgin, and the Estate of Shirley Dolgin (collectively, the "Weinstock Claimants"). The Weinstock Claimants argue that the D.C. Circuit's recent holding in *Levin v. Wells Fargo Bank*, N.A., --- F.4th ---, 2025 WL 2737588, at *8 n.1 (D.C. Cir. Sept. 26, 2025) ("*Levin II*"), disrupts the rationale underlying this Court's decision to strike the Weinstock Claimants' claim from this suit. The Weinstock Claimants are incorrect, and the Court should deny their Motion.

## BACKGROUND

On August 13, 2020, the United States filed this action against the Defendant Properties. Compl. (ECF No. 1). On November 19, 2024, the Court granted the United States leave to amend its complaint. Order (ECF No. 73). In its Amended Complaint, which dropped one property as a defendant, the United States alleges that the owners of the Defendant Properties laundered money and provided material support to Hamas, a designated foreign terrorist organization. Am. Compl. (ECF No. 62-1) ¶ 2. The United States' Amended Complaint states two claims of civil forfeiture against the Defendant Properties arising from those allegations. Am. Compl. (ECF No. 62-1) at 35–36.

On February 16, 2021, the Weinstock Claimants filed their verified claim. Weinstock Claim (ECF No. 11). In their claim, the Weinstock Claimants cited their money judgment against Hamas as the basis for their interest in the Defendant Properties. *Id.* at 2. Notably, the Weinstock Claimants identified no judgment lien on or other specific property interests in the Defendant Properties arising from their unsecured money judgment against Hamas. *Id.*

Thereafter, the United States moved to strike the Weinstock Claimants' claim. Mot. Strike (ECF No. 85). In so doing, the United States demonstrated that the Weinstock Claimants lack standing to participate in this forfeiture action because they have no property interest in the Defendant Properties. *See id.* The Weinstock Claimants responded largely by contesting the United States' authority to bring this forfeiture suit and claiming that they need not have any specific interest in the Defendant Properties to have standing because their judgment is one recognized under the Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, 116 Stat. 2322 (Nov. 26, 2002) (codified as amended at 28 U.S.C. § 1610 note) ("TRIA").

On September 25, 2025, the Court granted the United States' motion to strike. Mem. Op. (ECF No. 96). The Court correctly held that as to the Defendant Properties, the Weinstock

Claimants were mere unsecured creditors and, thus, lacked constitutional and statutory standing to participate in this action. *Id.* at 7–9. The Court also rejected the Weinstock Claimants' argument that TRIA itself affords them standing. *Id.* at 9. The Court then went on to dismiss the Weinstock Claimants' counterclaims and crossclaims and deny their motion for summary judgment. *Id.* at 10–13.

Nearly a month later, the Weinstock Claimants filed their motion for reconsideration. Mot. Recon. (ECF No. 99). The Weinstock Claimants argue that the D.C. Circuit's recent decision in *Levin II* somehow supports their standing in this forfeiture action and that the Court overlooked the Weinstock Claimants' reliance on *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607 (7th Cir. 2015).

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 54(b) governs motions for reconsideration in a civil action before the entry of a judgment. *Pinson v. Dep't of Just.*, 396 F. Supp. 3d 66, 76 (D.D.C. 2019) (Contreras, J.) (denying motion for reconsideration). "Motions for reconsideration of interlocutory orders under Rule 54(b) are 'within the discretion of the trial court.'" *Id.* (quoting, among others, *Lemmons v. Georgetown Univ. Hosp.*, 241 F.R.D. 15, 21 (D.D.C. 2007) (Walton, J.) (denying motion for reconsideration)). When deciding whether to consider a motion for reconsideration, courts use the "as justice requires" standard. *Pinson*, 396 F. Supp. 3d at 76.

To satisfy this threshold inquiry, a party must show (i) the Court "patently misunderstood a party," (ii) the Court "made a decision outside the adversarial issues presented[,] (iii) the Court "made an error not of reasoning but of apprehension[,]" or (iv) "a controlling or significant change in the law or facts has occurred since the submission of the issue to the Court." *Id.* (quoting, among others, *Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (Lamberth, J.) (refusing to consider reconsideration where party failed to satisfy threshold inquiry)). "But at the

same time, a court's discretion under Rule 54(b) is . . . 'subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 79 F. Supp. 3d 60, 66 (D.D.C. 2015) (Contreras, J.) (denying motion for reconsideration; quoting, among others, *Singh*, 383 F. Supp. 2d at 101); *see also Atlanta Channel, Inc. v. Solomon*, Civ. A. No. 15-1823 (RC), 2020 WL 1984296, at *6 n.3 (D.D.C. Apr. 27, 2020) (refusing to consider reconsideration because party "failed to show that reconsideration is appropriate based on this Court's misunderstanding of their arguments or an intervening change in the law").

Additionally, for a party to succeed in asking a court to expend further judicial resources reviewing a prior decision, a movant "must show 'that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied.'" *Atlanta Channel*, 2020 WL 1984296, at *4 (citing *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 893 F. Supp. 2d 258, 268 (D.D.C. 2012) (refusing to consider motion for reconsideration)). Ultimately, it is movant's burden that to show that a court should entertain a motion for reconsideration. *Westrick*, 893 F. Supp. 2d at 268.

## DISCUSSION

The Weinstock Claimants cite two bases for seeking reconsideration—i.e., the holdings in *Levin II* and *R.J. O'Brien*. Neither disturbs the Court's well-reasoned decision to strike the Weinstock Claimants' claim for a lack of standing.

### I.  *Levin II* Did Not Address, Let Alone Disturb, the Requirements for Demonstrating Standing in a Forfeiture Case.

The Weinstock Claimants reliance on *Levin II* fails to support their request for reconsideration.

In *Levin II*, TRIA creditors sought to attach funds that had been blocked by the Office of Foreign Assets Control ("OFAC") at a U.S. bank as the funds transited through the U.S. financial system. 2025 WL 2737588, at *1. The funds originated from an Iranian front company and were intended to be used to partially fund the purchase of an oil tanker called the *Nautic*. *See Est. of Levin v. Wells Fargo Bank, N.A.*, 45 F.4th 416, 418 (D.C. Cir. 2022). After OFAC blocked the funds, the United States filed a forfeiture action against them and arrested them in-place at the bank without taking possession or custody of them. *Id.* at 418–19. The TRIA creditors in *Levin II* became aware of the funds and the identity of the bank holding them through a Wall Street Journal article and instituted collection proceedings seeking writs of attachment against the funds. *See id.* The United States sought to quash the writs on various grounds, and in the writ proceedings' second trip to the D.C. Circuit, the court addressed two principal questions: (1) does a limited OFAC license merely permitting the government to forfeit otherwise blocked funds "unfreeze" those funds for purposes of TRIA attachment? and (2) does the prior exclusive jurisdiction doctrine prevent TRIA creditors from pursuing writ proceedings against property in the same court where a forfeiture action against the property is pending? The court answered both questions in favor of the TRIA creditors and reversed the district court's order quashing their writs. *Levin II*, 2025 WL 2737588, at *4–8.

The court's holding in *Levin II* has nothing to do with the Court's grounds for striking the Weinstock Claimant's claim here. *Levin II* solely concerned the ability of TRIA creditors to maintain writ proceedings against OFAC blocked funds that are not in the government's possession or custody. It did not arise from a forfeiture case nor purport to disturb the well-settled requirements for claimants to establish standing to pursue a forfeiture claim. As such, *Levin II* at

the outset is completely inapposite to the issues presented in the Court's memorandum opinion in this forfeiture case.

Moreover, unlike the TRIA creditors in *Levin II*, who sought to attach blocked funds that were not in the United States' possession or custody, the Defendant Properties here are very much in the government's custody—the government physically seized them before filing this suit. Mem. Op. (ECF No. 96) at 8; *Fifty-Three Virtual Currency Accts.*, 2024 WL 4827321, at *8. Accordingly, the Weinstock Claimants here stand in the same shoes as the claimants in *Greenbaum v. Islamic Republic of Iran*, 67 F.4th 428, 435 (D.C. Cir. 2023), and sovereign immunity would block any attempt to maintain collection writs (or a so-called "creditor's bill") against the Defendant Properties in this action or any other parallel proceeding. *Id.* ("federal sovereign immunity prevents the attachment and garnishment of" assets seized under civil forfeiture).

Against this straightforward understanding of *Levin II* and the D.C. Circuit's recent precedents in this area, the Weinstock Claimants urge that they have standing in this suit because their underlying judgment is one recognized by TRIA. Mot. Recon. (ECF No. 99) at 8–9. Nothing in *Levin II* supports that conclusion. Indeed, the principal premise of the Weinstock Claimants' request for reconsideration is their contention that "*Levin II* holds that TRIA judgment creditors' claims to assets subject to forfeiture not only have standing, but have priority, and can enforce their judgments 'notwithstanding any other provision of law.'" *Id.* (citing *Levin II*, 2025 WL 2737588, at *8 n.1). But the cited footnote in *Levin II* was nowhere near this expansive. Instead, the court in its footnote merely dispelled the notion that the civil forfeiture statute itself prevents a TRIA creditor from seeking to attach blocked assets during the pendency of a forfeiture case. *Levin II*, 2025 WL 2737588, at *8 n.1 ("if TRIA specifically allows attachments that the civil-forfeiture statute specifically prohibits, TRIA prevails"). It did not mention standing or priority

nor did it purport to abrogate the recent holding in *Greenbaum* that TRIA does not waive the United States' sovereign immunity to collection proceedings for property in its possession or custody.

At bottom, the Weinstock Claimants mistakenly overread *Levin II* as permitting them to participate in this action despite having no specific interest in the Defendant Properties. That was decidedly not the holding of *Levin II*, and the Court's opinion striking the Weinstock Claimants' claim remains well-reasoned and fully consistent with controlling authorities.

**II.     The Parties Extensively Briefed *R.J. O'Brien*, and It Provides No Support for the Weinstock Claimants' Standing in this Forfeiture Action.**

The Weinstock Claimants also seek reconsideration on the theory that the Court ignored the non-controlling holding of the Seventh Circuit in *R.J. O'Brien*, which the Weinstock Claimants believe affords them standing in this action.

As an initial matter, it is unclear how the Weinstock Claimants suggest that the Court ignored their citation of *R.J. O'Brien*. That case, after all, is not controlling on this Court, *see, e.g.*, *District of Columbia v. Am. Excavation Co.*, 64 F. Supp. 19, 20 (D.D.C. 1946) (holdings from other circuits and district courts "are not binding or controlling on this court"), and there is no requirement that a district court cite in its opinion every case identified by a party litigant when resolving a motion.

Moreover, while the Court did not cite *R.J. O'Brien* by name in its opinion, it did address the issue the Weinstock Claimants raised when citing that out-of-circuit decision. Specifically, in opposing the government's motion to strike, the Weinstock Claimants relied on *R.J. O'Brien* and *Levin v. Miller*, No. 21-1116, 2022 WL 17574574, at *3 (2d Cir. Dec. 12, 2022), to argue that a TRIA judgment creditor automatically has standing in a forfeiture suit when they file a claim. Opp'n to Mot. Strike (ECF No. 92) at 2. In its opinion, the Court expressly rejected that argument:

> The Weinstock Claimants argue that other courts have ruled that judgment creditors who file a timely claim have constitutional and statutory standing to contest the Government's forfeiture action under [TRIA] . . . The ruling in *Levin* reinforces the notion that the Weinstock Claimants, who lack a perfected interest in the Defendant Properties, similarly do not have standing to contest the forfeiture in this action. [*Levin*, 2022 WL 17574574, at *2] (holding that TRIA does not confer statutory standing on its own, and that creditors lacked standing to contest forfeiture without a perfected interest in the property, such as a TRIA turnover order).

Mem. Op. (ECF No. 96) at 9. That is, far from ignoring the Weinstock Claimants' argument based on *R.J. O'Brien*, the Court specifically considered and dispensed with it.

But even had the Court failed to consider *R.J. O'Brien* in striking the Weinstock Claimants' claim, and that case was controlling on this Court (which it is not),[1] nothing in *R.J. O'Brien* supports the Weinstock Claimants standing here. Unlike here, the victim creditors in *R.J. O'Brien* secured a lien on the defendant properties, which was their hook for standing in the case. *See id.* at 614. By contrast, the Weinstock Claimants have no such lien and, indeed, "the Weinstock Claimants do not have a cognizable interest in the Defendant Properties[.]" *Fifty-Three Virtual Currency Accts.*, 2024 WL 4827321, at *8. Notably, before the creditors in *R.J. O'Brien* secured their lien, the district court had dismissed their forfeiture claim for a lack of standing. *R.J. O'Brien*, 783 F.3d at 614 (citing *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, Civ. A. No. 11-4175, 2012 WL 1032904, at *5 (N.D. Ill. Mar. 27, 2012) ("The claimants' status as unsecured creditors means that they are outside the zone of interests protected by the forfeiture statute."))). The Weinstock Claimants are in the same position as the *R.J. O'Brien* creditors before

---

[1] It is curious why the Weinstock Claimants continue to press *R.J. O'Brien* when the D.C. Circuit in *Levin II* declined to follow the Seventh Circuit's core holding in the case and adopted the dissent's reasoning. *Levin II*, 2025 WL 2737588, at *6 (citing favorably *R.J. O'Brien*, 783 F.3d at 630 (Manion, J., dissenting in relevant part)). Indeed, the Weinstock Claimants are simply wrong in suggesting that "[t]he D.C. Circuit's holding in *Levin II* is consistent with the Seventh Circuit's reasoning in *R.J. O'Brien*[.]" Mot. Recon. (ECF No. 99) at 9. In *R.J. O'Brien*, the Seventh Circuit held that a forfeiture license operated to unblock assets for purposes of TRIA collection writs, whereas the D.C. Circuit in *Levin II* reached the exact opposition conclusion.

they secured their lien—they have no standing in this action. Nothing in any of the circuit authorities cited by the Weinstock Claimants undermines that conclusion.

## CONCLUSION

For the foregoing reasons, the Court should deny the Weinstock Claimants' motion for reconsideration. A proposed order is enclosed herewith.

Dated: November 8, 2025

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:     */s/ Brian P. Hudak*[2]
BRIAN P. HUDAK, D.C. Bar #90034769
Chief, Civil Division
601 D Street, NW
Washington, DC 20530
(202) 252-2549

*Attorneys for the United States of America*

---

[2] At the end of the day on September 30, 2025, the appropriations funding the Justice Department expired, and the Department's attorneys are generally prohibited from working except in limited circumstances. *See* 31 U.S.C. § 1342. This filing would typically be classified as a non-excepted function. That said, government counsel in this matter is generally excepted from furlough to ensure the continuity of operations of the U.S. Attorney's Office in his role as the Civil Chief of the Office, and he assembled this filing during short intervals between performing excepted functions. Accordingly, the preparation and filing of this opposition is permitted under relevant guidance regarding the ongoing lapse in appropriations. Lastly, this filing is timely as the government's deadline was stayed and extended pursuant to the Court's Standing Order No. 25-55 entered October 1, 2025, which is available on the Court's website.