**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| v. | : | Civil Action No.: 20-2227 (RC) |
| | : | Re Document Nos.: 98, 99 |
| FIFTY-THREE VIRTUAL CURRENCY ACCOUNTS, *et al.*, | : | |
| Defendants. | : | |

# MEMORANDUM OPINION

## DENYING THE WEINSTOCK CLAIMANTS' MOTION FOR RECONSIDERATION

## I. INTRODUCTION

This opinion addresses a motion for reconsideration in this civil forfeiture action. The movants are the family members of Yitzchak Weinstock ("Weinstock Claimants"), a United States citizen killed by Hamas in a terrorist shooting in Jerusalem in 1993. In 2019, a federal court in Florida issued a final judgment of $78,873,000 in their favor and against Hamas, which remains unsatisfied. A year later, the United States filed a complaint seeking the forfeiture of certain properties connected to Hamas—specifically, fifty-two virtual accounts, one hundred and twenty-seven virtual currency properties, five accounts held at a bank, and three internet domains ("Defendant Properties"). The Government alleges that the Defendant Properties are associated with individuals who laundered money and provided material support or resources to Hamas. The Weinstock Claimants then filed a verified claim in this action asserting an interest in the Defendant Properties, against which they hope to execute their unsatisfied 2019 Florida judgment. Next, they filed an answer, counterclaim against the Government, and crossclaim against another claimant, Husamettin Karatas ("Claimant Karatas"). The Government and

Claimant Karatas then moved to strike the Weinstock Claimants' answer, counterclaim, and crossclaim. Their principal argument in these motions was that the Weinstock Claimants lacked standing to assert these claims.

In memorandum opinions issued on November 19, 2024, and September 25, 2025, the Court found that the Weinstock Claimants indeed lacked standing. *See* Nov. 19, 2024, Mem. Op. ("2024 Mem. Op."), ECF No. 74; Sept. 25, 2025, Mem. Op. ("2025 Mem. Op."), ECF No. 96. Accordingly, it granted the Government's and Claimant Karatas's motions to strike and denied the Weinstock Claimants' motion for summary judgment. *See generally* 2025 Mem. Op. The Weinstock Claimants now move for reconsideration of the Court's two prior opinions, arguing primarily that a recent D.C. Circuit opinion—*Est. of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632 (D.C. Cir. 2025)—upends the basis for the Court's rulings. For the reasons below, the Court denies the motion for reconsideration.

## II. BACKGROUND

The Court assumes knowledge of the factual and legal background, as detailed in its prior memorandum opinions. *See* 2024 Mem. Op.; 2025 Mem. Op. As detailed therein, the Court previously found that the Weinstock Claimants lacked constitutional and statutory standing to contest the Government's forfeiture of the Defendant Properties. Specifically, although the Weinstock Claimants asserted a right to the Defendant Properties based on their unsatisfied 2019 Florida judgment against Hamas, this claim amounted only to a general unsecured interest in the Defendant Properties, rather than the specific ownership interest or lien required to establish standing. 2025 Mem. Op. at 8. The Court also rejected the Weinstock Claimants' argument that § 201(a) of the Terrorism Risk Insurance Act ("TRIA"), Pub. L. No. 107-297, 116 Stat. 2322 (2002) (codified at 28 U.S.C. § 1610 note), which permits creditors with terrorism-related

judgments against terrorist parties to attach certain funds connected to those parties and execute their judgments against them, cured the standing defect. *Id*. at 9.

A day after the Court struck the Weinstock Claimants' claims and denied them summary judgment, the D.C. Circuit issued *Estate of Levin*. There, the D.C. Circuit observed in dicta that § 201(a) of the TRIA applies notwithstanding any conflicting provisions in the civil forfeiture statute, 18 U.S.C. § 981. *See Est. of Levin*, 156 F.4th at 643 n.1 ("[I]f TRIA specifically allows attachments that the civil-forfeiture statute specifically prohibits, TRIA prevails."). However, *Estate of Levin* did not touch on the standing requirements in civil forfeiture actions or the TRIA's effect, if any, on them. In the sections below, the Court summarizes the applicable law and then turns to its analysis.

## III. LEGAL STANDARD

### A. Motion for Reconsideration

Motions for reconsideration of interlocutory orders under Rule 54(b) are "within the discretion of the trial court." *Lemmons v. Georgetown Univ. Hosp.*, 241 F.R.D. 15, 21 (D.D.C. 2007) (quoting *Lewis v. United States*, 290 F. Supp. 2d 1, 3 (D.D.C. 2003)). The Court may enter reconsideration "as justice requires." *Id*. (quoting *Jud. Watch v. Dep't of Army*, 466 F. Supp. 2d 112, 123 (D.D.C. 2006)). "Justice may require revision when the Court has 'patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court.'" *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)).

**B. Standing in Civil Forfeiture Actions**

In a civil forfeiture action, the government files suit against property, rather than individuals. *See United States v. All Funds in Acct. Nos. 747.034/278, 747.009/278, & 747.714/278 in Banco Espanol de Credito, Spain*, 295 F.3d 23, 25 (D.C. Cir. 2002). Still, individuals may intervene to protect their interests in that property. *Id*. Civil forfeiture actions are governed by procedures set forth in 18 U.S.C. § 983, as well as by a subset of the Federal Rules of Civil Procedure known as the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"). *United States v. All Assets Held at Bank Julius Baer & Co.*, No. 04-cv-798, 2023 WL 5000213, at *7 (D.D.C. Aug. 4, 2023). "When the government files a complaint for forfeiture, 'any person claiming an interest in the seized property may file a claim asserting such person's interest in the property in the manner set forth in the Supplemental Rules.'" *Id*. (quoting 18 U.S.C. § 983(a)(4)(A)).

If the government moves to strike a claim for lack of standing at the summary judgment stage, the claimant bears the burden of "establishing standing by a preponderance of the evidence." Supplemental Rule G(8)(c)(ii)(B). "To prevail, a claimant must meet both Article III and statutory standing requirements." *All Assets Held at Bank Julius Baer & Co.*, 2023 WL 5000213, at *7 (quoting *United States v. Seventeen Thousand Nine Hundred Dollars ($17,900.00) in United States Currency* ("*$17,900 in U.S. Currency*"), 859 F.3d 1085, 1089 (D.C. Cir. 2017)). Statutory standing "relates to a claimant's ability to show that he has satisfied whatever statutory requirements Congress has imposed for contesting a civil forfeiture action in federal court." *Id.* (citation modified). "To establish statutory standing in a civil forfeiture proceeding, a claimant must adhere to the procedural requirements set forth in the Supplemental Rules." *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.* ("*R.J. O'Brien III*"),

783 F.3d 607, 618 (7th Cir. 2015). Article III standing, meanwhile, "relates to the claimant's ability to show that he has a sufficient interest in the property to satisfy the case-or-controversy requirement of Article III of the Constitution." *All Assets Held at Bank Julius Baer & Co.*, 2023 WL 5000213, at *7 (citation modified). "In general, any colorable claim on the property suffices." *$17,900 in U.S. Currency*, 859 F.3d at 1090 (citation omitted).

## IV. ANALYSIS

The Weinstock Claimants urge the Court to reconsider its prior memorandum opinions striking their claims and denying their motion for summary judgment for lack of standing. *See* ECF Nos. 98, 99. First, they maintain that the D.C. Circuit's opinion in *Estate of Levin* represents a change in controlling law that "upends entirely the basis for this Court's [prior rulings]." Weinstock Claimants' Mot. for Recons. ("Weinstock Claimants' Mot."), ECF No. 99, at 1. Second, they suggest that the Court's prior opinions overlooked the Seventh Circuit's opinion in *R.J. O'Brien III*, 783 F.3d 607. *Id*. at 2. Essentially, the Weinstock Claimants argue that these and other opinions establish that the TRIA grants judgment creditors like themselves constitutional and statutory standing in the context of civil forfeiture actions. *Id.*

Section 201(a) of the TRIA provides, in pertinent part:

> Notwithstanding any other provision of law . . . in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism . . . the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

28 U.S.C. § 1610 note. The Court recognizes that the TRIA provides victims of terrorism a "sweeping mechanism for recovery." *R.J. O'Brien III*, 783 F.3d at 621. Indeed, as the D.C. Circuit declared in *Estate of Levin*, the statute's "notwithstanding any other provision of law" clause operates to supersede conflicting provisions of the civil forfeiture statute that could bar plaintiffs from attaching funds as permitted under the TRIA. 156 F.4th at 643 n.1. However, as explained below, neither *R.J. O'Brien* nor *Estate of Levin* hold that the TRIA excuses plaintiffs from complying with rules of civil forfeiture that are *not* at odds with the TRIA. Because the Weinstock Claimants have not demonstrated an actual conflict between civil forfeiture and the TRIA, the Court declines to reconsider its prior rulings.

**A. *R.J. O'Brien***

In the Weinstock Claimants' view, "*R.J. O'Brien* explicitly holds that judgment creditors seeking to enforce under TRIA have both constitutional and statutory standing to seek turnover within the context of a forfeiture proceeding." Weinstock Claimants' Mot. at 2. However, the Seventh Circuit did not hold in that case that the TRIA alone affords TRIA claimants standing. It held merely that the TRIA superseded certain conflicting standing requirements imposed by the civil forfeiture statute and the Supplemental Rules. *R.J. O'Brien III*, 783 F.3d at 620–21. In any event, this Court did, in fact, address the Weinstock Claimants' TRIA argument. *See* 2025 Mem. Op. at 9. Although the Court did not refer to *R.J. O'Brien* specifically, the Court's reasoning in its prior rulings is consistent with *R.J. O'Brien*.

*R.J. O'Brien* involved funds connected to al Qaeda, which the United States blocked in 2006. 783 F.3d at 612. Although the funds were initially designated as classified, the public learned of their existence in 2011, when the United States filed a civil forfeiture action against

the funds in the Northern District of Illinois. *Id*. at 612–13. Upon learning of this action, groups of insurance companies that had paid billions of dollars in damage claims following the September 11 attacks filed their own verified claims to the funds, citing as their interest a default judgment as to liability they possessed against al Qaeda. *Id.* at 613. The companies then obtained a final money judgment in early 2012. *Id*. Shortly thereafter, however, the Northern District of Illinois struck the companies' verified claims in the civil forfeiture action, finding that the companies were "general unsecured creditor[s]" with respect to the funds and thus lacked statutory and prudential standing to contest civil forfeiture. *Id.* at 613–14. But the companies did not give up. They then served on the U.S. Marshals Service a citation to discover assets, "which, under Illinois law, would create a lien on the [funds] and thus give them an interest in the [funds]." *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.* ("*R.J. O'Brien I*"), No. 11 C 4175, 2012 WL 1032904, at *8 (N.D. Ill. Mar. 27, 2012). Revisiting the case, the district court found that the companies no longer lacked standing because their newly acquired lien established an interest in the funds, as required under the civil forfeiture statute and the Supplemental Rules. *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.* ("*R.J. O'Brien II*"), 892 F. Supp. 2d 1038, 1050–51 (N.D. Ill. 2012). The court also held that the TRIA superseded conflicting provisions of the civil forfeiture statute that could have otherwise prevented the companies from amending their claims to reflect their perfected liens and taking part in the forfeiture proceeding. *Id*. at 1051–52.

On appeal, the Seventh Circuit found that the companies—defending the decision below as appellees—possessed both constitutional and statutory standing. *R.J. O'Brien III*, 783 F.3d at 612. The Seventh Circuit agreed with the district court that the TRIA provided a means for the appellees to participate in the action "notwithstanding the conflicting provisions of civil

forfeiture." *Id*. at 621. For example, the civil forfeiture statute and the Supplemental Rules require a person contesting forfeiture to file a claim that "state[s] the claimant's interest in the property." 18 U.S.C. § 983(a)(2)(C)(ii); *see also* Supplemental Rule G(5)(a)(i)(B). The Seventh Circuit explained that the appellees "missed the mark" there when they first filed their claims because, without a lien secured, "Appellees were nothing more than 'general unsecured creditors.'" *R.J. O'Brien III*, 783 F.3d at 619. Nevertheless, like the district court, the Seventh Circuit found that the TRIA's "notwithstanding" clause trumped procedural hurdles to statutory standing—such as a filing deadline—that could have otherwise barred the appellees from amending their claims once they perfected their liens. *Id*. But ultimately, the Seventh Circuit vacated the decision below. Although the appellees possessed standing, the Seventh Circuit found that they could not execute on the funds at issue pursuant to the TRIA because, in view of an Office of Foreign Assets Control ("OFAC") license permitting the United States to "take all necessary actions" to pursue the funds' civil forfeiture, the funds were no longer "blocked" within the meaning of the TRIA. *Id.* at 622–24; *see also Est. of Heiser v. Islamic Republic of Iran*, 807 F. Supp. 2d 9, 18 n.6 (D.D.C. 2011) ("The TRIA . . . applies only to 'blocked assets.'").

Returning to the case at hand, nothing in *R.J. O'Brien* persuades the Court to reconsider its prior holding that the Weinstock Claimants, as unsecured creditors, lack constitutional and statutory standing to contest the Government's forfeiture action. Independent of the TRIA's effect in this case, the Weinstock Claimants have not perfected a lien against the Defendant Properties, as required to establish standing. *See United States v. Sum of Three Hundred Nine Million Five Hundred Thousand Dollars*, 85 F. Supp. 3d 111, 116 (D.D.C. 2015) ("[I]n order for a judgment creditor to stake a colorable interest in defendant property, the creditor must have a

perfected lien against that specific property."). As this Court previously explained, "D.C. law governs when evaluating the method for creating a judgment lien on a property." Nov. 19, 2024 Mem. Op. at 11. Yet, the Weinstock Claimants have failed to create a judgment lien over the Defendant Properties in accordance with D.C. law. Even in *R.J. O'Brien*, the district court dismissed the companies' claims for lack of standing before they had perfected their liens on the funds at issue there. *R.J. O'Brien I*, 2012 WL 1032904, at *8. The Weinstock Claimants are in the same position now.

Although *R.J. O'Brien* suggests that the TRIA can eliminate conflicting procedural provisions in civil forfeiture that could otherwise halt claimants' efforts to execute on funds as permitted under the TRIA, that opinion does not stand for the proposition that claimants can invoke the TRIA to forgo their obligation under civil forfeiture to "assert[ ] an interest" in a "specific property." Supplemental Rule G(5)(a)(i)(A); *see also* 18 U.S.C. § 983(a)(2)(C)(ii). Again, "[t]he nature of a claimant's property interest is defined by the law of the jurisdiction . . . where the interest arose." 2025 Mem. Op. at 7. Certainly, if the Weinstock Claimants had shown that a specific provision of civil forfeiture or D.C. law barred them from proceeding under the TRIA, this Court would have had to consider whether the TRIA's "notwithstanding" clause overcame that provision. But even then, the Weinstock Claimants would have had to establish an actual conflict between another law and the TRIA. *See R.J. O'Brien II*, 892 F. Supp. 2d at 1051 ("[T]he TRIA effectively supersedes all laws with which it *actually* conflicts." (emphasis added)). In their present motion, the Weinstock Claimants have not convinced the Court that the TRIA excuses them from the obligation to establish an interest in the Defendant Properties by perfecting a lien against them. *Cf. id.* (concluding that the

TRIA's "notwithstanding" clause trumped "barriers that the civil forfeiture statute impose[d] on claimants' efforts to amend" *after* they "established an interest in the defendant funds").

The Court is similarly unconvinced by the Weinstock Claimants' contention that their filing of a timely claim in this forfeiture action, supported only by their 2019 Florida judgment, sufficed to establish the requisite interest in the Defendant Properties as would afford them standing in this action. *See* Weinstock Claimants' Mot. at 9–10. First, despite the Weinstock Claimants' assertion to the contrary, Weinstock Claimants' Reply at 4–5, ECF No. 105, the Seventh Circuit does not appear to have held in *R.J. O'Brien* that the insurance companies' final judgment against al Qaeda *alone* granted them standing to contest forfeiture. Indeed, the district court had found that the final judgment "d[id] not alter the insurance company claimants' status as unsecured creditors who lack statutory and prudential standing," and the Seventh Circuit did not overturn that finding. *R.J. O'Brien I*, 2012 WL 1032904, at *8.

Second, the Weinstock Claimants' reliance on the Second Circuit's opinion in *Levin v. Miller* ("*Levin II*"), No. 21-1116, 2022 WL 17574574 (2d Cir. Dec. 12, 2022), is misplaced. There, the United States filed a complaint in 2008 seeking the civil forfeiture of property connected to Iran, *Levin II*, 2022 WL 17574574, at *1, and it published notice the following year of its intent to seek forfeiture of other assets, *Levin v. United States* ("*Levin I*"), 774 F. App'x 49, 50 (2d Cir. 2019). Several third-party claimants with unsatisfied terrorism-related judgments against Iran promptly filed "turnover actions" pursuant to the TRIA, seeking to execute their judgments against this property. *Levin II*, 2022 WL 17574574, at *1. In April 2014, the district court found that some of the contested assets were subject to turnover to the TRIA judgment creditors, and "[i]n that same month, the Government and various judgment creditors entered into a stipulation and order of settlement resolving their competing claims." *Id.* Then, in 2015,

two other claimants—the Levins—sought to intervene in the forfeiture action. *Levin I*, 774 F. App'x, at 50. The Second Circuit held, however, that the Levins lacked standing to contest forfeiture, as the Levins were required under the forfeiture rules to file a claim "no later than 60 days after [the notice was published]." Supplemental Rule G(5)(a)(ii)(B); *see also Levin II*, 2022 WL 17574574, at *3. Because the Levins obtained a terrorism-related judgment against Iran in 2007, the Second Circuit observed that "they *could* have . . . filed a timely claim . . . contest[ing] the Government's forfeiture action." *Levin II*, 2022 WL 17574574, at *3.

The Weinstock Claimants seize upon that pronouncement to argue that a timely claim and a terrorism-related judgment are sufficient to contest forfeiture. *See* Weinstock Claimants' Mot. at 9–10. But the Second Circuit never stated that the Levins needed *only* file a timely claim to gain standing in the forfeiture action. In fact, it noted that the Levins also had "a pending TRIA turnover action,"[1] an "*ex parte* 28 U.S.C. § 1610(c) order" permitting attachment or execution of a foreign state's property, and a "related writ." *Levin II*, 2022 WL 17574574, at *3. Moreover, according to the Second Circuit, not even all of this or the TRIA could excuse the Levins' failure to "comply[ ] with the substantive and procedural requirements of civil forfeiture law." *Id*. As the Second Circuit explained, the TRIA's "notwithstanding" clause "did not extend to allow the Levins to 'seek a distribution of property *seized by the Government*'" pursuant to forfeiture.[2] *Id*. (quoting *Levin I*, 774 F. App'x at 50).

---

[1] As this Court previously observed, a judgment creditor can seek to perfect an interest in property subject to forfeiture through a TRIA turnover order. 2025 Mem. Op. at 9.

[2] The Second Circuit explained that the TRIA does not obligate the United States to maintain blocked assets indefinitely for possible future attachment by TRIA judgment creditors, and that "a pending TRIA claim does not prevent the Government from lawfully taking title to terrorist assets" through a forfeiture action. *Levin II*, 2022 WL 17574574, at *3 & n.1. In *Levin*, before the Levins filed a competing claim for the terrorist assets at issue, the government had already entered into a stipulation and order of settlement with other TRIA judgment creditors providing that "the net proceeds from the forfeiture . . . to the United States would be distributed

One final point about *Levin* bears mention. In that case, the property at issue was—at least until its seizure through forfeiture—indisputably subject to the TRIA. But the same may not be true here. Recall that the TRIA applies to the "blocked assets of [a] terrorist party"—and only those assets. 28 U.S.C. § 1610 note. A "blocked asset" under the TRIA is one that has been "seized or frozen by the United States" under the authority of one of three statutes: (1) "section 5(b) of the Trading With the Enemy Act," 50 U.S.C. § 4305(b); (2) "sections 202 and 203 of the International Emergency Economic Powers Act," 50 U.S.C. §§ 1701, 1702; or "section 805(b) of the Foreign Narcotics Kingpin Designation Act," 21 U.S.C. § 1904(b). *See* 28 U.S.C. § 1610 note; 18 U.S.C. § 2333(e). Here, however, the Defendant Properties were seized in connection with the current action,[3] through which the Government seeks their forfeiture pursuant to: (1) "18 U.S.C. § 981(a)(1)(A), as property involved in, or traceable to, a financial transaction in violation of [the money laundering statute], 18 U.S.C. § 1956;" and (2) "18 U.S.C. § 981(a)(1)(G)(i), as all assets . . . of Hamas, which is a designated foreign terrorist organization,

---

to the Judgment Creditors on a *pro rata* basis." *In re 650 Fifth Ave. & Related Props.*, No. 08 Civ. 10934, 2021 WL 1226594, at *3 (S.D.N.Y. Mar. 31, 2021). The Second Circuit thus found that the TRIA "did not extend" to that situation. *Levin II*, 2022 WL 17574574, at *3.

[3] The Court finds it unnecessary at this juncture to decide whether the Defendant Properties are currently in the Government's "physical possession" or merely in its "custody." *See* Weinstock Claimants' Reply at 2–3. This Court previously held that even if the Weinstock Claimants could establish standing to assert a claim in this forfeiture action, "such a claim against the United States would nonetheless be barred by sovereign immunity." 2025 Mem. Op. at 11. In reaching this conclusion, this Court relied on the D.C. Circuit's holding in *Greenbaum v. Islamic Republic of Iran*, 67 F.4th 428, 434 (D.C. Cir. 2023). There, the D.C. Circuit held that federal sovereign immunity prevented the attachment and garnishment of funds connected to Iran that were seized and held in a bank account of the United States, and that the TRIA did not waive that immunity. *Id.* at 435. The Weinstock Claimants now protest, however, that the Government has not offered proof for its assertion that it "physically seized" the Defendant Properties before filing this forfeiture suit. Weinstock Claimants' Reply at 2–3. But the Court need not reach the issue of sovereign immunity. As set forth in this opinion, the Court is denying the Weinstock Claimants' current motion because they have failed to persuade it to reconsider its prior findings concerning standing.

engaged in planning or perpetrating any federal crime of terrorism (as defined in 18 U.S.C. § 2332b(g)(5)).” Gov’t’s Am. Compl. ¶¶ 2–3, ECF No. 62-1. These statutes appear nowhere in the TRIA’s definition of “blocked asset.” Therefore, unless the Defendant Properties have been otherwise “seized or frozen” pursuant to the authorities listed in the TRIA—a position no party has previously advanced—this case falls outside the TRIA. If this is so, there is no argument whatsoever that the TRIA can cure the Weinstock Claimants’ standing defect. *See United States v. Gutierrez-Ochoa*, No. 25-cr-35, 2026 WL 1157964, at *16 (D.D.C. Apr. 29, 2026) (“[E]ven the broadest reading of the ‘notwithstanding’ clause cannot plausibly suggest that the TRIA applies when the prerequisites of the TRIA have not been satisfied.”).

**B. *Estate of Levin***

The Court finally addresses the D.C. Circuit’s decision in *Estate of Levin*. It finds that this decision has little bearing on the Court’s prior opinions in this case. As the Government correctly notes, *Estate of Levin* “did not address, let alone disturb, the requirements for demonstrating standing in a forfeiture case.” Gov’t’s Opp’n at 4, ECF No. 101 (citation modified). Accordingly, *Estate of Levin* does not provide a basis for reconsideration of the Court’s prior opinions.

The Court begins with a brief summary of *Estate of Levin*. There, the United States blocked funds connected to Iran pursuant to the International Emergency Economic Powers Act (“IEEPA”) and then initiated a civil forfeiture action against them. *Est. of Levin*, 156 F.4th at 635. The funds surfaced after a front company for an instrumentality of Iran wired them to another foreign entity through Wells Fargo Bank in New York. *Id.* at 637. Various third-party claimants, who hold terrorism-related judgments against Iran, sought to attach those funds in order to execute their judgments against them. *Id.* at 635. The district court quashed their writs

of attachment on two independent grounds: (1) the funds were immune from attachment because the TRIA did not apply, and (2) the government's forfeiture action barred the claimants from proceeding *in rem* against the same funds. *Id*. But the D.C. Circuit disagreed on both fronts and reversed the district court's order quashing the writs. *Id*.

On the first point, the district court had reasoned that the funds did not meet the TRIA's definition of "blocked assets" because the government had obtained an OFAC license authorizing it to seek their forfeiture. *Id*. at 638. The D.C. Circuit explained, however, that the TRIA excludes from that definition funds that are "subject to a license . . . specifically required by a statute other than [IEEPA] or the United Nations Participation Act." *Id*. (citing 28 U.S.C. § 1610 note). Because OFAC froze the funds at issue pursuant to IEEPA, and "the license itself was required by IEEPA," the license exception did not apply. *Id.* at 639. The D.C. Circuit also observed that the funds remained effectively "blocked" despite the OFAC license. *Id.* Although the license permitted Wells Fargo to release the funds to the government once the government obtained a valid forfeiture order, the government had not yet done so, meaning that the funds had to remain in a Wells Fargo account for the time being. *Id*.

As to the second point, the district court had found that the prior exclusive jurisdiction doctrine—which prevents multiple *in rem* proceedings against the same property at the same time—independently barred the claimants from attaching the funds. *Id*. at 642. But the D.C. Circuit held that the doctrine was inapplicable. *Id*. Although the doctrine served to prevent multiple courts from simultaneously exercising jurisdiction over the same property, the D.C. Circuit found that this problem was not implicated when, as in that case, competing *in rem* actions were filed against the same property and in the same court. *Id*.

Neither issue raised in *Estate of Levin* is implicated in this Court's prior opinions in this case. As the Court noted above, the parties in this case did not raise the issue of whether the Defendant Properties are "blocked assets" subject to attachment under the TRIA. And this Court's decision to strike the Weinstock Claimants' answer, counterclaim, and crossclaim hinged on its finding that the Weinstock Claimants lacked constitutional and statutory standing, rather than on the prior exclusive jurisdiction doctrine.

The Weinstock Claimants nevertheless contend that *Estate of Levin* represents a change in controlling law warranting reconsideration of the Court's prior opinions because "the D.C. Circuit rejected the argument that the civil forfeiture statute bars enforcement of terrorism judgments under TRIA." Weinstock Claimants' Mot. at 8. It is true that the D.C. Circuit noted in a footnote (and in dicta) that "[i]f TRIA specifically allows attachments that the civil-forfeiture statute specifically prohibits, TRIA prevails." *Est. of Levin*, 156 F.4th at 643 n.1. But this footnote served merely to dispel the notion—which the government did not even raise there—that the civil forfeiture statute bars attachments specifically authorized by the TRIA. *Id.* The D.C. Circuit did not hold that the TRIA excuses claimants from complying with procedural provisions in civil forfeiture that do not conflict with the TRIA. Nor did it hold that the TRIA alone affords claimants standing to contest forfeiture. As such, *Estate of Levin* does not alter the Court's conclusion that, as unsecured creditors, the Weinstock Claimants lack standing to assert claims in this forfeiture action.[4]

[4] The Government additionally argues that *Estate of Levin* is inapposite because there, the funds at issue were not in the Government's possession, whereas here, the Government "physically seized" the Defendant Properties before filing suit. Gov't's Opp'n at 6. In the Government's view, the posture of this case is thus more like that of the D.C. Circuit's opinion in *Greenbaum*, which *Estate of Levin* left untouched. As explained above, *see supra* note 3, the D.C. Circuit held in *Greenbaum* that federal sovereign immunity barred TRIA creditors from attaching and garnishing funds that were being held in a government escrow account. 67 F.4th at

## V. CONCLUSION

For the foregoing reasons, the Weinstock Claimants' motion for reconsideration (ECF Nos. 98, 99) is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: September 14, 2026

RUDOLPH CONTRERAS
United States District Judge

431. If that were true here—i.e., if the Defendant Properties were in the Government's possession—then federal sovereign immunity would likewise preclude the Weinstock Claimants from attaching the Defendant Properties. But, again, the Court need not reach this issue, because in any event, the Weinstock Claimants lack standing to assert claims in this action.